# EXHIBIT 7

S-4 1 d70436ds4.htm S-4

**Table of Contents**

As filed with the Securities and Exchange Commission on December 31, 2020.

Registration Statement No. 333-

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

## Form S-4
## REGISTRATION STATEMENT
*UNDER*
*THE SECURITIES ACT OF 1933*

# GigCapital3, Inc.
**(Exact Name of Registrant as Specified in Its Charter)**

| Delaware | 6770 | 84-4605714 |
|---|---|---|
| (Jurisdiction of Incorporation or Organization) | (Primary Standard Industrial Classification Code Number) | (I.R.S. Employer Identification Number) |

**1731 Embarcadero Rd., Suite 200**
**Palo Alto, CA 94303**
**Telephone: (650) 276-7040**
**(Address, including zip code, and telephone number, including area code, of Registrant's principal executive offices)**

**Dr. Avi S. Katz**
**Executive Chairman, Secretary, President and Chief Executive Officer**
**GigCapital3, Inc.**
**1731 Embarcadero Rd., Suite 200**
**Palo Alto, CA 94303**
**Telephone: (650) 276-7040**
**(Name, address, including zip code, and telephone number, including area code, of agent for service)**

*Copies to:*

| Jeffrey C. Selman, Esq. | Jonathan M.A. Melmed, Esq. | Anna T. Pinedo, Esq. | Jeffrey Reeser, Esq. |
|---|---|---|---|
| John Maselli, Esq. | Keith M. Townsend, Esq. | Brian D. Hirshberg, Esq. | Reeser & Associates LLC |
| DLA Piper LLP (US) | King & Spalding LLP | Mayer Brown LLP | 225 Berthoud Trail |
| 555 Mission Street, Suite 2400 | 1185 Avenue of the Americas | 1221 Avenue of the Americas | Broomfield, CO 80020 |
| San Francisco, CA 94105 | New York, New York 10036 | New York, New York 10020 | Tel: (720) 480-7444 |
| Tel: (415) 615-6095 | Tel: (212) 556-2100 | Tel: (212) 506-2500 | |

**Approximate date of commencement of proposed sale to the public:** As soon as practicable after this registration statement becomes effective and on completion of the business combination described in the enclosed proxy statement/prospectus.

If the securities being registered on this Form are to be offered in connection with the formation of a holding company and there is compliance with General Instruction G, check the following box. ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company" and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| Large accelerated filer | ☐ | Accelerated filer | ☐ |
|---|---|---|---|
| Non-accelerated filer | ☒ | Smaller reporting company | ☒ |
| | | Emerging growth company | ☒ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided to Section 7(a)(2)(B) of the Securities Act.

If applicable, place an X in the box to designate the appropriate rule provision relied upon in conducting this transaction:

Exchange Act Rule 13e-4(i) (Cross-Border Issuer Tender Offer) ☐

Exchange Act Rule 14d-1(d) (Cross-Border Third-Party Tender Offer) ☐

### CALCULATION OF REGISTRATION FEE

| Title of Each Class of Securities to be Registered | Amount to be Registered(1)(2) | Proposed Maximum Offering Price per Share | Proposed Maximum Aggregate Offering Price(3) | Amount of Registration Fee(4) |
|---|---|---|---|---|
| Common stock, par value $0.0001 per share | 70,385,096 | N/A | $976,593,207 | $106,546.32 |

(1) Based on the maximum number of shares of common stock, par value $0.0001 per share ("Common Stock"), of the registrant ("GigCapital3") to be issued in connection with the Business Combination. This number is based on the sum of (a) the maximum number of 53,922,000 shares of Common Stock issuable on the consummation of the Business Combination and (b) up to 16,463,096 shares of Common Stock that may be issued after such date pursuant to the earnout provisions of the Business Combination Agreement described herein.

(2) Pursuant to Rule 416(a) promulgated under the Securities Act, there are also being registered an indeterminable number of additional securities as may be issued to prevent dilution resulting from share splits, share dividends and/or similar transactions.

**Table of Contents**

abstention from voting and a broker non-vote, will have no effect on the Adjournment Proposal. Abstentions will be counted in connection with the determination of whether a valid quorum is established but will have no effect on the Adjournment Proposal.

**Q: What happens if the Business Combination Proposal is not approved?**

A: If the Business Combination Proposal is not approved and we do not consummate a business combination by November 18, 2021, we will be required to dissolve and liquidate our Trust Account, unless we amend our current amended and restated certificate of incorporation to extend the time we have to consummate a business combination. Our current deadline to consummate the Business Combination is November 18, 2021.

**Q: May the Company, Initial Stockholders or the Company's directors or officers or their affiliates purchase shares in connection with the Business Combination?**

A: In connection with the stockholder vote to approve the proposed Business Combination, our Sponsor, directors or officers or their respective affiliates may privately negotiate transactions to purchase shares from stockholders who would have otherwise elected to have their shares redeemed in conjunction with a proxy solicitation pursuant to the proxy rules for a per-share pro rata portion of the Trust Account. None of our directors or officers or their respective affiliates will make any such purchases when they are in possession of any material non-public information not disclosed to the seller or during a restricted period under Regulation M under the Exchange Act. Such a purchase may include a contractual acknowledgement that such selling stockholder, although still the record holder of our shares, is no longer the beneficial owner thereof and therefore agrees not to exercise its redemption rights, and could include a contractual provision that directs such selling stockholder to vote such shares in a manner directed by the purchaser. In the event that our Sponsor, directors or officers or their affiliates purchase shares in privately negotiated transactions from public stockholders who have already elected to exercise their redemption rights, such selling stockholders would be required to revoke their prior elections to redeem their shares. Any such privately negotiated purchases may be effected at purchase prices that are below or in excess of the per-share pro rata portion of the Trust Account.

**Q: How many votes do you have at the Special Meeting?**

A: Each stockholder is entitled to one vote on each proposal presented at the Special Meeting for each share of Common Stock held of record by such stockholder as of          , 2021, the record date for the Special Meeting. As of the close of business on the record date, there were          outstanding shares of our Common Stock.

**Q: How will our Initial Stockholders, directors and officers vote?**

A: Prior to our IPO, we entered into agreements with our Initial Stockholders and each of our directors and officers, pursuant to which each agreed to vote any shares of Common Stock owned by them in favor of the Business Combination Proposal. None of our Initial Stockholders, directors or officers has purchased any shares of our Common Stock during or after our IPO and, as of the date of this proxy statement/prospectus, neither we nor our Initial Stockholders, directors or officers have entered into agreements, and are not currently in negotiations, to purchase shares prior to the consummation of the Business Combination. Currently, our Initial Stockholders own approximately 22.8% of our issued and outstanding shares of Common Stock, including all of the Initial Stockholder Shares, and will be able to vote all such shares at the Special Meeting.

18