**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02774-RMR-KLM (consolidated with 1:21-cv-03215-KLM)

JOHNNY R. SHAFER and JUSTIN COHEN,
Individually and On Behalf of All Others
Similarly Situated,

                    Plaintiffs,

        v.

LIGHTNING EMOTORS, INC., TIMOTHY
R. REESER, TERESA P. COVINGTON,
GIGACQUISITIONS3 LLC, GIGCAPITAL
GLOBAL, AVI S. KATZ, RALUCA DINU,
NEIL MIOTTO, GIGFOUNDERS LLC,
BRAD WEIGHTMAN, ANDREA BETTI-
BERUTTO, PETER WANG, JOHN J.
MIKULSKY, and ROBERT FENWICK-
SMITH,

    Defendants.

---

**REPLY OF GIGACQUISITIONS3, LLC, GIGFOUNDERS, LLC, GIGCAPITAL
GLOBAL, AVI S. KATZ, RALUCA DINU, NEIL MIOTTO, BRAD WEIGHTMAN,
JOHN MIKULSKY, ANDREA BETTI-BERUTTO, AND PETER WANG
IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**

---

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................................... 1

ARGUMENT............................................................................................................................ 2

    I.     Count I Fails to State a Claim Under Section 11 of the 1933 Act ................................ 2

    II.    Count III Fails to State a Claim Under Section 14(a) of the 1934 Act ......................... 5

          A.    Plaintiffs Do Not Allege Negligence by Each Gig3 Defendant as to the
                Statements Regarding Lightning Systems' Business.............................................5

          B.    Plaintiffs Do Not State Viable Claims Based on Mentor-Investor Statements ....7

          C.    Plaintiffs Do Not State a Section 14(a) Claim Against Weightman.....................9

    III.    Count V Fails to State a Claim Under Section 10(b) of the 1934 Act .......................... 9

          A.    Plaintiffs Do Not Allege a Strong Inference of Scienter as to the Challenged
                Mentor-Investor Statements...................................................................................10

          B.    Plaintiffs Do Not Allege a Strong Inference of Scienter as to the Pre-Merger
                Statements Regarding Lightning Systems ............................................................11

          C.    Plaintiffs Do Not Allege a Strong Inference of Scienter as to the Post-Merger
                Statements Regarding Lightning..........................................................................13

          D.    Plaintiffs Do Not Allege Scheme Liability ..........................................................13

    IV.    Plaintiffs Fail to State Control-Person Claims.............................................................. 14

CONCLUSION...................................................................................................................... 15

*i*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alstom SA*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005)...........................................................................................13

*Anderson v. Spirit Aerosys. Holdings, Inc.*,
  827 F.3d 1229 (10th Cir. 2016) ...................................................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................................4

*In re Bank of Am. Corp. Sec. Litig.*,
  757 F. Supp. 2d 260 (S.D.N.Y. 2010)............................................................................................9

*Beztak Co. v. Bank One Columbus, N.A.*,
  811 F. Supp. 274 (E.D. Mich. 1992)............................................................................................10

*Bond v. Clover Health Investments, Corp.*,
  2022 WL 602432 (M.D. Tenn. Feb. 28, 2022) ...........................................................................11

*City of Philadelphia v. Fleming Cos.*,
  264 F.3d 1245 (10th Cir. 2001) .....................................................................................................6

*Croker v. Carrier Access Corp.*,
  2006 WL 2035366 (D. Colo. July 18, 2006) ...............................................................................13

*Delman v. GigAcquisitions3, LLC*,
  288 A.3d 692 (Del. Ch. 2023).........................................................................................................5

*In re DraftKings Inc. Sec. Litig.*,
  2023 WL 145591 (S.D.N.Y. Jan. 10, 2023) ................................................................................11

*Grossman v. Novell, Inc.*,
  120 F.3d 1112 (10th Cir. 1997) .....................................................................................................3

*In re HEXO Corp. Sec. Litig.*,
  524 F. Supp. 3d 283 (S.D.N.Y. 2021)............................................................................................4

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011)........................................................................................................................9

*In re JPMorgan Chase Derivative Litig.*,
  2014 WL 5430487 (E.D. Cal. Oct. 24, 2014) ...............................................................................6

*Knurr v. Orbital ATK Inc.*,
    276 F. Supp. 3d 527 (E.D. Va. 2017) ...................................................................................6

*Kuebler v. Vectren Corp.*,
    13 F.4th 631 (7th Cir. 2021) ...............................................................................................8

*Lorenzo v. SEC*,
    139 S. Ct. 1094 (2019)........................................................................................................14

*Mehedi v. View, Inc.*,
    2023 WL 3592098 (N.D. Cal. May 22, 2023).....................................................................6, 9

*Melnick v. Williams*,
    2022 WL 4819091 (D. Colo. July 14, 2022) ......................................................................6

