**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02774-RMR-KLM (consolidated with 1:21-cv-03215-KLM)

JOHNNY R. SHAFER,
JUSTIN COHEN, Individually and On Behalf of All Others Similarly Situated,

        Plaintiffs,

        v.

LIGHTNING EMOTORS, INC.,
TIMOTHY R. REESER,
TERESA P. COVINGTON,
GIGACQUISITIONS3 LLC,
GIGCAPITAL GLOBAL,
AVI S. KATZ,
RALUCA DINU,
NEIL MIOTTO,
GIGFOUNDERS LLC,
BRAD WEIGHTMAN,
ANDREA BETTI-BERUTTO,
PETER WANG,
JOHN J. MIKULSKY, and
ROBERT FENWICK-SMITH,

        Defendants.

---

**LIGHTNING DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED COMPLAINT**

---

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………………..1

ARGUMENT………………………………………………………………………………….2

   I.    PLAINTIFFS MISSTATE THE LEGAL STANDARDS AND THEIR OWN
       ALLEGATIONS……………………………………………………………………… 2

   II.   PLAINTIFFS FAIL TO ALLEGE A FALSE OR MISLEADING STATEMENT…3

        A.  No Material False Statement about "Mentor-Investors"................................3

        B.  No Material False Statement about Lightning's Supply Chain……………..4

        C.  No Material False Statement about Lightning's Projections………………. 6

        D.  No Material False Statement about Amazon……………………………... 10

   III.  PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER….11

   IV.  PLAINTIFFS' SUBSIDIARY CLAIMS ALSO FAIL……………………………14

CONCLUSION………………………………………………………………………………… 15

**TABLE OF AUTHORITIES**

**Cases**                                                                                         **Page**

*In re Align Tech., Inc. Sec. Litig.*,
   2021 WL 1176642 (N.D. Cal. Mar. 29, 2021) ............................................................. 11

*In re Adient PLC Sec. Litig.*,
   2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ……...…………….…………………….. 9

*Anderson v. Spirit Aerosystems Holdings, Inc.*,
   827 F.3d 1229 (10th Cir. 2016) ................................................................................ 12

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
   505 F. Supp. 2d 662 (D. Colo. 2007) …………...................................................... 9

*Backe v. Novatel Wireless, Inc.*,
   642 F. Supp. 2d 1169 (S.D. Cal. 2009) ....................................................................11

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008) …………………………………………………… 8

*Bolling v. Dendreon Corp.*,
   2014 WL 12042559 (W.D. Wash. Jan. 28, 2014) ...................................................... 14

*In re Chembio Diagnostics, Inc. Sec. Litig.*,
   616 F. Supp. 3d 192 (E.D.N.Y. 2022) ………............................................................ 14

*Chen v. X Financial*,
   2021 WL 7449851 (E.D.N.Y. Dec. 9, 2021) ………......................................................4

*City of Philadelphia v. Fleming Companies, Inc.*,
   264 F.3d 1245 (10th Cir. 2001) ………….................................................................. 12

*Conde v. Sensa*,
   259 F. Supp. 3d 1064 (S.D. Cal. 2017) …………………………………………… 8

*In re Crocs, Inc. Sec. Litig.*,
   774 F. Supp. 2d 1122 (D. Colo. 2011) ...................................................................... 2

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ….............................................................................. 11

*Ellis v. Spectranetics Corp.*,
   2018 WL 1583837 (D. Colo. Apr. 2, 2018) ........................................................... 5, 11

*Employees' Ret. Sys. of R.I. v. Williams Cos.*,
   889 F.3d 1153 (10th Cir. 2018) ................................................................................. 2

*In re Eros Int'l PLC Sec. Litig.*,
   2021 WL 1560728 (D.N.J. Apr. 20, 2021) .................................................................10

*In re Eventbrite, Inc. Sec. Litig.*,
   2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ……….................................................. 3

**Page**

*Exkae Ltd. v. Domo, Inc.*,
　　2020 WL 7352735 (D. Utah Dec. 15, 2020) ................................................................ 8

*Friedman v. Endo Int'l PLC*,
　　2018 WL 446189 (S.D.N.Y. Jan. 16, 2018), *aff'd, Steamfitters' Ind. Pension
　　Fund v. Endo Int'l PLC*, 771 Fed. App'x 494 (2nd Cir. 2019) ..................................... 4

*In re Gold Res. Corp. Sec. Litig.*,
　　957 F. Supp. 2d 1284 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015) ....... 9, 13

*Gregory v. Pronai Therapeutics Inc.*,
　　297 F. Supp.3d 372 (S.D.N.Y. 2018) ........................................................... 6

*Hampton v. root9B Techs. Inc.*,
　　897 F.3d 1291 (10th Cir. 2018) ............................................................... 4, 5

*IBEW Local 98 Pension Fund v. Best Buy Co., Inc.*,
　　958 F. Supp. 2d 1065 (D. Minn. 2013) ........................................................10

*Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*,
　　45 F.4th 1236 (10th Cir. 2022) ................................................................. 5

*In re Level 3 Communs. Sec. Litig.*,
　　667 F.3d 1331 (10th Cir. 2012) ............................................................. 2, 14

*Lorusso v. Boulder Brands, Inc.*,
　　2017 WL 4365180 (D. Colo. Mar. 1, 2017) ..................................................10

*In re Lululemon Sec. Litig.*,
　　14 F. Supp. 3d 553 (S.D.N.Y. 2014) ……………………………………………..6

*Malouf v. S.E.C.*,
　　933 F.3d 1248 (10th Cir. 2019) ............................................................... 15

