**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02774-RMR-KLM (consolidated with 1:21-cv-03215-KLM)

JOHNNY R. SHAFER,
JUSTIN COHEN, Individually and On Behalf of All Others Similarly Situated,

       Plaintiffs,

       v.

LIGHTNING EMOTORS, INC.,
TIMOTHY R. REESER,
TERESA P. COVINGTON,
GIGACQUISITIONS3 LLC,
GIGCAPITAL GLOBAL,
AVI S. KATZ,
RALUCA DINU,
NEIL MIOTTO,
GIGFOUNDERS LLC,
BRAD WEIGHTMAN,
ANDREA BETTI-BERUTTO,
PETER WANG,
JOHN J. MIKULSKY, and
ROBERT FENWICK-SMITH,

       Defendants.

---

**LIGHTNING DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTION TO THE
REPORT AND RECOMMENDATION OF THE HON. REGINA M. RODRIGUEZ**

---

**TABLE OF CONTENTS**

INTRODUCTION                                                                      1

ARGUMENT                                                                          1

   I. THE RECOMMENDATION APPLIED THE CORRECT STANDARD                1

   II. PLAINTIFFS FAILED TO ALLEGE A SECTION 10(b) CLAIM              3

      A. No False Statements about Supply Chain                      3

      B. No False Statements about Projections and Revenue Visibility   6

      C. No False Statements about Amazon as a Key Customer          8

      D. No False Statements about "Mentor-Investor" Relationship     9

      E. Plaintiffs Misstate the Law of Scheme Liability            9

   III. PLAINTIFFS FAIL TO ALLEGE A SECTION 11 CLAIM                   10

CONCLUSION                                                                        10

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page**

*Correa v. Liberty Oilfield Servs., Inc.*,
    548 F. Supp. 3d 1069 (D. Colo. 2021).........................................................................10

*Erber v. Williams Cos., Inc.*,
    2017 WL 930828 (N.D. Okla. Mar. 8, 2017),
    *aff'd sub nom. Williams Cos., Inc.*, 889 F.3d 1153 (10th Cir. 2018)............................9

*Emps.' Ret. Sys. of R.I. v. Williams Cos.*,
    889 F.3d 1153 (10th Cir. 2018)....................................................................................2

*Galvin v. McCarthy*,
    545 F.Supp.2d 1176 (D. Colo. 2008).......................................…………….... 1

*In re Gold Res. Corp. Sec. Litig.*,
    776 F.3d 1103 (10th Cir. 2015).....................................................................................3

*In re Gold Res. Corp. Sec. Litig.*,
    957 F. Supp. 2d 1284 (D. Colo. 2013),
    *aff'd*, 776 F.3d 1103 (10th Cir. 2015)......................................................................7, 8

*Gregory v. Pronai Therapeutics Inc.*,
    297 F. Supp. 3d 372 (S.D.N.Y. 2018),
    *aff'd*, 757 Fed. App'x 35 (2d Cir. 2018).......................................................................5

*Grossman v. Novell, Inc.*,
    120 F.3d 1112 (10th Cir. 1997).....................................................................................3

*Hampton v. root9B Techs. Inc.*,
    897 F.3d 1291 (10th Cir. 2018).....................................................................................9

*Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*,
    45 F.4th 1236 (10th Cir. 2022).....................................................................................5

*In re Lehman Bros. Sec. & Erisa Litig.*,
    2013 WL 3989066 (S.D.N.Y. July 31, 2013)...............................................................6

*In re Level 3 Communs. Sec. Litig.*,
    667 F.3d 1331 (10th Cir. 2012).....................................................................................2

*Lorenzo v. SEC*,
    587 U.S. __ (2019).......................................................................................................9

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014),
*aff'd*, 604 Fed. App'x 62 (2d Cir. 2015).....................................................................5

*Malouf v. SEC*,
933 F.3d 1248 (10th Cir. 2019).....................................................................10

