## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-02774-RMR-KLM (consolidated with 1:21-cv-03215-KLM)

JOHNNY R. SHAFER, DAVID P. SARRO,
KEVIN L. TYE, JESS Q. WILLIAMS, and
JUSTIN COHEN, Individually and On Behalf
of All Others Similarly Situated,

      Plaintiffs,

               v.

LIGHTNING EMOTORS, INC., TIMOTHY
R. REESER, TERESA P. COVINGTON,
GIGACQUISITIONS3 LLC, GIGCAPITAL
GLOBAL, AVI S. KATZ, RALUCA DINU,
NEIL MIOTTO, GIGFOUNDERS LLC,
BRAD WEIGHTMAN, ANDREA BETTI-
BERUTTO, PETER WANG, JOHN J.
MIKULSKY, and ROBERT FENWICK-
SMITH,

      Defendants.

---

**RESPONSE OF GIGACQUISITIONS3, LLC, GIGFOUNDERS, LLC, GIGCAPITAL
GLOBAL, AVI S. KATZ, RALUCA DINU, NEIL MIOTTO, BRAD WEIGHTMAN,
JOHN MIKULSKY, ANDREA BETTI-BERUTTO, AND PETER WANG
TO PLAINTIFFS' OBJECTION TO THE RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE**

---

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT........................................................................................................................... 3

    I.      The Court should adopt the Recommendation................................................................ 3

          A.    The Recommendation correctly applied the motion to dismiss standard. ............3

          B.    The Recommendation correctly concluded the Complaint does not adequately allege the "mentor-investor" statements were false at the time they were made. .......................................................................................3

          C.    The Recommendation correctly concluded the Complaint does not adequately allege the statements regarding Lightning's supply chain, revenue visibility, ability to scale, and relationship with Amazon were false or misleading. ...........................................................................................6

          D.    The Recommendation correctly concluded the Complaint does not state a claim for "scheme" liability.................................................................................6

          E.    The Recommendation correctly concluded the "control person" claims should be dismissed. .........................................................................................7

    II.    If the Recommendation is modified, there are alternative grounds for dismissing the claims against the Gig3 Defendants. ............................................................................ 7

CONCLUSION........................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Britton v. Parker*,
2007 WL 2871003 (D. Colo. Sept. 26, 2007)...........................................................................8

*City of Philadelphia v. Fleming Cos.*,
264 F.3d 1245 (10th Cir. 2001) ......................................................................................9, 10

*Erber v. Williams Cos., Inc.*,
2017 WL 930828 (N.D. Okla. Mar. 8, 2017), *aff'd*, 889 F.3d 1153 (10th Cir. 2018)...............5

*Grossman v. Novell, Inc.*,
120 F.3d 1112 (10th Cir. 1997) ......................................................................................6, 8

*Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*,
45 F.4th 1236 (10th Cir. 2022) .......................................................................................3

*Jedrzejczyk v. Skillz Inc.*,
2022 WL 2441563 (N.D. Cal. July 5, 2022)..............................................................................8

*Kang v. PayPal Holdings, Inc.*,
620 F.Supp.3d 884 (N.D. Cal. 2022) ...........................................................................7

*Lorenzo v. SEC*,
587 U.S. __, 139 S. Ct. 1094 (2019)...................................................................................6, 7

*Maher v. Durango Metals, Inc.*,
144 F.3d 1302 (10th Cir. 1998) .....................................................................................7

*Malouf v. SEC*,
933 F.3d 1248 (10th Cir. 2019) .....................................................................................6

*Mehedi v. View, Inc.*
2023 WL 3592098 (N.D. Cal. May 22, 2023) ..........................................................................9

*Merdeshwar v. Search Media Holdings Ltd.*,
2011 WL 7704347 (S.D. Fla. Aug. 8, 2011)............................................................................10

*Peace Officers' Ann. & Ben. Fund of Ga. v. DaVita Inc.*,
372 F. Supp. 3d 1139 (D. Colo. 2019)....................................................................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)..................................................................................................9

**Statutes**

Section 21D of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4......................................9

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78..........................................3, 8, 9

**Other Authorities**

Fed. R. Civ. P. 8...............................................................................................................................6

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ..........................................................................................6

## PRELIMINARY STATEMENT[1]

In a detailed Recommendation, Magistrate Judge Starnella correctly determined that the Complaint does not adequately allege facts showing that any of the statements Plaintiffs challenge were false or misleading at the time they were made. Plaintiffs' Objection does not identify any allegations of fact Judge Starnella overlooked, or any case law she misapplied. Nothing in the Objection suggests the Recommendation should not be adopted.