*Murdeshwar v. Search Media Holdings Ltd.*,
    2011 WL 7704347 (S.D. Fla. Aug. 8, 2011).......................................................................11

*In re Ocera Therapeutics, Inc. Sec. Litig.*,
    2018 WL 7019481 (N.D. Cal. Oct. 16, 2018).....................................................................8

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015)............................................................................................................5, 8

*In re Peregrine Sys., Inc. Sec. Litig.*,
    2005 WL 8158825 (S.D. Cal. Mar. 30, 2005) ....................................................................6

*Pirraglia v. Novell, Inc.*,
    339 F.3d 1182 (10th Cir. 2003) ..........................................................................................9

*SEC v. GenAudio Inc.*,
    32 F.4th 902 (10th Cir. 2022) .............................................................................................4

*SEC v. Rio Tinto*
    *plc,* 41 F. 4th 47 (2nd Cir. 2022)......................................................................................13, 14

*Slater v. A.G. Edwards & Sons, Inc.*,
    719 F.3d 1190 (10th Cir. 2013) ..........................................................................................5

*In re Stable Rd. Acquisition Corp.*,
    2022 WL 2762213 (C.D. Cal. July 13, 2022)......................................................................11

*In re Thornburg Mortg., Inc. Sec. Litig.*,
    695 F. Supp. 2d 1165 (D.N.M. 2010) .................................................................................9

*Uvaydov v. Fenwick-Smith*,
    No. 2023-0137-LWW (Del. Ch. Feb. 9, 2023)....................................................................6

*In re XL Fleet Corp. Sec. Litig.*,
  2022 WL 493629 (S.D.N.Y. Feb. 17, 2022)...........................................................................11

**Statutes and Other Authorities**

Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k ........................................................ 2, 4

Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o ...........................................................14

Section 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j ........................................... 9

Section 14 of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) ...............................5, 6, 9

Section 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78t .......................................... 14

Section 21D of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4.......................................8

Section 21E of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-5 ......................................6

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ......................................................................................14

*iv*

## **INTRODUCTION**[1]

The vast majority of Plaintiffs' 50-page Opposition is directed at the Lightning Defendants. When Plaintiffs do address the Gig3 Defendants, they repeatedly lump them in as "Defendants," making no effort to address the many respects in which the Gig3 Defendants and the Lightning Defendants are differently situated, much less address the respects in which each of the Gig3 Defendants is differently situated when it comes to different claims and different allegedly misleading statements. Further, Plaintiffs repeatedly mischaracterize their own allegations and ignore the actual content of the statements they challenge. While a claim-by-claim, defendant-by-defendant, and statement-by-statement analysis may be tedious, it is what the law requires.

For example, and as explained further below, Plaintiffs double down on their contention that the "Mentor-Investor" statements were important to investors deciding whether to invest in Gig3 or a different SPAC. But Plaintiffs ignore that the Mentor-Investor-related statements in the Registration Statement were forward-looking statements of future intent, accompanied by specific cautions that post-merger involvement in the yet-to-be-identified target company could not be guaranteed. Plaintiffs then ignore that later statements they lump into the "Mentor-Investor" category were immaterial puffery in the form of vaguely optimistic statements of opinion that Lightning Systems would benefit from the mentorship Gig3 could provide. Plaintiffs cannot evade clearly established law holding statements such as these nonactionable by ignoring the actual content and context of the statements they challenge.

On top of this, Plaintiffs assert *three times* that the Gig3 Defendants decided to "cash out"

---

[1] Capitalized or abbreviated terms have the same meaning as in the Gig3 Defendants' Motion to Dismiss Consolidated Complaint with Incorporated Memorandum of Law (the "Motion"), Dkt. No. 101. Plaintiffs' Opposition to Defendants' Motions to Dismiss the Consolidated Complaint, Dkt. No. 104, is referenced herein as the "Opposition" or "Opp." References to the "Supp. Walker Decl." refer to the supplemental declaration of Melanie Walker being filed concurrently herewith.

rather than stay on the Lightning board. (Opp. at 3, 42, 49.) But the Complaint does not allege this, and for good reason: the Gig3 Defendants did not (and because of the lock-up agreement could not) sell any stock (or "cash out") during the class period. Similarly, the Opposition repeatedly asserts that the Company "announced" that Katz, Dinu, and Miotto "would not be running for re-election" to the board. (*E.g.*, Opp. at 9, 39.) But this mischaracterizes the announcement. The Company actually announced that these individuals would "not be re-nominated" to the board. The Complaint does not allege any *facts* about the impetus for the board's vote not to re-nominate them. Rewriting public statements to fit Plaintiffs' speculative narrative is not a substitute.