*Matrixx Initiatives, Inc. v. Siracusano*,
　　563 U.S. 27 (2011) .............................................................................. 14

*McDermott v. Inovio Pharms., Inc.*,
　　520 F. Supp. 3d 652 (E.D. Pa. 2021) ........................................................10

*Medina v. Clovis Oncology, Inc.*,
　　215 F. Supp. 3d 1094 (D. Colo. 2017) ....................................................... 14

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
　　540 F.3d 1049 (9th Cir. 2008) ................................................................. 11

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
　　218 F.R.D. 76 (S.D.N.Y. 2003) ................................................................8

*In re MicroStrategy, Inc. Sec. Litig.*,
　　115 F. Supp. 2d 620 (E.D. Va. 2000) ....................................................... 13

**Page**

*In re Molson Coors Beverage Co. Sec. Litig.*,
2020 WL 13499995 (D. Colo. Dec. 2, 2020) .................................................................. 13

*In re Molycorp, Inc. Sec. Litig.*,
157 F. Supp. 3d 987 (D. Colo. 2016) .......................................................... 12

*In re Molycorp, Inc. Sec. Litig.*,
2015 WL 1540523 (D. Colo. Mar. 31, 2015) ...........................................................9, 13

*In re Overstock Sec. Litig.*,
2020 WL 5775845 (D. Utah Sept. 28, 2020) ............................................................ 8, 9

*Pac. Specialty Ins. Co. v. Poirier*,
408 F. Supp. 3d 1241 (D. Colo. 2019) ......................................................... 12

*Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*,
2023 WL 4418886 (N.D. Cal. May 24, 2023) ………………………………………… 8

*In re Qudian Inc. Secs. Litig.*,
2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019) ............................................................ 4

*Rumbaugh v. USANA Health Scis., Inc.*,
2018 WL 5044240 (D. Utah Oct. 17, 2018) ................................................ 13

*S.E.C. v. Mahabub*,
343 F. Supp. 3d 1022 (D. Colo. 2018), *aff'd sub nom. S.E.C. v. GenAudio Inc.*,
32 F.4th 902 (10th Cir. 2022) .................................................... 15

*S.E.C. v. Rio Tinto PLC*,
41 F.4th 47 (2d Cir. 2022) .................................................... 15

*Slater v. A.G. Edwards & Sons, Inc.*,
719 F.3d 1190 (10th Cir. 2013) .................................................... 2

*Smallen v. W. Union Co.*,
2019 WL 1382823 (D. Colo. Mar. 27, 2019) ................................................ 2

*Smallen v. W. Union Co.,*
950 F.3d 1297 (10th Cir. 2020) ....................................................11

*Stockman v. Flotek Indus.*,
2010 WL 3785586 (S.D. Tex. Sep. 29, 2010) ............................................ 7

*In re Supercom Inc. Sec. Litig.*,
2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018) ............................................ 9

*TDC Lending LLC v. Private Capital Grp., Inc.*,
340 F. Supp. 3d 1218 (D. Utah 2018) ...................................................... 11

*Terenzini v. Goodrx Holdings*,
2022 WL 122944 (C.D. Cal. Jan. 6, 2022) ……………………………………………... 4

*Turner Ins. Agency, Inc. v. Farmland Partners Inc.*,
    2019 WL 2521834 (D. Colo. June 18, 2019) ....................................................... 11, 13

*United Food v. Pilgrim's Pride Corp.*,
    2022 WL 684169 (D. Colo. Mar. 8, 2022) ................................................................ 7

*Voulgaris v. Array Biopharma Inc.*,
    2020 WL 8367829 (D. Colo. Nov. 24, 2020) ............................................................ 4

*Wolfe v. Aspenbio Pharma, Inc.*,
    587 F. App'x 493 (10th Cir. 2014) ......................................................................... 12

*In re XL Fleet Corp. Sec. Litig.*,
    2022 WL 493629 (S.D.N.Y. Feb. 17, 2022) ............................................................ 15

**Statutes**

15 U.S.C. § 78u–5(i)(1)(D) .......................................................................................... 9

## INTRODUCTION

***Detroit Free Press***: "GM to temporarily halt most of its full-size pickup production due to chip shortage."

***CNBC***: "Chip shortage causes Ford to slash vehicle production at several plants in July"

In July 2021, Ford and GM shocked the automotive industry by halting their production of truck chassis. Ripple effects from those shutdowns were expected to continue well into 2023, according to GM CEO Mary Barra, who told CNBC in July 2022 that "General Motors is handling production issues on a 'weekly basis.'"

Loveland-based Lightning eMotors specializes in equipping Ford and GM chassis with electric powertrains designed and manufactured by Lightning. Lightning went public through a reverse merger signed in December 2020, and concluded in May 2021. As of November 2020, the Company projected healthy growth based on its confidence in the redundancies built into its supply chain. Plaintiffs improperly fault the Company for events that occurred after the November 2020 projections, which the Company obviously could not have anticipated. After the May 2021 merger closed, the Company began executing its plan. In July 2021, that plan was upended when *both* Ford and GM stopped making chassis. Lightning's work became constrained to retrofitting used rather than new chassis.

Plaintiffs' entire lawsuit is based on unfounded speculation that somehow Lightning's executives *must have known* all this would happen and concealed it from the market. The Complaint lacks the particularized facts required to plead fraud under the federal securities laws. Plaintiffs ignore the dramatic Ford and GM shutdowns of July 2021 that upended the industry. More fundamentally, Plaintiffs' theory does not make sense. When Lightning became public, over 70% of the Company was held by insiders, including BP. *See* Ex. 1 at 300.[1] As a result of the chassis shortage, insiders lost far more money than the public.