*Nakkhumpun v. Taylor*,
782 F.3d 1142 (10th Cir. 2015).....................................................................8

*In re Overstock Sec. Litig.*,
2020 WL 5775845 (D. Utah Sep. 28, 2020).....................................................................7

*Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*,
372 F. Supp. 3d 1139 (D. Colo. 2019).....................................................................2

*SEC v. Rio Tinto*,
41 F.4th 47 (2nd Cir. 2022).....................................................................9

*SEC v. Scoville*
913 F.3d 1204 (10th Cir. 2019).....................................................................10

*Smallen v. W. Union Co.*,
2019 WL 1382823 (D. Colo. Mar. 27, 2019).....................................................................2

*Wolfe v. AspenBio Pharma, Inc.*,
2012 WL 4040344 (D. Colo. Sep. 13, 2012).....................................................................4

*Zalmon Uvaydov v. Robert Fenwick-Smith, et al.*,
No. 2023-0137 (Del. Ch. Feb. 23, 2024).....................................................................1

iii

**INTRODUCTION**

Judge Starnella was correct in finding that Plaintiffs' allegations fail.  Plaintiffs know it and—in expectation of leave to amend their Complaint—have shifted their efforts to circumventing the statutory discovery stay for federal securities cases.  Since Judge Starnella issued her Recommendation, Plaintiffs have made a second attempt to obtain a sealed complaint in a related derivative matter before the Delaware Court of Chancery *and*, failing that, tried to induce Lightning's court-appointed receiver to share the sealed Chancery complaint in contravention of Chancery rules and the federal stay of discovery.  BL-56, *Zalmon Uvaydov v. Robert Fenwick-Smith, et al*, No. 2023-0137 (Del. Ch. Feb. 23, 2024); BL-67, *Uvaydov*, No. 2023-0137 (Del. Ch. Mar. 12, 2024).  These are exactly "abuses of securities laws by overzealous plaintiffs' attorneys" that Congress sought to outlaw.  *Galvin v. McCarthy*, 545 F.Supp.2d 1176, 1186 (D. Colo. 2008).  The irony is that even if Plaintiffs obtained this sealed information, it would do them no good.  The SEC, after a thorough investigation and vastly greater access to documents, chose not to recommend an enforcement action against Lightning on these same issues.  Ex. 1 at 2.

Improper tactics aside, Plaintiffs have offered no real challenge to Judge Starnella's reasoned analysis.  Lacking contemporaneous, particularized support for their claims, Judge Starnella was correct in granting the Lightning Defendants' motion to dismiss.  Further, because Plaintiffs fail to show how they could augment their deficient lawsuit, and because of their attempts to circumvent the federal securities laws, dismissal should be with prejudice.

**ARGUMENT**

**I.    THE RECOMMENDATION APPLIED THE CORRECT STANDARD**

As Judge Starnella correctly stated, under Tenth Circuit law and the PSLRA, this Court is not required to accept Plaintiffs' allegations simply because they allege them.  R&R 11–13.  Rather, only "well-pled factual allegations . . . , as distinguished from conclusory

1

allegations" are taken "as true." *Smallen v. W. Union Co.*, 2019 WL 1382823, at *1 n.3 (D. Colo. Mar. 27, 2019). Indeed, Plaintiffs' own case admits that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, 372 F. Supp. 3d 1139, 1148 (D. Colo. 2019) *see also* R&R 11 (complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). Nor are Plaintiffs correct in their attempt to lower the pleading bar to mere plausibility. As Judge Starnella recognized, "[u]nder the Private Securities Litigation Reform Act . . . a heightened pleading standard applies." *In re Level 3 Communs. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012); R&R 12. Plaintiffs cannot evade that "heavy burden at the pleading stage." *In re Level 3 Communs. Sec. Litig.*, 667 F.3d at 1333; *see also Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (PSLRA "marked a bipartisan effort to curb abuse in private securities lawsuits"). As Judge Starnella repeatedly concluded, Plaintiffs failed to offer well-pleaded factual allegations and fell short of the PSLRA's heightened standard. R&R 21–23, 25–28, 32–35, 38–40, 43–45, 50–51, 53.