This is particularly true as to the "Mentor-Investor" statements, which are the primary statements challenged as to the Gig3 Defendants. The Objection accuses the Magistrate Judge of overlooking the supposedly "critical fact" that the New Lightning Board voted to reclassify Katz and Dinu's directorships on May 11, 2021, just three days after the Merger between Gig3 and Lightning closed. Obj. at 15. But the Magistrate Judge did not overlook this fact; she correctly determined that the newly constituted Lightning Board's decision does not support a plausible inference that the Gig3 Defendants did not intend to remain involved in the company at the time the mentor-investor statements were made in the months and year before.

Because she determined Plaintiffs did not adequately allege falsity, the Magistrate Judge did not reach the Gig3 Defendants' many other arguments for dismissal of the claims against them. Should the Court decide to modify the Recommendation in any way, it should find the challenged mentor-investor statements are not actionable, find that Plaintiffs have not adequately alleged negligence or scienter as to the Gig3 Defendants, and dismiss the Complaint as to them.

---

[1] Capitalized or abbreviated terms have the same meaning as in the Gig3 Defendants' Motion to Dismiss Consolidated Complaint with Incorporated Memorandum of Law ("Op. Br."), Dkt. 101. The Gig3 Defendants' Reply in support of their Motion to Dismiss (Dkt. 105) is referred to herein as "Reply." The Recommendation of United States Magistrate Judge (Dkt. 111) is referred to herein as "Recommendation" or "R&R." Plaintiffs' Objection to the Recommendation of United States Magistrate Judge (Dkt. 114) is referred to herein as "Objection" or "Obj."

1

## **BACKGROUND**

Gig3 was a SPAC formed on February 3, 2020. Compl. ¶2. GigAcquisitions3, LLC served as Gig3's Sponsor. *Id.* ¶¶5, 50. Katz founded the Sponsor and was Executive Chairman and CEO of Gig3. *Id.* ¶24. Dinu, Miotto, Mikulsky, Betti-Berutto and Wang were members of Gig3's Board until the Merger, and Weightman was the CFO of Gig3 until the Merger. *Id.* ¶¶25-30, 85.[2]

Following its May 18, 2020 IPO, Gig3 actively searched for prospective businesses or assets to acquire. *Id.* ¶55. On December 10, 2020, Lightning Systems and Gig3 issued a joint press release announcing they had entered into a definitive agreement for a business combination. *Id.* ¶85. The Proxy statement inviting stockholders to vote on the proposed transaction became effective on March 26, 2021, and, following the stockholder vote, the business combination between Gig3 and Lightning Systems closed on May 6, 2021. *Id.* ¶¶66, 85. Katz, Dinu, and Miotto continued to serve on the Board of Directors of New Lightning until October 2021. *Id.* ¶¶24-26.

The majority of the Recommendation and, as a result, a majority of the Objection, concern statements made by the Lightning Defendants or statements concerning Lightning's business and projections. Prior to the Merger, none of the Gig3 Defendants was an insider at Lightning, and after the Merger, Katz, Dinu, and Miotto served only as outside directors. None of Plaintiffs' Confidential Witness allegations concern the Gig3 Defendants at all. Nor does the Complaint allege any specific facts regarding what information the Gig3 Defendants had regarding Lightning's supply chain, ability to scale, relationship with Amazon, or revenue visibility, or when or how they allegedly obtained any such information.

---

[2] The Complaint also names as defendants GigCapital Global and GigFounders, LLC. GigFounders, LLC is an affiliate of the Sponsor and entered into an agreement to provide office space and general and administrative services to Gig3, but is not otherwise alleged to have played any role in Gig3. Compl. ¶35. GigCapital Global does not exist. *See* Op. Br. at 3.