With respect to Lightning's projections in the Proxy, Plaintiffs again ignore critical context, failing to acknowledge the extensive cautions that accompanied those projections. As for the challenged statements regarding Lightning's supply chain and production capacity, Plaintiffs are left with the bare assertion that Gig3 performed due diligence, with no allegations regarding the "who, what, when, and where" of what that due diligence allegedly revealed. Plaintiffs cannot rely on their CWs—half were not even around, and the other half are not alleged to have been involved in due diligence. This does not suffice to establish negligence, much less scienter.

In a last-ditch effort, Plaintiffs advocate for a presumption of scienter in cases involving SPAC transactions because a SPAC "is, by its very nature, rife with conflicts of interest." (Opp. at 39.) Not only does this flip the PLSRA's standard on its head, but it is untenable given Plaintiffs' fully informed decision to invest in a SPAC in the first place.

Plaintiffs' claims against the Gig3 Defendants should be dismissed.

## ARGUMENT

### I.    Count I Fails to State a Claim Under Section 11 of the 1933 Act

Plaintiffs' Section 11 claim is based on statements in Gig3's Registration Statement regarding its intent to employ a Mentor-Investor approach with its eventual target. The Opposition

2

provides no plausible basis for finding these forward-looking statements are not protected by the "bespeaks caution" doctrine, or that these statements were not true at the time they were made.

First, Plaintiffs ask the Court to ignore the "bespeaks caution" doctrine and fashion a new rule for SPACs so that "forward-looking statements about SPAC management's business plans are necessarily material" as a matter of law, regardless of the cautionary language that accompanies them. (Opp. at 48.) Plaintiffs do not cite a case that would support this novel rule. They quote language from *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1122-23 (10th Cir. 1997), but the Tenth Circuit in that case affirmed a "ruling of non-materiality as to predictive statements."

Here, the Registration Statement pointedly warned investors there was no assurance the Gig3 Defendants would be involved in the post-transaction company, including because such decisions would not be in their exclusive control. (Mot. at 10.) Plaintiffs attempt to sidestep this cautionary language by asserting that the Gig3 Defendants did not disclose "the risk that the Gig Defendants would not necessarily partner with the target company over several years if an opportunity presented itself to cash out sooner." (Opp. at 49.) The cautionary statements, however, disclosed the risk that there would be no close association with the target after a merger. (Mot. at 10.) Moreover, the Complaint does not allege any facts suggesting that the Gig3 Defendants decided to "cash out" rather than remain on the Board. In fact, Plaintiffs do not—and cannot— allege that any of the Gig3 Defendants sold a single share of Lightning stock during the class period, when the shares were subject to a lock-up agreement. (*See* Mot. at 5.)

What is more, the Opposition mischaracterizes the Registration Statement, which did not promise that particular Gig3 Defendants would continue to serve as directors for a certain number of years, or that the mentorship strategy was limited to any specified form. (Walker Decl. Ex. 1 at 2, 79-80.) Bruce Coventry, who was an advisor to Gig3 and expert in the automotive industry,

3

joined the Lightning board post-Merger and remains on the board today. (*See* Supp. Walker Decl. Ex. 15 at 170, 210, 279-80.) Diana Tremblay, who worked for General Motors for 40 years, also joined the board as a result of the Merger and remains on the board today. (*Id.*) Identifying and securing expert advisors such as these for the target company *is* providing mentorship.[2]

Second, as to falsity, Plaintiffs concede that their contention the Gig3 Defendants did not hold the intent to employ the Mentor-Investor approach rests entirely on the timing of the Lightning board's vote to reclassify Katz and Dinu. (*See* Opp. at 24, 45.) This is nothing other than impermissible pleading by hindsight. *See In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 300 (S.D.N.Y. 2021) (dismissing Section 11 claim "based on hindsight pleading"). While Plaintiffs speculate about why these directorships were reclassified (*e.g.*, Opp. at 39 n.22), they allege no facts in support of their theory. Hoping that facts will later turn up to substantiate their claim is insufficient to prevent dismissal. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 does not 'unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Lastly, Plaintiffs cannot seriously dispute that the Gig3 Defendants have remained involved in their other SPAC companies post-merger, which undermines the premise of their theory. Plaintiffs contend these facts are "not even alleged in the Complaint." (*See* Opp. at 15-16 n.8 & 39 n.22.) But these facts *are* alleged in the Complaint and set forth in documents incorporated by reference. (*See, e.g.*, Compl. ¶¶24-30, 182; Walker Decl. Ex. 3 at 74-76.)

---

[2] *SEC v. GenAudio Inc.*, 32 F.4th 902 (10th Cir. 2022), is inapposite. There, a CEO claimed a securities offering was "being conducted to provide bridge capital until we can 'ink' a deal with" Apple within 30 days. *Id.* at 914, 926. But there was "no factual basis" for this assertion, because "no such deal between GenAudio and Apple was imminent." *Id.* at 928. "[A] few stray sentences" that there was "no guarantee or assurance that any actual transactions will occur" did not eliminate the suggestion that "a deal with Apple was *imminent*." *Id.* at 930.