---

[1] All references to "Ex." are to exhibits to the Declaration of Doru Gavril (ECF 100).

1

Notwithstanding this lawsuit, Lightning has weathered this difficult period relatively well.  Last year, the Company announced the development of its own truck chassis.  Satisfied customers include DHL and Forest River, a leading transit bus manufacturer.  The Company remains focused on production.  Plaintiffs' lawsuit should be dismissed.

## ARGUMENT

### I.   PLAINTIFFS MISSTATE THE LEGAL STANDARDS AND THEIR OWN ALLEGATIONS

Plaintiffs base their Opposition on misstatements of both the law and the Complaint.

***First,*** Plaintiffs try to lower the pleading bar to mere plausibility.  Opp. at 11.  But as the Tenth Circuit held, "[u]nder the Private Securities Litigation Reform Act . . . a heightened pleading standard applies."  *In re Level 3 Communs. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012).  Plaintiffs cannot evade that "heavy burden at the pleadings stage."  *Id*.; *see also Employees' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (PSLRA "marked a bipartisan effort to curb abuse in private securities lawsuits").

***Second,*** Plaintiffs incorrectly ask that the Court take all their assertions as true, no matter how generalized or conclusory.  Opp. at 11.  This runs counter to Tenth Circuit law and the PSLRA: only "well-pled factual allegations . . ., as distinguished from conclusory allegations" are taken "as true."  *Smallen v. W. Union Co.*, 2019 WL 1382823, at *1 n.3 (D. Colo. Mar. 27, 2019).  The Complaint's "[g]eneralized or conclusory allegations of fraud will not be sufficient."  *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1140 (D. Colo. 2011).

***Third,*** Plaintiffs seek to prevent the Court from considering anything contrary to their narrative.  Opp. at 15 n.8.  But "[i]n securities cases, it is not unusual to consider documents incorporated by reference into the complaint, public documents filed with the Securities and Exchange Commission, and documents the plaintiffs relied upon in bringing suit."  *Williams*, 889 F.3d at 1158.  "[I]f those documents conflict with allegations in the complaint, we need not accept those allegations as true."  *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190,

2

1196 (10th Cir. 2013).  Defendants may "us[e] the doctrines of judicial notice or incorporation by reference to create factual disputes with a plaintiff's *conclusory* allegations." *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at \*7 (N.D. Cal. Apr. 28, 2020).

***Finally,*** Plaintiffs try to reinterpret their Complaint.  Plaintiffs now cite to a state court opinion involving a first-impression state law claim, a different pleading standard, a different set of defendants, and a different set of facts in an attempt to circumvent the stringent pleading standard under federal securities laws.  Opp. at 9-10; *see* ECF 90. Plaintiffs also rely on secondhand characterizations of documents in an untested complaint. Opp. at 10.  These arguments do not save Plaintiffs' deficient pleadings.

## II.    PLAINTIFFS FAIL TO ALLEGE A FALSE OR MISLEADING STATEMENT

The Opposition does not cure Plaintiffs' failure to allege a material false statement under their four theories: (1) Gig3's intended "mentor-investor" partnership; (2) Lightning's supply chain; (3) Lightning's projections; or (4) Lightning's relationship with Amazon.

### A.    No Material False Statement about "Mentor-Investors"

The Opposition significantly narrows Plaintiffs' initial "Mentor-Investor™" theory. Opp. at 23-27.  The Complaint claimed that, beginning in May 2020—a year before the Business Combination and months before Gig3 was introduced to Lightning—Gig3's representatives already intended to leave Lightning's Board.  ¶ 132.  Defendants pointed out how this theory presented a temporal impossibility, much less was supported by any facts. MTD at 8-9.  Plaintiffs now abandon most of the alleged misstatements, and instead focus on "Mentor-Investor™" statements in March 2021.  Opp. at 23.

Plaintiffs' remaining argument is pure speculation.  Opp. at 23-27.  From the reclassification of Gig3's director terms in May 2021, Plaintiffs infer that "the Gig Defendants had not been forthcoming about their plans."  Opp. at 24.  But the Opposition admits that it was "the new Lightning Board" that "reclassified Katz's and Dinu's . . . terms."

3

Opp. at 24.  Plaintiffs do not plead that Gig3's representatives chose to leave Lightning's

Board or knew that their terms would be reclassified ahead of time, much less as of March

2021.  MTD at 8-9.  The Court is "not obliged to infer" a misrepresentation.  *Hampton v.*

*root9B Techs. Inc.*, 897 F.3d 1291, 1302-03 (10th Cir. 2018) (affirming dismissal).

Lacking actionable facts, Plaintiffs attempt to blur the distinction between Gig3,

which made the March 2021 statements, and the Lightning Board, which subsequently made

the change.  Opp. at 25.  The cases that Plaintiffs cite are inapposite: they each involve

near-term changes by the *same* individuals who made the challenged statements.  Opp. at 25.[2]

Plaintiffs cannot distinguish *Terenzini v. Goodrx Holdings* on the grounds that it involved

plans by a third-party.  Opp. at 25 n.15 (citing 2022 WL 122944 (C.D. Cal. Jan. 6, 2022)).

The same is true here: the third-party was Lightning's Board.

The Court should also reject this claim because Plaintiffs challenge inactionable

future intentions.  MTD at 9.  "An alleged misstatement or omission 'must be one of existing

fact, and not merely an expression of opinion, expectation, or declaration of intention.'"