Plaintiffs' assertion that Judge Starnella improperly considered "extrinsic materials" similarly fails. Obj. 2. Plaintiffs repeat the very error that Judge Starnella recognized: Plaintiffs do not identify *what* extrinsic materials she purportedly improperly relied upon. *Compare* R&R 14–15 *with* Obj. 10–11. At best, they point to a page in the Recommendation that cites Ford's Form 10-Q, Obj. 11; R&R 28. But Plaintiffs do not explain why it is improper for a court to consider SEC filings on a motion to dismiss. Nor could they: "In securities cases it is not unusual to consider . . . public documents filed with the Securities and Exchange Commission[.]" *Williams*, 889 F.3d at 1158; *see also* R&R 15. Indeed, the *only* "extrinsic materials" that Judge Starnella considered are SEC filings and earnings call transcripts. *See* R&R 18–19, 22–23, 28, 31–33, 38–44. Plaintiffs' argument that Judge Starnella improperly relied on documents to create a purported "counter-narrative" is nothing

2

more than an attempt to prevent this Court from considering anything contrary to their theory of liability. Obj. 2. On the contrary, courts "must consider the complaint in its entirety, as well as other sources," such as "matters of which a court may take judicial notice." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015). Judge Starnella properly followed this instruction.

## II.    PLAINTIFFS FAILED TO ALLEGE A SECTION 10(b) CLAIM

Plaintiffs' Objection doubles down on their impermissible theory of fraud-by-hindsight. The Tenth Circuit rejects such theories, and Judge Starnella correctly rejected Plaintiffs' here. *See* R&R 57-58. This is because, as Judge Starnella recognized repeatedly throughout the Recommendation, Plaintiffs must provide factual allegations showing that "the statements were actually false when made." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997); *see* R&R 18–19, 22–23, 28, 31–33, 38–44. This requires pleading contemporaneous, particularized facts supporting their theory of falsity. *Id.* at 1124 ("often there is no reason to assume that . . . simply because the alleged misrepresentation conflicts with the current state of facts, the charged statement must have been false"); *see also* MTD 7–8. The Complaint is devoid of such factual allegations, and Judge Starnella was correct to recommend dismissal.[1]

### A.   No False Statements about Supply Chain

Plaintiffs' Objection does not remedy that the challenged statements concerning Lightning's supply chain (1) are inactionable, subjective statements and (2) are not backed by particularized, contemporaneous allegations. MTD 14–18; Reply 4–6. But beyond that, Plaintiffs misconstrue Judge Starnella's analysis, double down on untimely CW allegations,

---

[1] Plaintiffs address Judge Starnella's recommendation that their Section 14(a) claims be dismissed in tandem with their objections to her Section 10(b) recommendation. Obj. 1 n.2. As Judge Starnella correctly concluded, Plaintiffs' Section 14(a) claims fail for the same reason as their Section 10(b) claims. R&R 53.

and misread and stretch their own Complaint.[2]