## ARGUMENT

**I.      The Court should adopt the Recommendation.**

**A.      The Recommendation correctly applied the motion to dismiss standard.**

At the outset, the Objection accuses the Magistrate Judge of misapplying the motion to dismiss standard, claiming she did not accept all well-pled factual allegations as true and did not draw all reasonable inferences in Plaintiffs' favor. Obj. at 1-2. In fact, however, the detailed Recommendation explained that many of the Complaint's allegations are not well-pled allegations of *fact* but rather unsupported speculation and conclusory assertions, and/or do not support the inferences that Plaintiffs wish the Court to draw.

The Objection also is misleading as to the standard that applies here. For example, Plaintiffs suggest the complaint should "proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Obj. at 1 (quoting *Peace Officers' Ann. & Ben. Fund of Ga. v. DaVita Inc.*, 372 F. Supp. 3d 1139, 1149 (D. Colo. 2019)). But Plaintiffs ignore that *Peace Officers* went on to say that the PSLRA "raised the pleading standard" for pleading falsity and scienter under Section 10(b). *Id.*; *see also Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1247 (10th Cir. 2022).[3]

**B.      The Recommendation correctly concluded the Complaint does not adequately allege the "mentor-investor" statements were false at the time they were made.**

In the May 11, 2020 Registration Statement, Gig3 made statements regarding its "intent" to employ a mentor-investor philosophy with its future (and as yet unidentified) merger target.

---

[3] The Objection also complains that the Recommendation references a document outside of the Complaint submitted by the Lightning Defendants. Obj. at 11 (citing R&R at 28). But the Magistrate Judge simply observed that Ford's statement concerned supply chain issues related to semiconductors, while the only specific supply chain allegations in the Complaint here concern batteries and chassis. R&R at 27-28. In any event, the Gig3 Defendants' arguments as to negligence and scienter do not rely on this document.

3

Compl. ¶¶132, 206. The Gig3 Defendants reiterated this intent and stated their belief that Lightning would benefit from this approach after the Merger was announced, including in the March 26, 2021 Proxy and Gig3's March 31, 2021 Form 10-K. *Id.* ¶50.

The Objection appears to abandon Plaintiffs' claims based on the mentor-investor statements prior to March 26, 2021. *See* Obj. at 14-15. In all events, the Recommendation correctly determined the Complaint does not adequately allege facts showing these statements were false— that is, that the Gig3 Defendants did not actually hold the intent to employ the mentor-investor approach at the time the statements were made. As the Magistrate Judge observed, after the Merger, the newly constituted Board of Directors voted on May 11, 2021 to shorten Katz and Dinu's terms, and voted on August 20, 2021 not to re-nominate Katz, Dinu, and Miotto to the Board. Contrary to Plaintiffs' argument, the timing of the Board's decisions does not support an inference of falsity: the last challenged mentor-investor statement was made on March 31, 2021, and the Board votes that resulted in Katz, Dinu, and Miotto leaving the Board in October 2021 did not occur until May 2021 and August 2021. R&R at 22.

The Objection states the Magistrate Judge recommended dismissal based on the "mistaken belief" that "Plaintiffs had pled only that 'none of Gig3's representatives on Lightning's Board … remained directors beyond October 2021.'" Obj. at 15. But that is demonstrably false: the Recommendation discussed the Complaint's allegations in detail—including the supposedly "critical fact" that the vote to reclassify Katz and Dinu took place "only three business days" after the Merger closed. *Id.*; *see* R&R at 21-22 (noting that the deal closed on May 6, 2011, and "[o]n May 11, 2021, the newly-formed Board of Lightning eMotors voted to change the multi-year terms of Defendants Katz and Dinu's directorships to be one year, like Defendant Miotto."). The Magistrate Judge did not overlook this fact, but rather properly concluded that the Lightning

4

Board's actions immediately following the Merger say nothing about the Gig3 Defendants' intentions months earlier. R&R at 22-23; *see also id.* at 21 ("Plaintiffs have not directed the Court's attention to *contemporaneous* facts to plausibly show that Gig3's representatives did not intend to have a lasting partnership with the company.") (emphasis added).[4]