4

## II.   Count III Fails to State a Claim Under Section 14(a) of the 1934 Act

Plaintiffs' Section 14 claims are based on allegedly false statements in the Proxy regarding Lightning Systems' financial projections, supply chain, and production capacity and Gig3's Mentor-Investor approach. In their Opposition, Plaintiffs concede that the sole basis for their claim alleging the Gig3 Defendants acted negligently with respect to the statements regarding Lightning Systems' business is that Gig3 performed due diligence. This does not suffice. As for the Mentor-Investor related statements, Plaintiffs do not acknowledge the actual content of the challenged statements in the Proxy, much less grapple with the Gig3 Defendants' arguments that the specific statements in the Proxy are nonactionable puffery and also statements of opinion subject to *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015).

### A.   Plaintiffs Do Not Allege Negligence by Each Gig3 Defendant as to the Statements Regarding Lightning Systems' Business

Plaintiffs admit their Section 14(a) claims against the Gig3 Defendants based on Lightning Systems' projections and statements regarding its supply chain and production capacity rely on the theory that, because the Gig3 Defendants performed due diligence, they must have had "access to the [allegedly] omitted facts." (Opp. at 42.) Citing to *Delman v. GigAcquisitions3, LLC*, 288 A.3d 692 (Del. Ch. 2023), Plaintiffs argue that the Chancery Court found due diligence allegations in a breach of fiduciary duty case sufficient to satisfy the much lower "reasonably conceivable" standard under Delaware law. (Opp. at 10.)[3] Yet the allegations in *this* case do not satisfy the much

---

[3] As explained in Defendants' responses to Plaintiffs' Notice of Recent Authority, Dkt. Nos. 89 & 90, *Delman* is also irrelevant for several other reasons. For example, the Chancery Court reasoned that SPAC fiduciaries have an affirmative duty, under Delaware law, to disclose "'fully and fairly all material information' that is reasonably available about the merger and target to inform the redemption decision." *Delman*, 288 A.3d at 713 (citation omitted). But under federal law, "[l]iability does not attach for any omission, but only for omissions of facts that are required as part of a [SEC filing] or those necessary to make the statement not misleading." *Slater v. A.G.*

higher pleading standards under the PSLRA, where "[g]eneralized imputations of knowledge" do not suffice. *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1264 (10th Cir. 2001). Simply alleging that a party performed due diligence does not state a federal securities claim. *Mehedi v. View, Inc.*, 2023 WL 3592098, at *14 (N.D. Cal. May 22, 2023) (dismissing § 14(a) claim against SPAC founders, despite their due diligence, because it lacked "individualized allegations of negligence … [f]or each Defendant.").[4]

Indeed, in *Knurr*, (*see* Opp. at 44), the court did *not* rely solely on the fact that a merger party had performed due diligence to find adequate allegations of negligence. Instead, the complaint alleged specific "red flags" revealed in due diligence—which the Court found a "stark contrast" to generic allegations in other cases like this one. *See Knurr*, 276 F. Supp. 3d at 541-52. Here, Plaintiffs' contentions as to what Lightning Systems' executives knew or should have known depend entirely on their (deficient) CW allegations. But as the Gig3 Defendants explained, (Mot. at 14 n.7 & 24), half the CWs left Lightning *before* due diligence even began, and Plaintiffs do not allege any were involved in due diligence or supplied information to the Gig3 Defendants at all.[5]

Plaintiffs also assert that the Gig3 Defendants must have known of the allegedly concealed

---

*Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013). Delaware also lacks any safe harbor for forward-looking statements. *See* 15 USC § 78u-5(c)(1).

[4] *See also In re JPMorgan Chase Derivative Litig.*, 2014 WL 5430487, at *24-25 (E.D. Cal. Oct. 24, 2014) (allegations that defendants "should have or must have" received information insufficient to state a § 14(a) claim); *In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *73 (S.D. Cal. Mar. 30, 2005) (dismissing § 14(a) claim where complaint did not "point to any specific information Defendants overlooked").