*Friedman v. Endo Int'l PLC*, 2018 WL 446189, at *4 (S.D.N.Y. Jan. 16, 2018), *aff'd*,

*Steamfitters' Ind. Pension Fund v. Endo Int'l PLC*, 771 Fed. App'x 494 (2nd Cir. 2019).

**B.    No Material False Statement about Lightning's Supply Chain**

Plaintiffs' challenge to statements about Lightning's supply chain fails because the

Opposition cannot refute that these: (i) are inactionable, subjective statements and (ii) are not

backed by particularized, contemporaneous allegations.  Opp. at 12-19.

***Inactionable Statements.***  The challenged statements about Lightning's supply chain

are subjective and therefore inactionable.  MTD at 17.  Plaintiffs only claim in a footnote that

---

[2] *Voulgaris v. Array Biopharma Inc.*, 2020 WL 8367829, at *16-17 (D. Colo. Nov. 24, 2020)
(company changed the proposed indication for *its* drug candidate); *Chen v. X Financial*, 2021
WL 7449851, at *9 n.65 (E.D.N.Y. Dec. 9, 2021) (company changed *its own* business plan
several weeks after touting it); *In re Qudian Inc. Secs. Litig.*, 2019 WL 4735376, at *9
(S.D.N.Y. Sept. 27, 2019) (company failed to disclose that *it* was launching a new business).

4

the statements are not "meaninglessly vague."  Opp. at 13 n.4.  But the Tenth Circuit has held

that "positive generalizations about a company's performance will typically not give rise to

liability under section 10(b); rather, to be actionable, the statements must be grounded in

**concrete metrics** or other **objectively verifiable** data."  *Indiana Pub. Ret. Sys. v. Pluralsight,*

*Inc.*, 45 F.4th 1236, 1249, 1251-52 (10th Cir. 2022) (emphases added) (statements that

company was "starting to see the efficiencies," had "built out some of the infrastructure

around sales to scale," and was "killing it" were inactionable).  Statements that, for example,

Lightning "built an extensive ecosystem of supply-chain partners" (¶ 148) and had

"optimize[d] [its] supply chain for quality, reliability, and cost" (¶ 163) are similarly "not

capable of objective verification."  *Pluralsight*, 45 F.4th at 1248-49.

  ***No Particularized Facts.***  Plaintiffs ask the Court to ***assume*** that a "crippling shortage

of batteries," rather than the sudden chassis shortage of July 2021, caused the supply chain

issues of summer 2021.  Opp. at 14.  Their only support is to recycle CWs' stale factory-floor

gripes.[3]  They allege no facts that such complaints—even if accurate—contradict Lightning's

statements.  *See root9B*, 897 F.3d at 1301 (no falsity where "there [was] nothing inherently

inconsistent" between statement and allegation).  Nor do they allege any ***facts*** that occasional

battery delays rendered Lightning unable to meet its internal forecasts.  Moreover, Lightning

repeatedly warned the public as the supply chain experienced stress.  *E.g.*, Ex. 4 at Ex. 99.3 at

3 (industry faced "[e]xtreme supply chain shortages"); Ex. 10 at Ex. 99.1 at 41 ("[c]hassis

and battery supply constraints [were] impacting revenue timing").  As this Court has held,

"allegations that defendants should have anticipated future events and made certain

disclosures earlier than they actually did do not suffice to make out a claim of securities

fraud."  *Ellis v. Spectranetics Corp.*, 2018 WL 1583837, at *5 (D. Colo. Apr. 2, 2018).

---

[3] The Opposition takes repeated liberties with the CWs' allegations.  For example, Plaintiffs allege that CW1 alleged that he had first-hand knowledge that any vehicles were being "double count[ed]."  Opp. at 16.  No such allegation is attributed to CW1 in the Complaint.

Plaintiffs' dependence on anonymous, low-ranking employee gripes reveals their lack of substantive, contemporaneous allegations. Plaintiffs do not dispute that many of the CWs departed Lightning about a year before the challenged statements, making them incapable of shedding light on the Company at the relevant time. MTD at 16. Even those CWs who were still employees during the Class Period make general statements "unmoored in time," rather than identifying specific issues at specific times that contradict the challenged statements. *Gregory v. Pronai Therapeutics Inc.*, 297 F. Supp.3d 372, 408-09 (S.D.N.Y. 2018) (rejecting CW allegations that did not specify "when within that time window" they were made). *In re Lululemon Sec. Litig.*, which also involved former employees' allegations of purported "widespread" quality control issues is on point. MTD at 15-16 (citing 14 F. Supp. 3d 553 (S.D.N.Y. 2014)). As in *Lululemon*, low-level former employees' gripes "do not substitute for well-pleaded allegations of contemporaneous falsity—that [defendants] . . . knew their statements were false or misleading *at the time they were made*." 14 F. Supp. 3d at 579-80.

### C.    No Material False Statement about Lightning's Projections

The Complaint fails to plead contemporaneous, particularized facts that Lightning's projections were false when made *and* are not covered by the Safe Harbor. Opp. at 19-23.

***Plaintiffs Misrepresent the Timing of Lightning's Projections.*** Plaintiffs argue that Lightning was "not on track or well-positioned to meet its guidance at the time the statements were made." Opp. at 19. They claim that Lightning somehow "reaffirmed" its November 2020 projections by including them in the March 2021 Proxy (Opp. at 21 n.13), even though the projections were dated *November 2020* and the Proxy warned that they "*do not take into account any circumstances or events occurring after the date they were prepared*." Ex. 1 at 163-64. In an admission that their case is little more than "fraud by hindsight," Plaintiffs do not challenge the projections at the time they were made. *Id.*[4] By improperly imputing the

---

[4] Plaintiffs state that Lightning faced the same "supply and production shortcomings" in November 2020, but cite no facts supporting that assertion. Opp. at 20, 21 n.13.