**Plaintiffs Misconstrue Judge Starnella's Analysis.**  Plaintiffs falsely assert that Judge Starnella "limited her analysis" of statements regarding Lightning's supply chain to statements made on May 17, 2021 and June 17, 2021.  Obj. 4–5.  That is simply untrue. Rather, Judge Starnella surveyed the range of purported misstatements, *see* R&R 26–27, and concluded that "while Plaintiffs provide generalized argument about Defendants' alleged supply chain issues as a whole, they only provide sufficiently specific argument with respect to battery and chassis issues." *Id.* 27.  Again, Plaintiffs' Objection repeats the same error: Instead of providing "sufficiently specific argument" as to why statements about Lightning's supply chain were misleading, *id.*, Plaintiffs instead cite to *thirteen* separate alleged misstatements and, all at once, argue that each was materially false or misleading "because they ignored or misrepresented the critical shortages in battery supply and the inability of Lightning's four existing battery suppliers to provide sufficient batteries for Lightning to scale production as promised."  Obj. 4.  They then offer a strawman version of Judge Starnella's analysis by asserting that she must have erred by considering the literal truth or falsity of the statements.  *Id.*  But that is not why Plaintiffs' allegations fail.  As explained in both Judge Starnella's Recommendation and in the Lightning Defendants' motion to dismiss, Plaintiffs' allegations fail because they lack *particularized, contemporaneous* facts to support their speculation about Lightning's supplier network or procurement costs.  R&R 27–28; MTD 14–17.  "In the absence of such detail, it is not possible to conclude that statements . . . were false or materially misleading at the time they were made."  *Wolfe v. AspenBio Pharma, Inc.*, 2012 WL 4040344, at *8 (D. Colo. Sep. 13, 2012).

---

[2] Recognizing the paucity of their pleadings, Plaintiffs abandon their allegations about Lightning's broader supply chain.  *Compare* Obj. 4 n.3 *with* ¶ 161–62 (alleging statement that "we have inventory on the side of chassis, we have inventory of batteries" was false and misleading because of "supply chain shortages").  Moreover, Plaintiffs do not explain why it was "inappropriate[]" for Judge Starnella to consider documents filed with the SEC and earnings transcripts on a motion to dismiss.  Obj. 4 n.3; *see supra* 2–3.

4

***Judge Starnella Properly Discounted CW-4.*** Plaintiffs have no response to Judge Starnella's finding that they "allege no facts to anchor CW-4's statements in time[.]" R&R 30. Instead, they simply assert that that "CW-4 reported that the battery-related production chokepoint existed in 2020 and that it continued into 2021." Obj. 5. But that is not what the Complaint alleges: CW-4 purportedly stated "that there were a lot of supply issues . . . especially with batteries" that "got progressively worse" at some undefined time. ¶ 124. Simply alleging that problems existed and worsened will "not substitute for well-pleaded allegations of contemporaneous falsity[.]" *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 580 (S.D.N.Y. 2014), *aff'd*, 604 Fed. App'x 62 (2d Cir. 2015).[3] Judge Starnella was correct to reject these "unmoored" CW allegations. *Gregory v. Pronai Therapeutics Inc.*, 297 F. Supp. 3d 372, 408-09 (S.D.N.Y. 2018) (dismissing complaint; rejecting CW allegations that are "unmoored in time" to challenged statements), *aff'd*, 757 Fed. App'x 35 (2d Cir. 2018).

***Plaintiffs Misread Risk Disclosures and Their Own Complaint.*** Plaintiffs next strain to argue that there is no connection between "future decreases to profitability" and "battery supply-related production constraints." Obj. 6. But Lightning's business is making and selling battery-powered vehicles, MTD at 2; logically, if Lightning did not have sufficient battery supply to make and sell vehicles, then its profitability would suffer. As Judge Starnella observed, Lightning's May 17, 2021 statement made exactly that connection. R&R 31. Mr. Reeser described Lightning's "battery supply" and "multiple pack suppliers," and in the very next sentence warned that "the current supply chain disruptions will have significant consequences on short term margin and operating profits." *Id.*; ECF 71-4 at 25.