Further, the Recommendation correctly observed that these were decisions of the full Board; the Complaint does not allege (and cannot allege) facts showing the Gig3 Defendants made these decisions. R&R at 23. The Objection attempts to dodge this issue, asserting in a footnote that it is "implausible" that Katz, Dinu, and Miotto were not "involved." Obj. at 15, n.10. But it is not at all implausible that a majority of the other directors decided to limit the tenures of Katz, Dinu, and Miotto after the Merger closed. Plaintiffs' vague speculation that Katz, Dinu, and Miotto were somehow "involved" is not a substitute for allegations of fact.

The Objection also suggests the Gig3 Defendants had a duty to "update." Obj. at 15-16. But the Complaint does not allege the Gig3 Defendants learned at some point between March 31 and May 11, 2021 that their tenures on the Board would be shortened, and there is no duty to update in any event. *See Erber v. Williams Cos., Inc.*, 2017 WL 930828, at *4 (N.D. Okla. Mar. 8, 2017), *aff'd*, 889 F.3d 1153 (10th Cir. 2018).

Finally, the Objection argues that even if the Complaint's allegations regarding the May 2020 mentor-investor statement do not suffice to state a claim under the heightened pleading requirements for claims under Section 10(b) of the 1934 Act, they suffice to state a claim under

---

[4] Plaintiffs' theory is even more implausible given that these same individuals have stayed involved long-term with other de-SPAC companies, which Plaintiffs do not dispute. Op. Br. at 9, 24; Reply at 9. Plaintiffs' theory also is contradictory: Plaintiffs theorize that the Gig3 Defendants made the mentor-investor statements in order to induce investors to invest in Gig3 rather than another SPAC. Compl. ¶¶103 & 132. But if the mentor-investor philosophy was important to investors, and the Gig3 Defendants casually dropped it post-Merger, investors would not invest in other GigCapital SPACs. Op. Br. at 9, 24; Reply at 9.

Section 11 of the 1933 Act. *See* Obj. at 16. But even under Rule 8(a), a complaint must allege facts plausibly showing that a statement was false when made. *See* R&R at 11. Plaintiffs' allegations regarding the timing of the Board's decisions do not meet this standard, as the Magistrate Judge correctly determined. *See id*. at 57. Although the Recommendation cites to a case under Section 10(b), *Grossman v. Novell, Inc.*, 120 F.3d 1112 (10th Cir. 1997), there is no indication the Magistrate Judge applied a higher pleading standard to the Section 11 claim, or that the result would be different. Rather, *Grossman* stands for the unremarkable observation that simply because things turn out differently than expected does not mean an optimistic statement was false when made. *See id.* at 1124; R&R at 57.

**C.     The Recommendation correctly concluded the Complaint does not adequately allege the statements regarding Lightning's supply chain, revenue visibility, ability to scale, and relationship with Amazon were false or misleading.**

For the reasons set forth in the Lightning Defendants' Response to the Objection, which the Gig3 Defendants hereby incorporate by reference, the Recommendation also correctly concluded that the Complaint does not adequately allege that the statements Plaintiffs challenge regarding Lightning's supply chain, revenue visibility, ability to scale, and relationship with Amazon were false or misleading at the time they were made.

**D.     The Recommendation correctly concluded the Complaint does not state a claim for "scheme" liability.**

The Objection implies the Magistrate Judge wrongly dismissed Plaintiffs' scheme liability claims because they are based on misstatements, in contravention of *Lorenzo v. SEC*, 587 U.S. __, 139 S. Ct. 1094 (2019), and *Malouf v. SEC*, 933 F.3d 1248 (10th Cir. 2019). *See* Obj. at 16-17.[5]

---

[5] In *Lorenzo*, the Supreme Court held that a person who did not "make" a false statement under Rule 10b-5(b) may nonetheless be liable under Rule 10b-5(a) or (c) if he or she disseminates a false statement with intent to defraud.139 S. Ct. at 1102-03. Following *Lorenzo*, *Malouf* held that

However, the Magistrate Judge correctly determined that because the Complaint does not adequately allege a false statement, it also does not adequately allege a fraudulent or deceitful scheme based on those same statements. *See Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 902 (N.D. Cal. 2022) (noting that even under *Lorenzo*, where 10b-5(a) and (c) claims are based on the same misstatements as a deficient subsection (b) claim, they "fail[] for the same reasons.… Just as Plaintiffs have failed to plausibly allege that any of the statements in the complaint were false or misleading, they do not allege any false or misleading conduct.").