[5] In an attempt to salvage their claims, Plaintiffs quote allegations from the untested complaint in *Uvaydov v. Fenwick-Smith*, No. 2023-0137-LWW, (Del. Ch. Feb. 9, 2023); however, "a plaintiff cannot attempt to amend a complaint through a response in opposition to a motion to dismiss." *Melnick v. Williams*, 2022 WL 4819091, at *5 (D. Colo. July 14, 2022). Moreover, those allegations concern what *Lightning Systems* allegedly knew or should have known. They say nothing about what the Gig3 Defendants allegedly were told or discovered during due diligence.

facts because they presumably received "feedback from the potential PIPE investors." (Opp. at 43.) But again, the Complaint is silent as to what the PIPE investors allegedly discovered during their due diligence and the contents of any supposed feedback they provided. Moreover, as the Complaint acknowledges, many of those same potential PIPE investors ultimately *did* invest through $100 million of convertible notes, belying Plaintiffs' suggestion that they doubted Lightning's statements. (Compl. ¶¶58, 178.) In any event, all of the facts regarding Defendants' efforts to obtain PIPE financing were fully disclosed. To the extent the failure to obtain PIPE financing itself was a "red flag," (Opp. at 38 n.21), it was revealed to the market.[6]

Finally, Plaintiffs argue that the Gig3 Defendants were negligent because they should have ensured the projections were up to date when the Proxy was issued. This ignores the express disclaimer that the projections in the Proxy were as of November 29, 2020, did not incorporate information obtained after that date, and were included only because they were the projections Gig3 relied on in negotiating the deal. (Walker Decl. Ex. 8 at 163-64.) Moreover, it ignores that Gig3 completed due diligence on December 10, 2020. (Supp. Walker Decl. Ex. 15 at 151.) Once again, the Complaint does not allege any facts regarding what inside information was available to the Gig3 Defendants after that date. Instead, Plaintiffs elide the distinction between information available to corporate insiders and information available to a transaction counterparty pre-merger.

**B.        Plaintiffs Do Not State Viable Claims Based on Mentor-Investor Statements**

The Opposition does not even attempt to rebut the Gig3 Defendants' arguments that the Mentor-Investor-related statements in the Proxy were not materially false. First, these statements were all vaguely optimistic statements regarding the Gig3 Defendants' "belief" that Lightning

---

[6] Plaintiffs likewise ignore that, in connection with due diligence, the Gig3 Defendants prompted Lightning Systems to *lower* its financial projections. (Walker Decl. Ex. 8 at 155.) This contradicts any notion the Gig3 Defendants turned a "blind eye" to adverse facts discovered in due diligence.

7

Systems would benefit from the Mentor-Investor approach. *See* Compl. ¶150. While Plaintiffs attempt (unsuccessfully) to argue that the Mentor-Investor statements in the *Registration Statement* were material, the Opposition does not address the specific statements in the Proxy at all. Plaintiffs must, however, plead falsity and materiality as to *each* challenged statement. *See* 15 U.S.C. § 78u-4(b)(1); *Kuebler v. Vectren Corp.*, 13 F.4th 631, 638 (7th Cir. 2021). The Mentor-Investor statements in the Proxy fall squarely in the category of inactionable puffery. (*See* Mot. at 15-16.)

Further, all of the challenged Mentor-Investor statements in the Proxy were opinion statements. *See* Compl. ¶150. Accordingly, in order to establish falsity, Plaintiffs are required to plead facts showing that the Gig3 Defendants did not actually believe these statements when they were made. (*See* Mot. at 16 (citing *Omnicare,* 575 U.S. at 183-86).) The Opposition does not meaningfully address *Omnicare*. Instead, Plaintiffs simply repeat their speculation—based solely on the timing of the board vote to reclassify Katz's and Dinu's directorships—and continue to mischaracterize *the board's* vote not to renominate Katz, Dinu, and Miotto as an individual decision not to "stand[] for reelection," without a single supporting allegation of fact in the Complaint. (Opp. at 45.) Plaintiffs do not (and cannot) dispute that these decisions were outside of Katz, Dinu, and Miotto's control.

Plaintiffs also attempt to disavow their obligation to establish negligence on a defendant-by-defendant basis. (Opp. at 44.) But "lumping together" defendants does not suffice. *In re Ocera Therapeutics, Inc. Sec. Litig.*, 2018 WL 7019481, at *11 (N.D. Cal. Oct. 16, 2018). As explained, there are no allegations of fact in the Complaint showing that Katz, Dinu, or Miotto was negligent in not knowing pre-Merger what actions the newly formed Lightning board would take post-Merger. This is even more true for Mikulsky, Betti-Berutto, and Wang. Plaintiffs do not even attempt to suggest how they could have known the other directors' plans for after the Merger.

8

C.      **Plaintiffs Do Not State a Section 14(a) Claim Against Weightman**

In a footnote, Plaintiffs concede that Weightman did not sign the Proxy Statement, (Opp. at 44 n.28), which Katz solicited "[o]n behalf of our Board," of which Weightman was not a member, (Supp. Walker Decl. Ex. 15 (signature page)). Plaintiffs cannot avoid the plain language of Section 14(a)—which requires a showing that Weightman permitted the "use of his name to solicit" a proxy—by hypothesizing that he reviewed the projections. *See* 15 U.S.C. § 78n(a)(1); *In re Bank of Am. Corp. Sec. Litig.*, 757 F. Supp. 2d 260, 293 (S.D.N.Y. 2010); *Mehedi*, 2023 WL 3592098, at *15 (dismissing conclusory proxy solicitation claim against SPAC founders).