November 2020 projections to March 2021, Plaintiffs try to take advantage of four months of intervening events.  But the Proxy warned in capital letters that the Company "UNDERT[OOK] NO OBLIGATIONS AND EXPRESSLY DISCLAIMS ANY RESPONSIBILITY TO UPDATE OR REVISE  . . . THESE FINANCIAL PROJECTIONS TO REFLECT CIRCUMSTANCES OR EVENTS, INCLUDING UNANTICIPATED EVENTS, THAT MAY HAVE OCCURRED OR THAT MAY OCCUR AFTER THE PREPARATION OF THESE FINANCIAL PROJECTIONS."  Ex. 1 at 163; MTD at 10 n.3.

*No Particularized Facts.*  Ignoring this temporal inconsistency, Plaintiffs next seize on Lightning's Q1-21 and Q2-21 production numbers to infer fraud.  Opp. at 33-35 & 35 n.9. They mischaracterize Lightning's 2021 projections as assuming linear quarterly production. *Id.*  Their theory ignores that Lightning disclosed its plans to ramp up production in the second half of 2021 using proceeds from the merger, which did not close until May 2021.  ¶ 136 ("proceeds from the merger would 'support Lightning eMotors' management's business plan to *scale the operations*'").  As a result, production for the first half of 2021 could not be representative of the second half of the year.  In short, Plaintiffs do not allege facts about "any financial projections that [defendants] overstated, fail to specify any dates on which [defendants] received financial projections that they overstated, and fail to specify the amounts by which [defendants] overstated any financial projections."  *Stockman v. Flotek Indus.*, 2010 WL 3785586, at \*15 (S.D. Tex. Sep. 29, 2010); *see also United Food v. Pilgrim's Pride Corp.*, 2022 WL 684169, at \*4 (D. Colo. Mar. 8, 2022) ("Plaintiff makes almost no attempt to quantify the financial impact").[5]

---

[5] The Opposition repeats Plaintiffs' conclusion that Lightning's order backlog was misleading because it "lacked the parts needed to convert the orders to completed EVs."  Opp. at 14. This ignores that, as Defendants explained, the order backlog reflects demand, not supply. MTD at 11 n.5.  Plaintiffs also selectively edited the challenged statement by omitting that the "visibility" at issue is "where that revenue comes from"—i.e., customer orders.  After Defendants pointed out that Lightning publicly disclosed that orders in its backlog were cancellable (MTD at 12), Plaintiffs silently withdrew this theory in the Opposition.

Instead of pleading particularized facts, Plaintiffs repeat untested and uncorroborated allegations about so-called "fabricated forecasts." Opp. at 10. But as courts around the country recognize, "unproven state-court allegations may not validly support a plaintiff's cause of action[.]" *Conde v. Sensa*, 259 F. Supp. 3d 1064, 1070 (S.D. Cal. 2017); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (striking references to unadjudicated complaints). Just recently in *Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, Judge Thompson struck allegations that "cite[d] specifically to [another] Complaint as the source of the information[,]" and which plaintiffs "lift[ed] . . . without adequate independent corroboration." 2023 WL 4418886, at *4 (N.D. Cal. May 24, 2023). "[I]f the Court were here to accept as sufficient the current, federal plaintiff's 'adoption' of those bare state-court pleadings, then 'two plaintiffs could file separate actions each relying on the allegations in the other's complaint and both would state a claim[.]' 'Clearly, [the Federal Rules of Civil Procedure] do not allow this type of pleading loophole'" and neither should this Court. *Conde*, 259 F. Supp. 3d at 1071.

Plaintiffs attempt to distinguish Defendants' authorities by claiming that those cases "did not include well-pled facts demonstrating that their guidance was not made in good faith." Opp. at 20 n.12. To the contrary: those authorities cited former employees who speculated about various constraints facing each company—precisely the same situation as here. *In re Overstock Sec. Litig.*, 2020 WL 5775845, at *6-7 (D. Utah Sept. 28, 2020) (CWs disagreed with company's basis for increasing guidance); *Exkae Ltd. v. Domo, Inc.*, 2020 WL 7352735, at *6 (D. Utah Dec. 15, 2020) (CWs disagreed with forecasts). Plaintiffs offer nothing beyond the conjecture rejected in those cases. "There is no well-pled fact suggesting that the guidance did not reflect the company's good faith projection as to its future performance at the time it was given." *Overstock*, 2020 WL 5775845, at *6.[6]

---

[6] Plaintiffs' citation to *Berson v. Applied Signal Tech., Inc.* is misleading. Opp. at 20 (citing 527 F.3d 982, 985-87 (9th Cir. 2008)). In *Berson*, statements touting the backlog were false

***PSLRA Safe Harbor.***  Plaintiffs do not dispute that "guidance . . . is the quintessential example of a forward-looking statement protected by the PSLRA's safe harbor."  MTD at 12 (citing *Overstock*, 2020 WL 5775845, at \*6).   Nor do they attempt to allege particularized facts establishing the "actual knowledge" required to challenge forward-looking statements. *See Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 681 (D. Colo. 2007) ("Plaintiff's allegations fall far short of establishing a strong inference that Red Robin had actual knowledge that its earnings forecasts were false and misleading when made").