Plaintiffs' objection to Lightning's June 17, 2021 warning that "battery supply

---

[3] Plaintiffs' reliance on *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1248 (10th Cir. 2022), is misplaced. Not only did *Pluralslight* lack any CW allegations, the plaintiffs there pleaded "contemporaneous" facts supporting their allegations, *id.* at 1262, which Plaintiffs have failed to do here. *See, e.g.*, R&R 21 ("Plaintiffs have not directed the Court's attention to contemporaneous facts" supporting allegations).

constraints [were] impacting revenue timing," R&R 31, is even more half-hearted: Plaintiffs offer no reason why the warning was inadequate other than to circularly argue that Mr. Reeser's statements about battery supply were false and Lightning should not have reaffirmed its guidance. Obj. 7–8. But as Judge Starnella recognized, Plaintiffs have nowhere offered any factual allegations that, when he made the challenged statement, Mr. Reeser knew that Lightning did not have enough future battery supply to meet its projections. R&R 31; MTD 14–15. Instead, they rely on allegations by a CW "serving in a production role" who offered generic anecdotes about component shortages that were, at best, "partially" anchored in time. ¶ 111; R&R 30. Plaintiffs fail to explain how a low-level CW who was "not [a] manager[] or corporate officer[]" was able to "sp[eak] to the company's practices broadly." *In re Lehman Bros. Sec. & Erisa Litig.*, 2013 WL 3989066, at *4 (S.D.N.Y. July 31, 2013).

Finally, Plaintiffs' objection that Lightning's August 16, 2021 disclosure occurred after market close is not supported by their Complaint. Obj. 8. Plaintiffs alleged that Lightning released its 2Q21 *Form 10-Q and press release* after market close, but Judge Starnella's analysis cited warnings contained in its *earnings call*. *Compare* ¶¶ 184-85 *with* R&R 32. Plaintiffs' timing argument is thus irrelevant.

### B. No False Statements about Projections and Revenue Visibility
Like their failed allegations relating to Lightning's supply chain, Plaintiffs' allegations concerning revenue and projections are unsupported by any contemporaneous factual allegations. MTD 10–12. In addition, each purported misrepresentation was also a protected forward-looking statement accompanied by robust risk disclosures. MTD 12–14.

***No Particularized Facts Challenging Backlog and Revenue Visibility.*** As Judge Starnella correctly observed, Plaintiffs have alleged no facts contradicting Lightning's December 10, 2020 and March 26, 2021 statements that it had received purchase orders for 100% of its projected 2021 revenue and 25% of its projected 2022 revenue, or that any Defendant recklessly disregarded supply chain issues then in existence. R&R 34–35, 38–40;

6

MTD 11–12.  Instead, Plaintiffs simply advise the Court that Lightning's statements about revenue visibility were misleading for the same reasons its statements about supply chain were.  Obj. 8.  Judge Starnella correctly rejected Plaintiffs' supply chain claims, *supra* 3–6, and Plaintiffs give no independent reason why they have otherwise adequately alleged that statements about revenue visibility and projections were false when made.

***Projections Were Protected Forward-Looking Statements Coupled with Specific Risk Warnings.***  As with its revenue visibility claims, Plaintiffs' falsity arguments with respect to Lightning's projections are based entirely on deficient allegations.  Obj. 9; *see* R&R 35–40, 43–45 (holding that Lightning's statements about its supply chain, revenue visibility, and ability to scale were not false when made).  Unable to plead falsity, Plaintiffs argue that Lightning's projections are not subject to the protections of the PSLRA safe harbor for forward-looking statements.  Plaintiffs do not dispute that "guidance . . . is the quintessential example of a forward-looking statement protected by the PSLRA's safe harbor." *In re Overstock Sec. Litig.*, 2020 WL 5775845, at *6 (D. Utah Sep. 28, 2020); Reply 9.  Instead, they attempt to evade the PSLRA safe harbor by simultaneously objecting that Lightning's risk disclosures were too vague *and* too specific:

- They assert that Lightning's risk disclosures were "boilerplate," but fail to point to a single disclosure and explain *why* it lacks specificity.  Obj. 9–10.  But "[e]ven 'mere boilerplate' cautionary statements . . . have been upheld as sufficient." *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1297 (D. Colo. 2013) (dismissing complaint), *aff'd*, 776 F.3d 1103 (10th Cir. 2015).  As Judge Starnella recognized, Lightning's disclosures specifically warned that its projections "should not be relied upon as necessarily indicative of future results."  R&R 38; *see also* R&R 40–42, 44.