Additionally, the Recommendation correctly observed that the alleged conduct underlying Plaintiffs' scheme claim could not have been part of a fraudulent or deceitful scheme because it was disclosed to investors. *See* R&R at 51. The Objection does not dispute this.

**E.      The Recommendation correctly concluded the "control person" claims should be dismissed.**

The Recommendation correctly concluded that because the Complaint does not state a claim for a primary violation of the securities laws, the control-person claims must also be dismissed. *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304-05 (10th Cir. 1998).[6]

**II.      If the Recommendation is modified, there are alternative grounds for dismissing the claims against the Gig3 Defendants.**

Because the Magistrate Judge determined the Complaint fails adequately to allege falsity, she did not consider the Gig3 Defendants' other grounds for dismissal. This Court could, however, dismiss Plaintiffs' claims against the Gig3 Defendants on multiple other grounds.

---

a defendant could be liable under these provisions for knowingly failing to correct another party's material misstatements in connection with a securities transaction. 933 F.3d at 1259-60.

[6] The Complaint also fails adequately to allege that GigCapital Global or GigFounders actually exercised control over Gig3, or that any of the Gig3 Defendants actually exercised control over Lightning. *See* Op. Br. at 12, 17, 25; Reply at 14-15.

**A.      The Mentor-Investor statements are not actionable.**

To the extent not abandoned, the statements Plaintiffs challenge from the Registration Statement are not actionable under the "bespeaks caution" doctrine: the challenged statements plainly were forward-looking (*i.e.*, "We intend to apply a unique 'Mentor-Investor philosophy …'"), and they were accompanied by specific risk disclosures and cautionary language (*i.e.*, "The future role of members of our management team, if any, in a post-transaction company cannot presently be stated with any certainty"). *See* Op. Br. at 9-11; *Grossman*, 120 F.3d at 1120-22. Similarly, Defendant Dinu's December 10, 2020 statement regarding Gig3's intent to seek opportunities to partner with companies for the "long-term" is not actionable under the PSLRA safe harbor for forward-looking statements. *See* Op. Br. at 21; *Jedrzejczyk v. Skillz Inc.*, 2022 WL 2441563, at *5 (N.D. Cal. July 5, 2022). These statements, and the Proxy's statements regarding the Gig3 Defendants' belief that Lightning could "benefit" from the mentor-investor approach, also are nonactionable puffery. *See* Op. Br. at 11, n.3; *see also id.* at 16; *Grossman*, 120 F.3d at 1119 ("Vague, optimistic statements are not actionable because reasonable investors do not rely on them in making investment decisions.").

**B.      The Section 14(a) claim should be dismissed because the Complaint does not allege negligence by each Gig3 Defendant.**

In addition to alleging facts showing that the statements in the Proxy were false at the time they were made, plaintiffs also must allege facts showing that *each* Gig3 defendant was at least negligent. *Britton v. Parker*, 2007 WL 2871003, at *8 (D. Colo. Sept. 26, 2007).

In attempting to allege negligence with respect to the Proxy's statements regarding Lightning Systems' financial projections and business, Plaintiffs rely on their CWs. The Recommendation explains at length the many flaws in the CW allegations. *E.g.*, R&R at 23-25, 29-30. Those allegations are even more deficient as to the Gig3 Defendants: The Complaint does

8

not allege any of them ever received *any* information from a CW. *See* Compl. ¶¶110-131. Plaintiffs' allegations that the Gig3 Defendants performed due diligence and speculation that they may have received "feedback" from potential PIPE investors likewise do not suffice. *See Mehedi v. View, Inc.*, 2023 WL 3592098, at *14 (N.D. Cal. May 22, 2023) (dismissing §14(a) claim against SPAC founders and finding allegation they performed due diligence insufficient to allege negligence); *see also* Op. Br. at 15; Reply at 5-7.