III.    Count V Fails to State a Claim Under Section 10(b) of the 1934 Act

Under the PSLRA, plaintiffs are required to "state with particularity facts giving rise to a strong inference" of scienter for "***each*** act or omission alleged to violate [Section 10(b)]." *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1186 (10th Cir. 2003) (emphasis added).[7] Further, plaintiffs are required to plead a strong inference of scienter as to ***each*** defendant—general allegations regarding "all defendants" in a group do not suffice. *See In re Thornburg Mortg., Inc. Sec. Litig.*, 695 F. Supp. 2d 1165, 1199 (D.N.M. 2010). The Opposition ignores these well-settled principles and lumps together the vast majority of Defendants' statements (and Defendants themselves), while relegating the majority of the Gig3 Defendants' arguments to footnotes.[8] These tactics do not mask the deficiencies in Plaintiffs' claims. Nor can Plaintiffs save their Rule 10-b(5) claim by recasting it as one for "scheme" liability: such claims also require particularized facts

---

[7] The Complaint also does not adequately allege that the challenged statements were false for the reasons set forth in the Motion, in this Reply, and in the Lightning Defendants' briefing.

[8] Plaintiffs do not dispute that, under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011), the Gig3 Defendants cannot be held liable for the statements made by Reeser and Fenwick-Smith, and only Dinu can be held liable for her own statements, but largely ignore which statements are at issue with respect to which defendants.

showing a strong inference of scienter as to each challenged "act" and defendant.

**A.**     **Plaintiffs Do Not Allege a Strong Inference of Scienter as to the Challenged Mentor-Investor Statements**

Plaintiffs argue that the timing of Katz and Dinu's reclassifications, and the timing of the board's vote not to renominate Katz, Dinu, or Miotto, alone suffices to allege that the Mentor-Investor statements were false and negligently made. (*See, e.g.*, Opp. at 8, 24, 26, 39, 45.) While this position is wrong, ***the Opposition does not even attempt to argue that Plaintiffs can allege a "strong inference" of scienter*** (*i.e.*, fraudulent intent) based on these bare allegations as to timing.

This failure is hardly surprising. The timing of the board votes reveals nothing about any Gig3 Defendant's state of mind when the challenged statements were made—much less create a "cogent and compelling" inference that the Gig3 Defendants never intended to employ a Mentor-Investor approach. *See Anderson v. Spirit Aerosys. Holdings, Inc.*, 827 F.3d 1229, 1248 (10th Cir. 2016). The far more compelling inference—particularly in light of the Gig3 Defendants' insistence that Miotto co-chair the Audit Committee and long-term involvement in other post-de-SPAC companies, (*see* Mot. at 7, 12)—is that the Lightning board decided to part ways after the Merger.

Indeed, while Plaintiffs emphasize Defendants' ownership interests in Lightning following the closing of the Merger, (*e.g.*, Opp. at 8, 40 n.24), the fact that the Gig3 Defendants held interests in 8.3% of Lightning's outstanding shares further undermines an inference that the Mentor-Investor statements were made with fraudulent intent. With such a substantial stake in the Company—which could not be liquidated during the putative class period—the Gig3 Defendants had every incentive to stay involved and maintain the ability to influence the direction the Company would take. *Cf. Beztak Co. v. Bank One Columbus, N.A.*, 811 F. Supp. 274, 283-84 (E.D. Mich. 1992) (observing that 5% stockholder was likely to seek to "obtain a seat on the Board of Directors" and have "considerable ability to influence" strategic decisions).

10

**B.      Plaintiffs Do Not Allege a Strong Inference of Scienter as to the Pre-Merger Statements Regarding Lightning Systems**

Plaintiffs continue to rely on their due diligence allegations to suggest there is a strong inference of scienter as to pre-Merger statements regarding Lightning Systems. But just as bare due diligence allegations do not suffice to show negligence, they fall far short of giving rise to a strong inference of scienter. As explained in *Murdeshwar v. Search Media Holdings Ltd.*, 2011 WL 7704347, at *17 (S.D. Fla. Aug. 8, 2011), allegations that a defendant was "actively involved" in due diligence "say nothing about what [the] Defendants learned as a result of this diligence." Without alleging "what defendants knew, how they knew, and when they knew it," arguing that defendants "must have known" certain facts as a result of their due diligence is "insufficient to make out the element of scienter under the heightened PSLRA and Rule 9(b) standards." *Id.*; *see also In re DraftKings Inc. Sec. Litig.*, 2023 WL 145591, at *36 (S.D.N.Y. Jan. 10, 2023) (holding that SPAC founders' "extensive due diligence" did not support scienter because plaintiffs did "not identify any specific documents, reports, or information in the due diligence that would have revealed … black-market operations") (quotations omitted); *In re Stable Rd. Acquisition Corp.*, 2022 WL 2762213, at *12 (C.D. Cal. July 13, 2022) (rejecting allegations that SPAC officers participated in due diligence and had access to documents and information without "specific allegations that they were aware of any red flags to which they turned a blind eye").