Instead, Plaintiffs argue that Defendants' later statements about the projections were based on present facts.  Opp. at 20-23.  But "[s]uch an assertion is necessarily implicit in every future projection[,]" and would render the Safe Harbor meaningless.  *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1296 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015).  Judge Moore rejected a similar challenge that statements about the future were "predicated on the representation of the past and current" facts.  *In re Molycorp, Inc. Sec. Litig.*, 2015 WL 1540523, at \*26 (D. Colo. Mar. 31, 2015).  He held that "[t]hese statements fall under the PSLRA's protection because they are statements of management's plans and objectives for future operations, notwithstanding the fact that there may be an underlying assumption."  *Id.*; 15 U.S.C § 78u–5(i)(1)(D) (Safe Harbor protects "any statement of the assumptions underlying or relating to" projection).  The same is true here.

In addition, "statements that the Company was 'on track' to reach the projected margin expansion and related growth are 'too vague to be actionable apart from the future projection.'"  *In re Adient PLC Sec. Litig.*, 2020 WL 1644018, at \*19 (S.D.N.Y. Apr. 2, 2020) (collecting cases); *In re Supercom Inc. Sec. Litig.*, 2018 WL 4926442, at \*21 (S.D.N.Y. Oct. 10, 2018) (statement that defendants had "'all the information in hand to support these numbers'—does not provide any specific information about SuperCom's current

---

because a customer who provided 80% of the revenues had issued a "stop work" order.  527 F.3d at 986.  Plaintiffs make no analogous allegations here.

circumstances"). Plaintiffs' cases included the "specific information" that made present-tense statements actionable. Opp. at 21-22.[7] By contrast, generic statements like "Lightning eMotors has maintained remarkable momentum" and Lightning is "well-positioned to achieve its 2021 forecast" mirror the inactionable statements in *Adient*.[8]

Plaintiffs also call the Company's warnings "boilerplate." Opp. at 23. But the Company repeatedly disclosed the exact risks at issue.[9] Even if it had not, "the 'failure to include the particular factor that ultimately causes the forward-looking statement not to come true'" does not void the Safe Harbor. *Boulder Brands*, 2017 WL 4365180, at *11.

### D. No Material False Statement about Amazon

Plaintiffs recycle their conclusory assertion that "Amazon was no longer a Lightning customer." Opp. at 18. But they failed to plead contemporaneous facts that Amazon was not a "key customer[]" in January 2021. MTD at 17 n.8. They merely repeat assertions made by former employees—*none* of whom was at Lightning in January 2021. *Id.* Moreover, no source alleges that Amazon actually canceled its contract. ¶ 119 ("order was put on hold"); ¶ 122 (Amazon *threatened* to "pull the contract"); ¶ 128 ("vehicles were 'well below Amazon's

---

[7] *McDermott v. Inovio Pharms., Inc.*, 520 F. Supp. 3d 652, 666 (E.D. Pa. 2021) (statements "were inextricably linked to Inovio's current manufacturing capabilities"); *IBEW Local 98 Pension Fund v. Best Buy Co., Inc.*, 958 F. Supp. 2d 1065, 1076 (D. Minn. 2013) ("'on track' and 'in-line' statements were materially false because, as of September 14, 2010, Best Buy had confirmed how far off-track it was"); *In re Eros Int'l PLC Sec. Litig.*, 2021 WL 1560728, at *7 (D.N.J. Apr. 20, 2021) ("statements at issue here can meaningfully be separated into present and forward-looking statements"); *Lorusso v. Boulder Brands, Inc.*, 2017 WL 4365180, at *10 (D. Colo. Mar. 1, 2017) ("Defendants rely on then-existing representations").
[8] Plaintiffs mash together unrelated sentences to create "mixed statements." For example, the Opposition claims that "Defendants touted 2021 projected revenues of $63 million, based upon sales supported by fully 'contracted orders . . . in place today' and an 'annual production capacity of 1,000 vehicles today.'" Opp. at 22. But Lightning's statement that it has an "annual production capacity of 1,000 vehicles today" is located in a different section of the press release, unrelated to Lightning's financial projections. *See* ¶ 134.
[9] Warnings accompanying the Company's projections included: "We are dependent on our suppliers, some of which are single or limited source suppliers, and the inability of these suppliers to deliver the necessary components of our vehicles at prices and volumes, and specifications acceptable to us could have a material adverse effect on our business, prospects, financial condition and operating results." Ex. 1 at 62.

expectations'"). Plaintiffs claim that Lightning's identification of Amazon as a "key customer" was "speculative." Opp. at 18. But it is *Plaintiffs' burden* to plead particularized facts that the statement was false when made. *See In re Align Tech., Inc. Sec. Litig.*, 2021 WL 1176642, at *7 (N.D. Cal. Mar. 29, 2021) (dismissing claim for failure to plead facts).

## III.   PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER

As an independent basis for dismissal, Plaintiffs do not meet the "heavy burden" of pleading scienter. *Smallen v. W. Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020). Lacking *any* contemporaneous particularized facts about *any* Defendant's state of mind, MTD at 18, "the totality of the allegations regarding Defendants' conduct . . . leaves more questions about their intent than answers." *Spectranetics*, 2018 WL 1583837, at *8.