- At the same time, they assert that Lightning's risk disclosures were "meaningless" because they were "contradicted" by Lightning's affirmative statements.  Obj. 9.  It is

unclear how a "vague and qualified" risk disclosure could be "contradicted" by a specific affirmative representation.  Logical inconsistency aside, Plaintiffs also fail to cite any case law supporting the argument that descriptions of then-current facts render meaningless a warning that those facts might change.  Obj. 9–10.

Finally, Plaintiffs tack on the argument that Lightning's projections were mixed present/future statements because the projections were based on present facts.  Obj. 10.  Ignoring Plaintiffs' liberal use of bolding and italics, it remains that "[s]uch an assertion is necessarily implicit in every future projection[,]" and Plaintiffs' distinction would render the Safe Harbor meaningless.  *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d at 1296, *aff'd*, 776 F.3d 1103 (10th Cir. 2015); Reply at 9–10.

### C.   No False Statements about Amazon as a Key Customer

Continuing the trend, Plaintiffs fail to offer any contemporaneous factual allegations refuting Lightning's description of Amazon as a key customer, and instead stretch their allegations beyond the bounds of their Complaint.  MTD 17 n.8; Reply 10–11.

*No Contemporaneous Factual Allegations.*  Plaintiffs repeat their conclusory assertion that "Amazon was neither a 'key customer' nor even a recurring customer," but again fail to allege *any* particularized facts establishing that these statements were false when made.  Obj. 12.  In contrast, the Tenth Circuit in *Nakkhumpun v. Taylor* (on which Plaintiffs rely) accepted allegations of falsity only where the plaintiff offered "unambiguous" factual support for its claims.  782 F.3d 1142, 1149 (10th Cir. 2015).  Far short of unambiguous factual support, Plaintiffs' allegations are based entirely on three CWs, *none* of whom were employed at Lightning when the challenged statement was made.  R&R 25.

*Plaintiffs Overstretch Their Complaint.*  Even if those CWs *had* been employed at the relevant time and *had* contemporaneous knowledge, Plaintiffs' allegations still fail.  Although Plaintiffs assert that Amazon "shuttered the program" and had "pulled the plug," none of the CWs actually alleged that Amazon ended the pilot program or ceased business

with Lightning.  Obj. 12–13.  At best, CW-2 purportedly alleged that Amazon had "put [the order] on hold" in "spring 2020," almost a year *before* the January 4, 2021 statement describing Amazon as a "key customer."  ¶ 119.  Plaintiffs overreach by alleging that pausing a program is tantamount to "plugging the plug," and that allegations from spring 2020 can falsify a statement in January 2021.  Although Plaintiffs complain that such observations "improperly draw[] numerous (illogical) inferences against Plaintiffs," this Court is not required to credit Plaintiffs' theory where they misrepresent their own pleadings.  Obj. 13.

### D.   No False Statements about "Mentor-Investor" Relationship

Plaintiffs address only GigCapital3's March 26, 2021 and March 31, 2021 statements and waive objections to the statements made on May 13, 2020, December 10, 2020, and January 12, 2021.  Obj. 14–15; Reply 3.  Instead of addressing the lack of factual support for their theory, *see* R&R 22, Plaintiffs simply assert that it was "no coincidence" that the Board voted to reclassify the Gig3 directors' terms and that it is "implausible" that the other directors "conspired" to vote off the Gig3 directors.  Obj. 15.  But the Court is "not obliged to infer" a misrepresentation.  *Hampton v. root9B Techs. Inc.*, 897 F.3d 1291, 1303 (10th Cir. 2018).  Plaintiffs also invent a "duty to update," but cite no authority.  Obj. 15.  That is because there is none: "The Tenth Circuit has not recognized a 'duty to update,' and other courts have refused to do so."  *Erber v. Williams Cos., Inc.*, 2017 WL 930828, at *4 (N.D. Okla. Mar. 8, 2017), *aff'd sub nom. Williams Cos., Inc.*, 889 F.3d 1153 (10th Cir. 2018).