The Complaint also fails to allege negligence as to the mentor-investor statements. There are no non-conclusory allegations the Gig3 Defendants knew or should have known as of the Proxy that the Lightning Board would vote to reclassify Katz's and Dinu's directorships after the Merger and vote just a few months later not to renominate Katz, Dinu, and Miotto for the Board.

**C.    The Section 10(b) claim should be dismissed because the Complaint does not allege a strong inference of scienter as to each Gig3 Defendant.**

For similar reasons, the Complaint falls far short of adequately alleging scienter as to the Gig3 Defendants. The PSLRA requires a complaint to "state with particularity facts giving rise to a strong inference" of scienter. 15 U.S.C. §78u-4(b)(2); *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1262 (10th Cir. 2001). "[T]he inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Moreover, not only must any inference of scienter be "strong," it also must be "at least as compelling as any opposing inference." *Id.* at 314.

With respect to the allegedly false statements regarding Lightning's projections, supply chain, customers, and other internal business matters, Plaintiffs again rely on their CW allegations and the fact that Gig3 performed due diligence. As noted, however, there are no allegations any of the CWs ever interacted with any of the Gig3 Defendants, and thus no allegations supporting any inference, much less a strong inference, that the Gig3 Defendants knew their statements allegedly

9

were false. Nor are there specific allegations regarding what documents, reports, or information Gig3 received during due diligence (or, post-Merger, as members of the Board) that would have alerted them to the alleged issues. *See Merdeshwar v. Search Media Holdings Ltd.*, 2011 WL 7704347, at \*17 (S.D. Fla. Aug. 8, 2011) (allegations defendants "must have known" facts from due diligence was insufficient to allege scienter since there were no specifics regarding "what defendants knew, how they knew, and when they knew it"); *see also* Reply at 11-13.

Further, the Complaint does not allege facts showing the Gig3 Defendants acted with scienter with respect to the mentor-investor statements. Indeed, the Individual Gig3 Defendants' experience with Lightning stands in sharp contrast to their long-term involvement in other post-SPAC companies. Op. Br. at 9, 24; Reply at 9. Thus, the far more compelling inference is that the Gig3 Defendants intended to stay involved in the company post-Merger, but the Lightning Board decided to go in a different direction. *See* Op. Br. at 4, 19. The Gig3 Defendants' ownership interests in Lightning likewise gave them a motive to stay on the Board and influence the long-term value of their shares—*not* to "jump ship." *See* Reply at 10.

In their Opposition to the motions to dismiss, Plaintiffs argued the Gig3 Defendants had a financial motive to consummate the Merger, and that this alone provides a strong inference of scienter. But "generalized motives shared by all companies"—or in this instance, all SPACs—are insufficient to plead scienter. *City of Philadelphia*, 264 F.3d at 1269. Plaintiffs do not cite a single case in which a court found scienter adequately alleged based solely on the fact that the defendant was a SPAC. *See* Op. Br. at 22-23; Reply at 12.

<u>**CONCLUSION**</u>

For the reasons set forth above and in their previous briefing, the Gig3 Defendants respectfully request that this Court adopt the Recommendation, or in the alternative, modify the Recommendation as described above and dismiss the Complaint as to the Gig3 Defendants.

Dated: March 19, 2024

Respectfully submitted,

DLA PIPER LLP (US)

*s/ Melanie E. Walker*
Melanie E. Walker
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067
(310) 595-3000
E-mail: melanie.walker@us.dlapiper.com

and

David Freeburg
701 Fifth Avenue Suite 6900
Seattle, WA, 98104
(206) 839-4811
E-mail: david.freeburg@us.dlapiper.com

*Attorneys for Defendants GigAcquisitions3, LLC, GigFounders, LLC, GigCapital Global, Avi S. Katz, Raluca Dinu, Neil Miotto, Brad Weightman, John Mikulsky, Andrea Betti-Berutto, and Peter Wang*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 19, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ David Freeburg*
David Freeburg