Plaintiffs' authorities do not suggest otherwise. In *Bond v. Clover Health Investments, Corp.*, 2022 WL 602432 (M.D. Tenn. Feb. 28, 2022), for example, the court acknowledged that "the mere presence of a due diligence process does not mean that every flaw lurking within a company will come to light." *Id.* at *25. The court found scienter adequately alleged in that case not based on the fact of due diligence alone, but rather because the defendants admitted that they were aware of a DOJ investigation—an obvious "red flag." *Id.* Similarly, in *In re XL Fleet Corp.*

11

*Sec. Litig*., 2022 WL 493629 (S.D.N.Y. Feb. 17, 2022), the complaint did not simply allege involvement in due diligence, but also that a "former employee … disclosed the overstated sales pipeline to [the SPAC's] attorneys during the diligence process." *Id.* at *6. In contrast, Plaintiffs do not allege their CWs ever interacted with, or provided information to, any of the Gig3 Defendants in due diligence (or otherwise). The Opposition does not dispute this; indeed, it does not even attempt to argue that the CW allegations are relevant to the Gig3 Defendants' scienter. (*See* Opp. at 16-19, 35-36 n.19).) The "who, what, how, and when" required for scienter is absent.

Plaintiffs also assert that the "timing of Katz's and Dinu's reclassification as Class I directors" is "indicative of scienter" as to Lightning's allegedly undisclosed supply and production constraints. (Opp. at 39.) This makes no sense. If Katz and Dinu were aware of these issues, as Plaintiffs contend, they would have nothing to gain by getting off the board. To the contrary, that would mean they would have *less* information and no ability to influence remedial efforts, during a time when they had a substantial illiquid financial stake in the Company.

Finally, Plaintiffs argue that the "financial incentives" inherent in the SPAC structure support a strong inference of scienter. Plaintiffs do not cite a single case standing for the radical proposition that alleging that a company is a SPAC suffices to meet the heightened pleading requirements of the PSLRA. Moreover, Plaintiffs once again ignore the lockup agreement (relegating that discussion to a footnote, (Opp. at 41 n.25)), which incentivized the Gig3 Defendants to focus on the long-term success of the post-merger company. Additionally, the Complaint does not (and cannot) allege that Gig3 did not have other options pre-merger. If the Gig3 Defendants were made aware of the alleged supply and production constraints at Lightning pre-merger, their choices were not, as Plaintiffs suggest, no deal or a bad deal. They could have renegotiated or invested their time and money elsewhere.

12

**C.    Plaintiffs Do Not Allege a Strong Inference of Scienter as to the Post-Merger Statements Regarding Lightning**

As explained in the Motion (at 24), with respect to the post-Merger group-published statements, which concerned Lightning's supply chain, Plaintiffs must plead a strong inference of scienter as to each individual Gig3 Defendant at issue (Katz, Dinu, and Miotto). Yet the Complaint does not contain any allegations of fact as to what information was provided to these individuals, and therefore does not allege facts giving rise to a strong inference that each "was aware of the purportedly contrary facts" regarding Lightning's supply chain. *See id.*; *Croker v. Carrier Access Corp.*, 2006 WL 2035366, at *10 (D. Colo. July 18, 2006). In their Opposition, Plaintiffs argue that, if these defendants did not have knowledge of the allegedly contrary facts, that puts the lie to their stated intentions to be "hands on." (Opp. at 38.) This dodges the scienter inquiry. The question at hand with respect to the post-Merger statements is whether the Complaint alleges particularized facts giving rise to a strong inference that each individual was aware of the alleged facts regarding Lightning's supply chain—not whether they employed a "mentor-investor" approach. The Complaint does not allege any particularized facts on either score.

**D.    Plaintiffs Do Not Allege Scheme Liability**

Finally, Plaintiffs attempt to repackage their misrepresentation allegations as claims for "scheme" liability under Rule 10b-5(a) and (c). Courts have repeatedly cautioned against allowing private plaintiffs to use these provisions to "evade the pleading requirements imposed in misrepresentation cases." *In re Alstom SA*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005) ("[A] plaintiff may not seek to hold a defendant liable for misleading statements under subsections (a) and (c) by alleging that the defendant is liable for the misleading statements because he or she was a participant in a scheme through which the statements were made."); *see also SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022). Courts also have cautioned against "a widened scope of scheme

13

liability" that would "defeat the congressional limitation on the enforcement of secondary liability, multiply the number of defendants subject to private securities actions, and render the statutory provision for secondary liability superfluous." *Id.* at 55.