***Corporate Size Is Irrelevant.*** Plaintiffs claim that Lightning's "relatively small size" supports scienter. Opp. at 31. But "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008). Plaintiffs provide no facts explaining how Lightning's size supports scienter. *See Turner Ins. Agency, Inc. v. Farmland Partners Inc.*, 2019 WL 2521834, at *6 (D. Colo. June 18, 2019) (employee transaction in 16-person company); *Backe v. Novatel Wireless, Inc.*, 642 F. Supp. 2d 1169, 1183 (S.D. Cal. 2009) ("buck stopped with [CEO]" in 44-person company). Plaintiffs' assertion that "roles in a small company necessarily support the conclusion" that Defendants were "presented with information that should have raised red flags" must fail. *TDC Lending LLC v. Private Capital Grp., Inc.*, 340 F. Supp. 3d 1218, 1228 (D. Utah 2018).

Nor do "[g]eneral allegations" of Mr. Reeser's so-called "'hands-on' management style" support scienter. *In re Daou Sys., In*c., 411 F.3d 1006, 1022 (9th Cir. 2005) (allegation of "their interaction with other officers and employees, their attendance at meetings, and their

11

receipt of unspecified weekly or monthly reports are [also] insufficient."); Opp. at 32.

Moreover, these allegations are based on a CW who left Lightning *almost a year before* the

challenged statements, ¶¶ 114-15,[10] and Plaintiffs identify no specific information presented

to management. *See Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1240

(10th Cir. 2016) (rejecting "witness accounts" that "d[id] not adequately describe the contents

of the quarterly reports allegedly sent to the Spirit executives" and "[g]eneral accounts of

mismanagement and delay"). "Generalized imputations of knowledge do not suffice,

regardless of defendants' positions within the company." *City of Philadelphia v. Fleming

Companies, Inc.*, 264 F.3d 1245, 1263-64 (10th Cir. 2001).

Finally, Plaintiffs cannot assume scienter because "Lightning was producing only one

product—EVs." Opp. at 32. As a matter of fact, Lightning produces charging systems and

accessories, licenses technology, and offers analytics and energy-as-a-service. *See* Ex. 2 at 6,

Ex. 6 at 8. Moreover, a bare allegation that because something "was a singularly important

project for that company, it is a reasonable inference that [senior management] would closely

monitor it . . . simply cannot carry the Investors over the PSLRA's heightened bar." *Wolfe v.

Aspenbio Pharma, Inc.*, 587 F. App'x 493, 497 (10th Cir. 2014). Plaintiffs' sole case said

nothing about inferring scienter for single-product companies: there, plaintiffs pleaded facts

showing that the executives accessed a *specific reporting system* that provided the

information. Opp. at 32 (citing *In re Molycorp, Inc. Sec. Litig.*, 157 F. Supp. 3d 987, 1011

(D. Colo. 2016)). Plaintiffs make no such allegation here.

*Timing Allegations.* Plaintiffs' theory that the proximity between the June 2021

statements and August 2021 withdrawal of guidance suggests scienter (Opp. at 33-35)

---

[10] Plaintiffs neither respond to Defendants' argument that many of the CWs were not
employed at Lightning during the relevant time, nor do they address their failure to allege that
the CWs had regular contact with Defendants. MTD at 20. The Court may infer that
Plaintiffs concede these points. *See Pac. Specialty Ins. Co. v. Poirier*, 408 F. Supp. 3d 1241,
1249 (D. Colo. 2019) (party "appear[s] to concede" argument where it "failed to respond").

ignores critical intervening events: (1) Ford and GM halted chassis production; and (2) supply chains reeled from the Delta wave. *See Gold,* 776 F.3d at 1117 ("in the context of scienter, we must consider plausible opposing inferences"). Plaintiffs' case, *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000), is dissimilar. There, the company changed its explanation for its restated financials within 24 hours. *Id.* at 641.[11]

Plaintiffs also misrepresent events to further their argument that Lightning's May 2021 guidance reduction establishes scienter. Opp. at 34. The timing of Lightning's reduced guidance was in line with its pre-scheduled Q1-21 Form 10-Q and earnings. *See* Ex. 4 at Ex. 99.3. The May 2021 announcement also revised *November 2020* projections. In other words, Lightning revised its guidance 6 months after the projections. *Supra* at 6-7.

Finally, Plaintiffs assume that the departure of Lightning's Chief Procurement Officer was suspicious solely due to his brief tenure. Opp. at 35. They ignore clear law requiring "supporting facts" for executive departures to suggest scienter (MTD at 21), and cite cases that cut against their argument. Opp. at 35. In *Molson Coors*, the court held that it "gives these executive departures no weight." 2020 WL 13499995, at *11 (D. Colo. Dec. 2, 2020). In *Farmland Partners*, *five* directors resigned within a short period. 2019 WL 2521834, at *6. Plaintiffs allege no such facts. "An inference of scienter will 'never' be as compelling as the inference that the resignation was due to 'unrelated personal or business reasons.'" *Rumbaugh v. USANA Health Scis., Inc.*, 2018 WL 5044240, at *9 (D. Utah Oct. 17, 2018).

***Generic Motive Allegations.*** Courts regularly dismiss generic "motive" allegations because they are common to all companies and executives. MTD at 22-23. Plaintiffs attempt to distinguish Defendants' cases (Opp. at 36), but cannot avoid that Lightning had a motive

---

[11] Plaintiffs' argument also suffers from an internal contradiction. They now claim that on August 16, 2021, Lightning "falsely blame[d]" the chassis shortage for the Company's "production failures." Opp. at 33. But their Complaint alleges that this same disclosure was "[t]he truth" that precipitated the stock drop. ¶ 16. Plaintiffs cannot have it both ways. If Plaintiffs maintain that the chassis shortage disclosure was a false statement, the Complaint lacks a corrective disclosure and should be dismissed for a failure to allege loss causation.