### E.   Plaintiffs Misstate the Law of Scheme Liability

Finally, Plaintiffs mistate the scope of scheme liability claims following *Lorenzo v. SEC*, 587 U.S. __ (2019).  Reply 14–15.  As the Second Circuit held, "misstatements and omissions can form *part* of a scheme liability claim, but an actionable scheme liability claim also requires something *beyond* misstatements and omissions, such as dissemination."  *SEC v. Rio Tinto*, 41 F.4th 47, 49 (2nd Cir. 2022).  Judge Starnella correctly held that Plaintiffs had not alleged how *conduct disclosed to investors* could form the basis of a fraudulent scheme,

R&R 51, and none of Plaintiffs' cases shows otherwise.  In *SEC v. Scoville* (which Plaintiffs cite, despite dismissing other pre-*Lorenzo* decisions), the Tenth Circuit upheld a preliminary injunction against where there was "strong evidence" that defendants had operated a Ponzi scheme.  913 F.3d 1204, 1223 (10th Cir. 2019).  Unlike this case, the SEC in *Scoville* only alleged scheme liability; it did not consider whether scheme liability can piggyback on misstatement claims.  *Id*. at 1223 n.8.  Moreover, and in contrast to Judge Starnella's finding that the alleged fraudulent conduct was fully disclosed to investors, R&R 51, the conduct in *Scoville* had *not* been disclosed.  *Scoville*, 913 F.3d at 1224 n.9.  Similarly, *Malouf v. SEC* concerned only scheme claims, *not* misstatement claims.  933 F.3d 1248 (10th Cir. 2019).

After a thorough investigation aided by internal documents, the SEC recommended against an enforcement action.  *See* Ex. 1.  It would be unusual for Plaintiffs to have discerned a scheme, using publicly disclosed conduct, where an actual investigation did not.

## III.   PLAINTIFFS FAIL TO ALLEGE A SECTION 11 CLAIM

Plaintiffs' Section 11 claims are limited to the May 2020 "Mentor-Investor" statements, months *before* Gig3 first contacted Lightning.  Obj. 16; MTD 25.  Because Plaintiffs do not challenge Judge Starnella's dismissal, *see* Obj. 14–15, their arguments about the applicable standard are irrelevant.  Even if not abandoned, Plaintiffs' own case explains that allegations must rise "above the speculative level."  *Correa v. Liberty Oilfield Servs., Inc.*, 548 F. Supp. 3d 1069, 1078 (D. Colo. 2021).  Plaintiffs do not even speculate about how Gig3 could have had *any* intent to abandon their "Mentor-Investor" approach with Lightning *months* before Plaintiffs allege Gig3 had identified Lightning as an acquisition target.  ¶ 55.

### CONCLUSION

The Lightning Defendants respectfully request that the Complaint be dismissed with prejudice.

Dated: March 19, 2024               FRESHFIELDS BRUCKHAUS DERINGER US LLP


                                    */s/ Boris Feldman*
                                    Boris Feldman
                                    Freshfields Bruckhaus Deringer US LLP
                                    855 Main Street
                                    Redwood City, CA 94063
                                    (650) 618-9250
                                    boris.feldman@freshfields.com

                                    *Attorneys for Defendants Lightning eMotors,
                                    Inc., Timothy R. Reeser, Teresa P.
                                    Covington, and Robert Fenwick-Smith*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2024, I caused to be electronically filed the

foregoing LIGHTNING DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTION TO

THE REPORT AND RECOMMENDATION OF THE HON. REGINA M. RODRIGUEZ

with the Clerk of the Court using the CM/ECF system, which will send notifications of such

filing to all registered participants.


/s/ Boris Feldman
Boris Feldman


12