In any event, a scheme-liability plaintiff still must plead that the defendant acted with intent to defraud investors (scienter)*. See Lorenzo v. SEC*, 139 S. Ct. 1094, 1101 (2019); *see also* 17 C.F.R. § 240.10b-5(a), (c). Here, the supposed "deceptive acts" set forth in the Opposition generally fall into two categories. First, Plaintiffs simply repackage their misstatement claims—*e.g.*, alleging as deceptive acts the "marketing of the SPAC," "solicitation of investor proxies by dissemination of materially misleading information about Lightning Systems," and "concealment . . . as to the true state of Lightning's operations and ability to meet its stated 2021 projections." (Opp. at 27-28.) As discussed, the Complaint does not adequately allege scienter as to any of the Gig3 Defendants with respect to any of the alleged misstatements or omissions. Recasting these allegations as "scheme" claims does not change this.

Second, Plaintiffs complain about structures common to SPACs—*e.g.*, "the formation of GigCapital3 . . . and their awards of insider shares." (*Id.* at 27.) But all of this information—including details regarding the insider shares, the negotiation of the deal, and efforts to obtain PIPE financing—was publicly disclosed. (*See* Mot. at 4-6 & 20 n.10.) Defendants could not have intended to defraud investors via the SPAC structure when the potential conflicts were plainly disclosed to the market. (*See, e.g.*, Walker Decl. Ex. 8 at 162-63; Supp. Walker Decl. Ex. 15 at 36-37, 220.) Nor can it be the case that every SPAC is a "scheme" to defraud investors, when SPACs are perfectly legal and legitimate investment vehicles.

## IV.  **Plaintiffs Fail to State Control-Person Claims**

Control-person liability under Section 15 of the 1933 Act and Section 20(a) of the 1934 Act requires a primary violation of the securities laws and sufficient allegations of control over the

14

primary violator. *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304-05 (10th Cir. 1998). Because Plaintiffs have not pleaded primary violations of the securities laws by any of the Gig3 Defendants, Counts II, IV, and VI must be dismissed against them.

Additionally, Plaintiffs do not allege facts showing that GigCapital Global or GigFounders "actually exercised control" or "had the power to exercise such control" over Gig3. *Maher*, 144 F.3d at 1306 n.8. For one, Plaintiffs are "unclear" about GigCapital Global's existence as "a legal entity," (Opp. at 46), although they could have checked public incorporation records, *see Jordan v. Grace Living Ctrs.*, 2020 WL 130147, at *2 (W.D. Okla. Jan. 9, 2020) (dismissing a defendant that was a mere "trade name" without legal existence). Thus, they are in no position to allege its control over Gig3. As for GigFounders, they assert it originally "created" GigAcquisitions3. (Compl. ¶35). That vague allegation has no bearing on whether GigFounders controlled GigAcquisitions3 or, indirectly, Gig3 with respect to the challenged conduct. *See Maher*, 144 F.3d at 1306 n.8 (alleging "ability to acquire the power to control" the primary violator is insufficient).

Lastly, Plaintiffs mistakenly contend that "[t]he only defendants to dispute their status as control persons are GigCapital Global and GigFounders." (Opp. at 46.) The Gig3 Defendants pointed out, however, that there are no factual allegations that any of the Gig3 Defendants "individually exerted control or influence over the day-to-day operations" of Lightning before or after the Merger. Plaintiffs' allegations that Katz, Dinu, and Miotto served on its board post-Merger, absent allegations that they participated in operations or day-to-day management, are insufficient. (Mot. at 25 (quoting *Adams*, 340 F.3d 1083, 1108 (10th Cir. 2003).) Accordingly, the Gig3 Defendants cannot be secondarily liable for statements made by Lightning and its executives.

## CONCLUSION

For all these reasons and those in the Gig3 Defendants' and Lightning Defendants' motions to dismiss, the Court should dismiss the claims against the Gig3 Defendants.

15

Dated: July 19, 2023

Respectfully submitted,

DLA PIPER LLP (US)

*s/ Melanie E. Walker*

Melanie E. Walker
Gaspard Rappoport
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067
(310) 595-3000
E-mail: melanie.walker@us.dlapiper.com
        gaspard.rappoport@us.dlapiper.com

and

David Freeburg
701 Fifth Avenue Suite 6900
Seattle, WA, 98104
(206) 839-4811
E-mail: david.freeburg@us.dlapiper.com

*Attorneys for Defendants GigAcquisitions3,
LLC, GigFounders, LLC, GigCapital Global,
Avi S. Katz, Raluca Dinu, Neil Miotto, Brad
Weightman, John Mikulsky, Andrea Betti-
Berutto, and Peter Wang*

16

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on July 19, 2023, I electronically filed the foregoing Reply in Further Support of the Gig3 Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

<u>*s/ David Freeburg*</u>
David Freeburg