"to present the company as successful, to facilitate corporate transactions, and to raise capital." *Molycorp*, 2015 WL 1540523, at *24; *Level 3*, 667 F.3d at 1345.

Plaintiffs fail to liken this case to *Medina v. Clovis Oncology, Inc.* Opp. at 36-37 (citing 215 F. Supp. 3d 1094 (D. Colo. 2017)). As another court said, *Clovis* is "factually distinguishable from the instant case because the plaintiffs there had thoroughly pleaded that the defendant companies were in dire financial straits and desperate for a capital infusion to fund their operating expenses." *In re Chembio Diagnostics, Inc. Sec. Litig.*, 616 F. Supp. 3d 192, 200 (E.D.N.Y. 2022). In *Clovis*, the company *had* to raise money to survive because it had *no* sales revenue and operating expenses of almost $500 million. Despite Plaintiffs' hyperbole, Lightning faced no such peril. Even Plaintiffs admit that Lightning used its loan "to purchase equipment" and turbocharge the Company's growth. Opp. at 37. Although Plaintiffs speculate about regular layoffs (Opp. at 35-36), the only one mentioned in the Complaint occurred in May 2020—right as the pandemic hit the United States. ¶ 119 (CW-2 admits that "management claimed the lay-offs were pandemic-related").

Finally, Plaintiffs ignore this Circuit's consensus that compensation does not support an inference of scienter (MTD at 22-23) instead merely repeating their allegations without legal support. Opp. at 37 n.20. If anything, Lightning's executives were *disincentivized* from engaging in any purported fraud because their compensation fell when Lightning's stock price fell. *See Bolling v. Dendreon Corp.*, 2014 WL 12042559, at *12 (W.D. Wash. Jan. 28, 2014) ("Defendants had more incentive to help [the company] succeed than to commit a self-destructive fraud" because "compensation was largely based on [its] success.").[12]

## IV.    PLAINTIFFS' SUBSIDIARY CLAIMS ALSO FAIL

***No Scheme Liability.*** The Opposition mistakenly claims that the Tenth Circuit

---

[12] Plaintiffs also invent a "duty to know" (Opp. at 32), but neither of their cases support this theory. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) (no "duty to know"); *Clovis*, 215 F. Supp. 3d at 1127 (no "duty to know"; court assumed knowledge based on "detailed, data-laden responses to analyst questions on multiple occasions").

14

permits duplicative "scheme liability" claims. Opp. at 27 (citing *Malouf v. S.E.C.*, 933 F.3d 1248 (10th Cir. 2019)). But *Malouf* involved scheme claims only, not whether they can piggyback on misstatement claims. 933 F.3d at 1259-60. The Second Circuit has also rejected Plaintiffs' theory, holding that expanding scheme liability claims would erode the securities regime because it "would thereby lower the bar for primary liability for securities fraud, along with the pleading standard in cases involving private plaintiffs." *S.E.C. v. Rio Tinto PLC*, 41 F.4th 47, 52 (2d Cir. 2022). Courts here agree: "The prevailing view among the district courts of this circuit is that liability under the foregoing provisions—often called 'scheme liability'—may not be based simply on the same misstatements or material omissions that support a Securities Act § 17(a)(2) claim or Rule 10b-5(b) claim." *S.E.C. v. Mahabub*, 343 F. Supp. 3d 1022, 1047 (D. Colo. 2018). As the purported "deceptive acts," the Opposition lists the same conclusory allegations that form the basis for its misstatement theory. Opp. at 27-28. Plaintiffs cannot transform these into a scheme claim.[13]

**Section 14(a) Claim Fails.** The Section 14(a) claim fails because it is premised on the same deficient theories as Plaintiffs' Section 10(b) claim. MTD at 23-24. And the so-called negligence allegations (Opp. at 41-44) do not show that the Complaint "states[s] facts that give rise to a strong inference of negligence." MTD at 24.

**Section 11 Claim Fails.** Plaintiffs' admit that its Section 11 claim is based on "fraud by hindsight," namely a purported "massive discrepancy between the intentions expressed by the Gig Defendants in the Registration Statement and what actually occurred." Opp. at 50. Plaintiffs cannot allege falsity simply by contrasting May 2020 with May 2021. *Supra* at 3-4.

## CONCLUSION

The Lightning Defendants respectfully request that the Complaint be dismissed.

---

[13] Their cases are inapposite. Opp. at 28-29. As the Second Circuit noted, "misstatements or omissions were *not* the sole basis for scheme liability in *Lorenzo*." 41 F.4th at 53. In *XL Fleet*, there was no misstatement claim against the defendant subject to the scheme liability claim, *In re XL Fleet Corp. Sec. Litig.,* 2022 WL 493629, at *6-8 (S.D.N.Y. Feb. 17, 2022).

Dated: July 19, 2023                    FRESHFIELDS BRUCKHAUS DERINGER US LLP


                                        */s/ Boris Feldman*              .
                                         Boris Feldman
                                         Doru Gavril
                                         Freshfields Bruckhaus Deringer US LLP
                                         855 Main Street
                                         Redwood City, CA 94063
                                         (650) 618-9250
                                         boris.feldman@freshfields.com

                                         *Attorneys for Defendants Lightning eMotors,
                                         Inc., Timothy R. Reeser, Teresa P.
                                         Covington, and Robert Fenwick-Smith*

16

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2023, I caused to be electronically filed the foregoing

LIGHTNING DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

PLAINTIFFS' CONSOLIDATED COMPLAINT with the Clerk of the Court using the

CM/ECF system, which will send notifications of such filing to all registered participants.


*/s/ Boris Feldman*        .
 Boris Feldman

17