**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02774-RMR-KAS (consolidated with 1:21-cv-3215-RMR-KAS)

JOHNNY R. SHAFER,
DAVID P. SARRO,
KEVIN L. TYE,
JESS Q. WILLIAMS,
JUSTIN COHEN,
     Individually and On Behalf of All Others Similarly Situated,

     Plaintiffs,

v.

LIGHTNING EMOTORS, INC.,
TIMOTHY R. REESER,
TERESA P. COVINGTON,
GIGACQUISITIONS3 LLC,
GIGCAPITAL GLOBAL,
AVI S. KATZ,
RALUCA DINU,
NEIL MIOTTO
GIGFOUNDERS LLC
BRAD WEIGHTMAN,
ANDREA BETTI-BERUTTO,
PETER WANG,
JOHN J. MIKULSKY, and
ROBERT FENWICK-SMITH,

     Defendants.

_____

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

_____

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 2

      A.    The Federal Action ................................................................................. 3

      B.    The State Action ..................................................................................... 5

      C.    Global Settlement Negotiations ............................................................. 7

III.  THE PROPOSED SETTLEMENT ..................................................................... 8

IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
      ADEQUATE ....................................................................................................... 8

      A.    Standards for Preliminary Approval of a Proposed Settlement ................. 8

      B.    The Settlement Satisfies the Rule 23(e)(2) Factors ................................ 10

            1.    Plaintiffs and Plaintiffs' Counsel Have Adequately
                  Represented the Settlement Class ................................................ 10

            2.    The Settlement Was Negotiated at Arm's Length ......................... 11

            1.    The Proposed Settlement Is Adequate in Light of the Four
                  Rule 23(e)(2)(C) Factors ............................................................... 11

                  a.    Costs, Risks, and Delay of Trial and Appeal ...................... 12

                  b.    The Proposed Method for Distributing Relief Is
                        Effective ............................................................................... 14

                  c.    Attorneys' Fees and Expenses ............................................ 15

                  d.    The Parties Have No Additional Agreement Other
                        than an Agreement to Address Requests for
                        Exclusion ............................................................................. 16

      C.    The Settlement Treats Settlement Class Members Equitably ................. 16

      D.    The Settlement Satisfies the Remaining Factor Considered by
            Courts in the Tenth Circuit ...................................................................... 17

V.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 ....................... 17

      A.    The Settlement Class Satisfies the Requirements of Rule 23(a) ............. 19

- i -

4887-8003-5783.v1

**Page**

       1.    The Settlement Class Is so Numerous that Joinder Is Impracticable ................................................................................. 19

       2.    There Are Common Questions of Law and Fact ........................... 19

       3.    Plaintiffs' Claims Are Typical of Those of the Settlement Class ............................................................................................. 20

       4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class ................................................................... 21

   B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ......... 22

       1.    Common Legal and Factual Questions Predominate .................... 22

            a.    A Class Action Is Superior to Other Methods of Adjudication ........................................................................ 23

VI.    THE COURT SHOULD APPROVE THE NOTICE PLAN ................................... 24

VII.   CONCLUSION ................................................................................................. 25

4887-8003-5783.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Home Assurance Co. v. Cessna Aircraft Co.*,
551 F.2d 804 (10th Cir. 1977)......................................................................... 8

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................................... 24

*Blanco v. Xtreme Drilling & Coil Servs., Inc.*,
2020 WL 3833412 (D. Colo. Mar. 8, 2020) .................................................... 9

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
2020 WL 3288059 (D. Kan. June 18, 2020)................................... 10, 14, 17

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)..................................................................................... 24

*Fager v. CenturyLink Commc'ns., LLC*,
854 F.3d 1167 (10th Cir. 2016).................................................................... 25

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ............................................... 17

*In re Crocs, Inc. Sec. Litig.*,
2013 WL 4547404 (D. Colo. Aug. 29, 2013) ........................................*passim*

*In re Del Monte Foods Co. Shareholders Litig.*,
2010 WL 5550677 (Del. Ch. Dec. 30, 2010) ............................................... 11

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) .................................................................. 18

*In re Molycorp, Inc. Sec. Litig.*,
2017 WL 4333997 (D. Colo. Feb. 15, 2017) ........................................*passim*

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
318 F.R.D. 435 (D. Colo. 2015) .................................................................. 20

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
625 F. Supp. 2d 1133 (D. Colo. 2009) ................................................... 12, 18

*In re The S. Co. S'holder Deriv. Litig.*,
2022 WL 4545614 (N.D. Ga. June 9, 2022)................................................. 11

4887-8003-5783.v1

**Page**

*In re Syngenta Ag Mir 162 Corn Litig.,*
2018 WL 1726345 (D. Kan. Apr. 10, 2018)................................................. 10, 11, 14

*Lucas v. Kmart Corp.,*
234 F.R.D. 688 (D. Colo. 2006) ........................................................... 9, 14

*McNeely v. Nat'l Mobile Health Care, LLC,*
2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ....................................................... 13

*O'Dowd v. Anthem, Inc.,*
2019 WL 4279123 (D. Colo. Sept. 9, 2019) ............................................................ 17

*Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.,*
2021 WL 3021461 (D. Colo. July 16, 2021) .......................................... 19, 20, 21, 22

*Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.,*
2024 WL 98387 (D. Colo. Jan. 1, 2024).........................................................*passim*

*Rhodes v. Olson Assocs., P.C.,*
308 F.R.D. 664 (D. Colo. 2015) ................................................................................. 9

*Tennille v. W. Union Co.,*
785 F.3d 422 (10th Cir. 2015)................................................................................. 24

*Tuten v. United Airlines, Inc.,*
41 F. Supp. 3d 1003 (D. Colo. 2014) ........................................................................ 8

*Voulgaris v. Array Biopharma Inc.,*
2021 WL 6331178 (D. Colo. Dec. 3, 2021),
*aff'd*, 60 F.4th 1259 (10th Cir. 2023) ....................................................... 8, 11, 15, 17

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§77k ...................................................................................................................... 3
§77o ...................................................................................................................... 3
§77z-1(a)(4) ........................................................................................................ 15
§78j(b)................................................................................................................... 4
§78n ................................................................................................................... 3, 4
§78t(a) ............................................................................................................... 3, 4
§78u-4(a)(4) ....................................................................................................... 16
§78u-4(a)(7) ....................................................................................................... 25
§78u-4(a)(7)(A)-(F) ........................................................................................... 24

4887-8003-5783.v1

**Page**

Federal Rules of Civil Procedure
Rule 23 ...................................................................................................... 17, 20
Rule 23(a) ................................................................................................. 19, 24
Rule 23(a)(2) ............................................................................................ 19, 20
Rule 23(a)(3) ................................................................................................... 20
Rule 23(a)(4) ............................................................................................ 21, 22
Rule 23(b)(3) ...................................................................................... 22, 23, 24
Rule 23(c)(2) .................................................................................................... 25
Rule 23(c)(2)(B) .............................................................................................. 24
Rule 23(e) ......................................................................................................... 8
Rule 23(e)(1)(B) ...................................................................................... 9, 17, 24
Rule 23(e)(2) ................................................................................................. 9, 10
Rule 23(e)(2)(A) ............................................................................................... 10
Rule 23(e)(2)(B) ............................................................................................... 11
Rule 23(e)(2)(C) ............................................................................................... 11
Rule 23(e)(2)(C)(i) ..................................................................................... 12, 13
Rule 23(e)(2)(C)(ii) .......................................................................................... 14
Rule 23(e)(2)(C)(iii) ......................................................................................... 15
Rule 23(e)(2)(C)(iv) ......................................................................................... 16
Rule 23(e)(2)(D) ............................................................................................... 16
Rule 23(e)(3) ...................................................................................................... 9

17 C.F.R.
§240.10b-5 ......................................................................................................... 4

## SECONDARY AUTHORITIES

Laarni T. Bulan & Laura E. Simmons,
*Securities Class Action Settlements: 2023 Review and Analysis*
(Cornerstone Research 2024) ................................................................. 14

## I.     INTRODUCTION

After nearly three years of litigation, lead plaintiffs David P. Sarro, Kevin L. Tye, and Jess Q. Williams (together, "Federal Plaintiffs"), along with the plaintiff in a related action pending in the Delaware Court of Chancery, Richard Delman ("State Plaintiff" and together with Federal Plaintiffs, "Plaintiffs"), have reached an agreement with defendants Lightning eMotors, Inc. ("Lightning"), Timothy R. Reeser, Teresa P. Covington, Robert Fenwick-Smith, GigAcquisitions3, LLC, GigFounders, LLC, GigCapital Global, Avi S. Katz, Raluca Dinu, Neil Miotto, Brad Weightman, John J. Mikulsky, Andrea Betti-Berutto, and Peter Wang ("Defendants," and with Plaintiffs, the "Parties") to resolve the Actions for $13.35 million.[1]  Plaintiffs hereby seek preliminary approval of the Settlement, as set forth in the Stipulation.[2]

In determining whether preliminary approval is warranted, the sole issue before the Court is whether the proposed Settlement is within the range of what might be found to be fair, reasonable, and adequate so that notice of the proposed Settlement can be given to members of the Settlement Class and a hearing can be scheduled to consider final settlement approval.  The Settlement clearly meets these criteria.  As discussed below, while Plaintiffs believe their claims are meritorious, significant issues exist with respect to

---

[1] The "Actions" are this case (the "Federal Action") and *Delman v. GigAcquisitions3, LLC, et al.*, C.A. No. 2021-0679-LWW (Del. Ch.) (the "State Action").  All capitalized terms not otherwise defined herein shall have the meaning given to them in the July 1, 2024 Stipulation of Settlement (the "Stipulation"), submitted herewith.  All emphasis is added, and citations are omitted, unless otherwise noted.

[2] Pursuant to D.C.COLO.LCivR 7.1(a), counsel for the Federal Plaintiffs certify that Defendants and the State Plaintiff do not oppose the relief sought herein.

- 1 -

liability and damages, and therefore the $13,350,000 cash fund that will be created under the Parties' agreement represents a beneficial resolution of the Actions and the Settlement is in the best interests of the Settlement Class.

Because all the requirements for approval are met, the Court should enter the attached Notice Order: (1) granting preliminary approval of the proposed Settlement; (2) certifying the Settlement Class for settlement purposes; (3) approving the form and manner of notifying Settlement Class Members of the proposed Settlement; (4) setting a hearing for the Court to consider final approval of the Settlement, the Plan of Allocation, an award of attorneys' fees and expenses to Plaintiffs' Counsel, and an award to Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") in connection with their representation of the Settlement Class (the "Settlement Hearing"); and (5) setting a schedule for various deadlines related thereto.

## II.     BACKGROUND

Defendant Lightning manufactured and sold electric vehicles and powertrains. Defendant GigCapital3 was a "blank check" company, also known as a special purpose acquisition company, or "SPAC," that brought Lightning public via the Business Combination.  GigCapital3's Units, warrants, and common stock traded on the New York Stock Exchange ("NYSE") under the symbols GIK.U, GIK.WS, and GIK, respectively. Following the close of the Business Combination on May 6, 2021, when GigCapital3 became known as Lightning, its common stock and warrants traded on the NYSE under the symbols ZEV and ZEV.WS.  Both the Federal and State Actions allege claims on behalf of Lightning Securities investors relating to the Business Combination for Defendants' alleged

4887-8003-5783.v1

material misrepresentations and omissions made in connection therewith.  Given that the alleged harm in both Actions arises from the same set of facts and the overlapping Settlement Class definitions, this Court has jurisdiction over all putative Settlement Class Members in both Actions.

> ### A.    The Federal Action

On October 15, 2021, the initial class action complaint was filed in the Federal Action.  ECF 1.  On April 22, 2022, the Court appointed the Federal Plaintiffs as lead plaintiffs and approved their choice of lead counsel.  ECF 48.  On May 20, 2022, Federal Plaintiffs filed their consolidated complaint (the "Federal Complaint").  ECF 52.

The Federal Complaint alleged that the offering documents for GigCapital3's May 18, 2020 initial public offering contained false and misleading statements about its purported commitment to its "Mentor-Investor" business strategy, in violation of §§11 and 15 of the Securities Act of 1933 ("Securities Act").  ¶¶202-218.[3]  The Securities Act claims were brought on behalf of all Persons (excluding Defendants, the PIPE Investor and Convertible Note Investors in Lightning, and certain other related parties) who purchased or acquired publicly traded securities issued pursuant to GigCapital3's Registration Statement. ECF 52 at 1.

The Federal Complaint also alleged violations of §§14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") based upon false and misleading statements about the "Mentor-Investor" strategy, as well as Lightning's ability to scale its operations, supply chain strength, and revenue prospects, in soliciting proxies from GigCapital3 stockholders

---

[3] Unless otherwise noted, all "¶__" or "¶¶__" are references to the Federal Complaint.

to gain their approval for the Business Combination with Lightning.  ¶¶223-226.  The §§14(a) and 20(a) claims were brought on behalf of all stockholders of GigCapital3 as of March 15, 2021 (the "Record Date") that were entitled to vote on the proposed Business Combination.  ECF 52 at 1.

Finally, the Federal Complaint alleged that the foregoing actions, along with certain Defendants' continued issuance of false and misleading public statements to Lightning investors regarding Lightning's operations, ability to scale, and supply chain in the first and second quarters of 2021, violated §§10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.  ¶¶239-257.  These claims were brought on behalf of all persons that purchased or otherwise acquired Lightning Securities during the period from May 18, 2020 through August 16, 2021, inclusive (the "Class Period"), and were damaged thereby.  ECF 52 at 1.

The Federal Complaint alleged that as a result of Defendants' misrepresentations and omissions, the prices of Lightning Securities were artificially inflated during the Class Period.  ¶¶187-188.  Then, at the end of the Class Period, Lightning announced that it was nowhere close to being on track to produce the 500 electric vehicles for 2021 it had promised and was withdrawing its prior financial guidance.  ¶¶101-102.  Additionally, without any explanation, Lightning stated that GigCapital3's board appointees (defendants Katz, Dinu, and Miotto) would not be running for re-election to the Lightning board, abandoning GigCapital3's purported "Mentor-Investor" strategy.  ¶103.  The Federal Complaint alleges that as a result, the artificial inflation left Lightning Securities' prices and the prices dropped significantly, damaging the Settlement Class Members.  ¶104.

- 4 -

On July 13, 2022, Defendants filed motions to dismiss the Federal Complaint.  ECFs 69, 72.  Federal Plaintiffs filed their opposition on August 17, 2022, and Defendants replied on September 7, 2022.  ECFs 76, 78, 80.  On January 10, 2023, Federal Plaintiffs filed a notice of supplemental authority notifying the Court of an order in the related State Action denying certain Defendants' motion to dismiss.  ECF 88.

On February 21, 2023, Federal Plaintiffs and Defendants moved to stay the case pending a potential resolution at mediation.  ECF 91.  The same day, Magistrate Judge Kristen Mix granted the stay and denied Defendants' motions to dismiss without prejudice. ECF 93.  Litigation continued when the global mediation did not result in a settlement.

On June 14, 2023, Defendants re-filed their motions to dismiss.  ECFs 99, 101. Those motions were fully briefed by July 19, 2023.  ECFs 104, 105, 107.  On February 20, 2024, Magistrate Judge Kathryn Starnella issued a Report and Recommendation that the motions to dismiss be granted and Federal Plaintiffs' claims be dismissed without prejudice. ECF 111.  On March 5, 2024, Federal Plaintiffs filed an objection to the Report and Recommendation.  ECF 114.  On March 26, 2024, this Court adopted the Report and Recommendation over Federal Plaintiffs' objection, dismissing the Federal Complaint without prejudice and allowing Federal Plaintiffs to seek to amend their claims.  ECF 118.

On April 11, 2024 and May 10, 2024, Federal Plaintiffs filed notices informing Defendants and the Court of their intent to amend the Federal Complaint.  ECFs 120, 121. This Settlement was reached prior to Federal Plaintiffs filing that amendment.

**B.    The State Action**

On August 4, 2021, State Plaintiff filed a class action complaint in the Court of

- 5 -

4887-8003-5783.v1

Chancery of Delaware naming as defendants GigAcquisition3, LLC, Avi S. Katz, Raluca Dinu, Neil Miotto, John J. Mikulsky, Andrea Betti-Berutto, and Peter Wang (the "State Action Defendants"). State Action, ECF 87951212 (the "State Complaint").

The State Complaint alleges that the defendants impaired GigCapital3 stockholders' redemption rights, including by issuing false proxy solicitation materials containing inflated valuations of Lightning and knowingly false revenue growth projections, among other misrepresentations and omissions. State Complaint, ¶¶15-16, 18, 66-71, 82-86. The State Action asserts Delaware breach of fiduciary duty and unjust enrichment claims on behalf of holders of GigCapital3 common stock during the time period from the Record Date (March 15, 2021) through the Closing Date (May 6, 2021). State Complaint, ¶99.

The State Action Defendants filed a motion to dismiss the State Complaint on August 31, 2021 and their opening brief on October 19, 2021. State Action, ECFs 88068559, 88280429. On December 3, 2021, State Plaintiff filed his opposition brief and, on January 13, 2022, the State Action Defendants filed their reply. *Id.*, ECFs 88463726, 88610306. On February 25, 2022, State Plaintiff filed a motion requesting a sur-reply. *See id.*, ECFs 88794848, 88803249, 88810342. Oral argument was held on the motion on September 23, 2022. *Id.*, ECF 89823247. On January 4, 2023, State Action Defendants' motion to dismiss was denied. *Id.*, ECF 90514255.

The State Action Defendants answered the State Complaint on January 18, 2023, denying all material allegations and asserting multiple defenses. *Id.*, ECF 90657394. Fact discovery commenced shortly thereafter. To date, the State Plaintiff has received and reviewed over 7,600 documents, comprising over 55,000 pages, produced by State Action

Defendants in discovery, as well as confidential internal documents and discovery responses from Defendants.

### C.      Global Settlement Negotiations

The Parties engaged in two rounds of mediation to resolve the Actions.  The first took place during February and March 2023, when Plaintiffs and Defendants agreed to explore a global resolution of the Actions and engaged the services of David M. Murphy, Esq., a highly qualified mediator experienced in complex shareholder litigation (the "Mediator").  In connection with the mediation, the Parties exchanged confidential mediation statements, attended an in-person mediation session, and engaged in continued discussion thereafter.  However, the Parties failed to reach a global resolution.

In March 2024, following significant developments in the Actions and Lightning's entry into Receivership, the Parties agreed to renew settlement efforts.  After several weeks of engagement, the Mediator issued a "mediator's proposal" to settle all claims at issue for $13.35 million, subject to resolution of certain remaining non-monetary terms.  On May 1, 2024, the Mediator informed the Parties that the Mediator's proposal had been accepted.  Over the course of the next few weeks, the Parties continued to negotiate certain non-monetary terms, submitting certain terms to the Mediator for a binding, non-appealable decision when the Parties' negotiations reached an impasse.  The Parties ultimately agreed to a binding Settlement Term Sheet that reflected the material terms of the Settlement, with the understanding that such terms would thereafter be embodied in the terms of a customary stipulation of settlement (and accompanying exhibits) that would be submitted to the Federal Court for its approval.  The Stipulation filed herewith (together with the exhibits

attached thereto) reflects the Parties' superseding, final, and binding agreement to settle, subject to Court approval.

## III.   THE PROPOSED SETTLEMENT

The Settlement resolves the Settlement Class claims against all Defendants in both Actions.  The Stipulation provides that Defendants shall pay, or cause to be paid, $13.35 million in cash within ten (10) business days of entry of the Notice Order.  Stipulation, ¶3.1. The cost of settlement administration, including the costs of notice to the Settlement Class, as well as Taxes and tax expenses, will be funded by the Settlement Fund.  *Id.*, ¶¶3.1, 4.2. In exchange for the benefits provided, Settlement Class Members will release Defendants as provided for in ¶2.2 of the Stipulation.

## IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   Standards for Preliminary Approval of a Proposed Settlement

As the Tenth Circuit has held, "'[t]he inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims.'"  *Am. Home Assurance Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977).  "Courts have held that the presumption in favor of voluntary settlement agreements 'is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'"  *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014).

Class action settlement approval is a well-established two-step process.  *See Voulgaris v. Array Biopharma Inc.*, 2021 WL 6331178, at *3 (D. Colo. Dec. 3, 2021), *aff'd*, 60 F.4th 1259 (10th Cir. 2023); Fed. R. Civ. P. 23(e).  In the first stage, the preliminary

4887-8003-5783.v1

approval stage, the Court "is tasked with determining whether there is 'any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing.'" *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, 2020 WL 3833412, at *1 (D. Colo. Mar. 8, 2020) (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006)). "'[T]he standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase.'" *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015); *see also In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *3 (D. Colo. Aug. 29, 2013) ("'Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'") (ellipsis in original).

Under Rule 23(e)(1)(B), the issue to be decided upon a motion for preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."[4]  In evaluating a class action settlement under Rule 23(e)(2), courts should consider whether:

> (A)    the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

---

[4] As noted above, the Parties have stipulated to class certification for purposes of this Settlement.

Fed. R. Civ. P. 23(e)(2).  Additionally, in deciding whether a settlement is "fair, reasonable, and adequate," courts traditionally consider whether:

> "(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable."

*In re Syngenta Ag Mir 162 Corn Litig.*, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018).

Because the Tenth's Circuit's additional factors "largely overlap" with the Rule 23(e)(2) factors, courts now "consider[] the Rule 23(e)(2) factors as the main tool in evaluating the propriety of [a] settlement," while still addressing the Tenth Circuit's other factors.  *Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).

## B.     The Settlement Satisfies the Rule 23(e)(2) Factors

### 1.     Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Settlement Class

Rule 23(e)(2)(A) is satisfied because Plaintiffs and Plaintiffs' Counsel have diligently prosecuted the Actions, including, among other things: (i) investigating the relevant factual events underlying the Actions; (ii) drafting the Federal and State Complaints; (iii) opposing Defendants' motions to dismiss; (iv) conducting discovery (in the State Action); and (v) participating in the global mediation efforts.  In short, Plaintiffs have shown adequacy "by closely monitoring and participating in [the] [Actions] from the outset through resolution." *Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2024 WL 98387, at *3 (D. Colo. Jan. 1, 2024).   Moreover, Plaintiffs' Counsel have significant experience prosecuting complex shareholder litigation such as the Actions.  *See, e.g.*, *id.*, at *4 (observing that Robbins  Geller  Rudman  &  Dowd  LLP  ("Robbins  Geller")  is  "highly  experienced  in

- 10 -

prosecuting securities class actions"); *In re The S. Co. S'holder Deriv. Litig.*, 2022 WL 4545614, at *6 (N.D. Ga. June 9, 2022) (recognizing Johnson Fistel, LLP as "skilled" and "experienced" securities counsel); *In re Del Monte Foods Co. Shareholders Litig.*, 2010 WL 5550677, at *9 (Del. Ch. Dec. 30, 2010) (noting that Grant & Eisenhofer P.A.'s successful "track record stands out" in Delaware's Court of Chancery).

### 2. The Settlement Was Negotiated at Arm's Length

The second Rule 23(e)(2)(B) factor (and first Tenth Circuit factor) considers whether "'the Settlement was fairly and honestly negotiated.'" *Syngenta*, 2018 WL 1726345, at *2. Here, it cannot be seriously disputed that the Settlement was negotiated at arm's length, as it was reached only after Plaintiffs and Plaintiffs' Counsel had gained a thorough understanding of the claims' merits, and after lengthy mediation efforts overseen by a neutral, third-party mediator with considerable experience in complex shareholder class actions. The Mediator conducted a lengthy and informative in-person mediation session with the Parties, apprised the Parties of each side's respective strengths and weaknesses, and worked with the Parties for over a year in an effort to resolve the Actions. Courts recognize that such "utilization 'of an experienced mediator supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved.'" *Voulgaris*, 2021 WL 6331178, at *5 (citing *In re Molycorp, Inc. Sec. Litig.*, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017)); *Maxar*, 2024 WL 98387, at *3 (approving settlement that was "fairly and honestly negotiated at arms' length and in good faith by counsel experienced in these types of cases" and utilized a "neutral mediator").

### 1. The Proposed Settlement Is Adequate in Light of the Four Rule 23(e)(2)(C) Factors

4887-8003-5783.v1

### a.      Costs, Risks, and Delay of Trial and Appeal

The presence of serious legal and factual questions concerning the outcome of the Actions (also the second Tenth Circuit factor) weighs in favor of settlement, "because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation."  *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i).  Securities class actions in particular are notoriously complex and present numerous hurdles to proving liability and damages.  *See, e.g.*, *Maxar*, 2024 WL 98387, at *4 (recognizing difficulty associated with proving loss causation and establishing damages weighed in favor of approving the settlement); *Qwest*, 625 F. Supp. 2d at 1138 (finding that the issues of scienter, causation, and damages in a securities fraud action were "complex and problematic" and that "[p]resenting these issues to a jury would create substantial risks for all parties, including the plaintiffs").

Given the risks and challenges inherent in litigating the Actions, Plaintiffs and Plaintiffs' Counsel believe that the proposed Settlement is in the best interests of the Settlement Class.  In the first instance, law surrounding SPACs is still developing, and the application of the federal securities laws and Delaware law to cases involving SPACs, SPAC management incentives, and representations made in SPAC offering documents continues to evolve.[5]  Federal Plaintiffs faced significant risk in seeking to plead and prove that Defendants made (with scienter) materially false or misleading statements regarding

---

[5] *See, e.g.*, Press Release, United States Securities and Exchange Commission, *SEC Adopts Rules to Enhance Investor Protections Relating to SPACs, Shell Companies, and Projections* (Jan. 24, 2024), https://www.sec.gov/news/press-release/2024-8.

4887-8003-5783.v1

GigCapital3's Mentor-Investor strategy, Lightning's ability to scale, and the strength of its supply chain – particularly in light of the PSLRA's restriction on discovery before a motion to dismiss has been denied.  Indeed, this Court has already dismissed Federal Plaintiffs' claims for failure to plead falsity with sufficient particularity, though without prejudice.  ECF 111.  And even if the Court granted Federal Plaintiffs leave to file an amended complaint, there could be no assurance that that complaint would survive Defendants' renewed motions to dismiss (let alone summary judgment, trial, and inevitable appeals).  Similarly, State Plaintiff's breach of fiduciary duty and unjust enrichment claims, while having survived a motion to dismiss, also involved significant risk.  Not only would State Plaintiff need to prove that Defendants impaired GigCapital3 stockholders' redemption rights through the issuance of misleading proxy solicitation materials, but he also would need to establish the true (lower) value of Lightning utilizing contested expert testimony.

The Court should also balance the benefits afforded to the Settlement Class, including the immediacy and certainty of a recovery (the third Tenth Circuit factor), against the significant costs, risks, and delay of proceeding with the Actions.  Fed. R. Civ. P. 23(e)(2)(C)(i).  This factor is based on the premise that the Settlement Class is "better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted."  *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008). Considering the risks associated with continued litigation, as discussed above, the immediate, substantial relief offered by the Settlement outweighs the "mere possibility of a more favorable outcome after protracted and expensive litigation over many years in the

- 13 -

future."  *Syngenta*, 2018 WL 1726345, at *2.

The $13.35 million Settlement here represents a very good result; it surpasses the $12.4 million median settlement amount for cases settled in the Tenth Circuit between 2014 and 2023.  *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2023 Review and Analysis*, at 20, Appendix 3 (Cornerstone Research 2024).[6]  This result is particularly good given that Lightning's: operations have ceased; assets have substantially all been sold through receivership proceedings; and securities have been delisted from the NYSE.  It has no assets other than an insurance policy with which to pay a judgment – a wasting pool of funding also being used to cover all of Defendants' litigation costs.

Further, these Actions have already been pending for approximately three years, and Plaintiffs would expend significant additional time, resources, and costs to complete the pre-trial proceedings, including renewed motions to dismiss, class certification, summary judgment, and *Daubert* motions.  *Chavez Rodriguez*, 2020 WL 3288059, at *3 (observing that "the costs and time of moving forward in litigation would be substantial").  In addition, Defendants could appeal any verdict eventually obtained for Plaintiffs and the Classes, which could take years to resolve.  *Kmart*, 234 F.R.D. at 694 ("If this case were to be litigated, in all probability it would be many years before it was resolved.").

### b.   The Proposed Method for Distributing Relief Is Effective

As demonstrated below, the method and effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective.  The notice plan involves

---

[6] Available at https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf.

4887-8003-5783.v1

direct mail notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service.   In addition, a settlement-specific website will be created where settlement-related and other key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Notice Order.

Plaintiffs propose a thorough and comprehensive claims administration process. Specifically, a standard claim form will request the information necessary to establish membership in the Settlement Class and calculate a claimant's Recognized Loss Amount pursuant to the Plan of Allocation.   The Claims Administrator will process the Claims, calculate claimants' recognized losses and, ultimately, distribute the Net Settlement Fund to Authorized Claimants.[7]

### c.     Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."   The Notice provides that Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees of up to 33-1/3% of the Settlement Amount and litigation expenses in an amount not to exceed $225,000, plus interest on those amounts at the same rate as earned by the Settlement Fund.   *See* Stipulation, Ex. A-1 at 5; *see Voulgaris*, 60 F.4th at 1264 (affirming award of 33% of $8.5 million recovery); *Crocs*, 306 F.R.D. at 680 (awarding 33-1/3% of $10 million recovery plus expenses).   In addition, Plaintiffs may seek an award of no more than $10,000 in the aggregate pursuant to 15

---

[7] The Notice also provides Settlement Class Members with the procedure to challenge the rejection of any Claim.   *See* Stipulation, ¶7.

U.S.C. §77z-1(a)(4) and 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Settlement Class.  *See Maxar*, 2024 WL 98387, at *4 (awarding $3,900 to single plaintiff).  With respect to the timing of payment, the Stipulation provides that any fees and expenses, as awarded by the Court, shall be paid to Plaintiffs' Counsel once the Court executes an order awarding such fees and expenses.  *See* Stipulation, ¶5.1.

### d. The Parties Have No Additional Agreement Other than an Agreement to Address Requests for Exclusion

The Parties have entered into a standard supplemental agreement which provides solely that in the event that Settlement Class Members with Class Period purchases of Lightning Securities that exceed a certain threshold validly request exclusion from the Settlement Class, Defendants shall have the option to terminate the Settlement.  *See* Stipulation, ¶10.3; Fed. R. Civ. P. 23(e)(2)(C)(iv).

### C. The Settlement Treats Settlement Class Members Equitably

The Settlement also treats Settlement Class Members equitably under Federal Rule of Civil Procedure 23(e)(2)(D).  Plaintiffs' Notice provides that if the Settlement is approved by the Court, the Net Settlement Fund will be distributed to eligible Settlement Class Members who timely submit valid Proofs of Claim that are accepted for payment by the Court ("Authorized Claimants").  The Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis, based on the size of their claim and the number of claims submitted in each Action.  Settlement Class Members with timely and valid claims in both the Federal and State Actions will receive the larger of the *pro rata* distributions to which they are entitled for those shares.  Courts in this District and others have held similar plans

- 16 -

"treat[ed] class members equitably relative to each other." *Voulgaris*, 2021 WL 6331178, at *7; *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *12 (N.D. Cal. Sept. 4, 2018) ("[T]he allocation plan disburses the Settlement Fund to class members on a 'pro rata basis based on the relative size of' the potential claims that they are compromising.  This type of pro rata distribution has frequently been determined to be fair, adequate, and reasonable.").

> ### D.     The Settlement Satisfies the Remaining Factor Considered by Courts in the Tenth Circuit

The final, additional factor courts in the Tenth Circuit consider is "'the judgment of the parties that the settlement is fair and reasonable.'"  *Chavez Rodriguez*, 2020 WL 3288059, at *2.  In analyzing this factor, courts recognize that "'the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight.'"  *O'Dowd v. Anthem, Inc.*, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019) (alteration in original).  Bringing their extensive experience and knowledge to bear, Plaintiffs' Counsel believe that the Settlement is in the best interests of the Settlement Class, as it provides a meaningful cash recovery to the Settlement Class now, eliminating the risk that the Settlement Class will ultimately obtain nothing.

## V.     THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

In determining whether to grant preliminary approval, the Court should also determine whether it "will likely be able to" grant certification to the proposed Settlement Class for purposes of the Settlement at final approval.  Fed. R. Civ. P. 23(e)(1)(B).  The proposed Settlement Class, which has been stipulated to by the Parties for purposes of this Settlement, consists of the Federal Class and State Class.  The Federal Class includes:

(i) all persons who purchased or otherwise acquired publicly traded securities

4887-8003-5783.v1

issued pursuant to GigCapital3, Inc.'s Form S-1 Registration Statement declared effective on May 5, 2020 with the SEC, as amended by Post-Effective Amendment No. 1, filed on May 13, 2020; (ii) all stockholders of GigCapital3, Inc. as of the March 15, 2021 Record Date that were entitled to vote on GigCapital3's proposed transaction to acquire Lightning Systems; and (iii) all persons that purchased or otherwise acquired Lightning Securities during the period from May 18, 2020 through August 16, 2021, inclusive, and were damaged thereby.

The State Class includes: all record and beneficial holders of GigCapital3 common stock who held such stock during the time period from the Record Date through the Closing Date. *See* Stipulation, ¶¶1.9, 1.32, 1.35.[8]

Courts in the Tenth Circuit have long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Qwest*, 625 F. Supp. 2d at 1147 (acknowledging certifying a class for the purpose of settlement); *Crocs*, 2013 WL 4547404, at *3 (certifying of a settlement class, noting "courts have broad discretion when deciding whether to certify a putative class"). Certification of a settlement class "'has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants.'" *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 158 (S.D.N.Y. 2011).

---

[8] Excluded from the Settlement Class are: (i) Defendants; (ii) the officers and directors of Lightning during the Class Period, as well as their Immediate Family Members and their legal representatives, heirs, successors or assigns; (iii) any entity in which Defendants have or had a controlling interest; (iv) the PIPE Investor and Convertible Note Investors as defined in Lightning's Form S-1 and incorporated Proxy Statement dated March 26, 2021, filed with the SEC; and (v) with respect to the State Class, the underwriters in GigCapital3's IPO, who were Nomura Securities International, Inc., Oppenheimer & Co. Inc. and Odeon Capital Group LLC and holders of GigCapital3 common stock who exercised their right to redeem all of their shares in connection with the Business Combination. Also excluded from the Settlement Class are any Persons who exclude themselves by submitting a timely and valid request for exclusion in accordance with the requirements set forth in the Notice. *See id.*

A.    **The Settlement Class Satisfies the Requirements of Rule 23(a)**

Certification is appropriate under Rule 23(a) if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of [those] of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a).

1.    **The Settlement Class Is so Numerous that Joinder Is Impracticable**

The Tenth Circuit does not follow a minimum presumption for numerosity.  *Crocs*, 2013 WL 4547404, at *5.  A precise calculation of the number of class members is not required to establish numerosity.  *Id.* (accepting as sufficient a representation that the settlement class potentially consists of thousands of individuals); *see also Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2021 WL 3021461, at *2 (D. Colo. July 16, 2021) (accepting estimate of thousands of shareholders as support for numerosity). Accordingly, courts in this district have certified plaintiff classes based on the volume of outstanding shares.  *See id.*

Over 20 million units were sold in the GigCapital3 IPO, later broken into one share of common stock and 3/4 warrant per unit; as of June 30, 2021, there were approximately 15 million Lightning publicly traded warrants and 73.2 million shares of common stock outstanding.[9]  Numerosity is thus readily established here.  *See, e.g.*, *Molycorp*, 2017 WL 4333997, at *5 (certifying class with 56 million shares outstanding).

2.    **There Are Common Questions of Law and Fact**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."

---

[9] Lightning's August 16, 2021 Form 10-Q, at 3, 25.

Fed. R. Civ. P. 23(a)(2).  "Even one common issue of law or fact will suffice to establish Rule 23's commonality requirement."  *Crocs*, 2013 WL 4547404, at *5.  Securities class actions like this one easily satisfy commonality, because "whether the[] material omissions and misrepresentations occurred is a factual and legal question that is common to the entire class and is capable of class wide resolution."  *Id.* at *6; *see also Maxar*, 2021 WL 3021461, at *2 (finding commonality where "the class members are alleged to have been defrauded by the same misleading statements made by Defendants, and therefore suffered similar losses as a result"); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 318 F.R.D. 435, 444 (D. Colo. 2015) (finding commonality where alleged harm arose from misstatements in offering documents).

Here, questions of law and fact common to all Settlement Class Members include:

- Whether Defendants made public statements concerning Lightning's value, supply chain, and ability to scale that were materially false and misleading;

- Whether Defendants acted with the requisite scienter; and

- The extent of damage sustained by Settlement Class Members and the appropriate measure of damages.

Accordingly, the commonality requirement of Rule 23(a)(2) is satisfied.

### 3.    Plaintiffs' Claims Are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  "Typicality 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Crocs*, 2013 WL 4547404, at *6.  "Typical" does not mean "identical."  *Id.*  The critical question is whether the proposed class

- 20 -

representatives and the class can point to "the same course of events" to support a claim for relief. *Maxar*, 2021 WL 3021461, at *2. Accordingly, Plaintiffs' "interests are sufficiently aligned with the class members' interest as a whole" even if "class members may have purchased stock at different prices and on different days during the relevant period." *Molycorp*, 2017 WL 4333997, at *6.

Here, the alleged injuries to Plaintiffs and the other members of the Settlement Class are attributable to the same alleged course of conduct by Defendants, liability for this conduct is predicated on the same legal theories, and they possess the same interest in maximizing recovery for their claims as the rest of the Settlement Class. The typicality requirement is, therefore, satisfied. *See Crocs*, 2013 WL 4547404, at *6 (finding typicality satisfied where the plaintiffs' "interests are in line with those of the class given that [they] seem[] to have sought to maximize recovery for all those who claim they suffered a loss because of [defendants'] alleged misrepresentations and omissions").

### 4.     Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Crocs*, 2013 WL 4547404, at *8.

First, there is no conflict of interest between Plaintiffs and the proposed Settlement Class. Plaintiffs and Settlement Class Members purchased Lightning Securities during the

- 21 -

Class Period, and were injured by the same alleged misconduct.  Thus, the interests of Plaintiffs and the other members of the Settlement Class are aligned, and they share the common objective of maximizing their recovery from Defendants.  *See Maxar*, 2021 WL 3021461, at *2 ("Because Lead Plaintiff purchased Maxar common stock during the Class Period, its interest in establishing Defendants' liability and obtaining the maximum recovery is aligned with the interests of the other class members."); *accord Molycorp*, 2017 WL 4333997, at *7.

Second, Plaintiffs have shown their commitment to the Actions by working closely with qualified counsel to vigorously litigate them, as Robbins Geller, Johnson Fistel, and Grant & Eisenhofer have extensive experience in shareholder litigation.  *See* www.rgrdlaw.com;  www.johnsonfistel.com;  www.gelaw.com (summarizing counsel's experience).  Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied.

## B.  The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### 1.  Common Legal and Factual Questions Predominate

"Rule 23(b)(3)'s predominance inquiry tests whether the proposed class[] are sufficiently cohesive to warrant adjudication by representation based on 'questions that preexist any settlement.'"  *Crocs*, 2013 WL 4547404, at *9.  This test is "'readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.'"  *Id.*

- 22 -

Here, "because the common questions of fact and law depend entirely upon the conduct of defendants, these questions predominate as they are unaffected by the particularized conduct of individual class members." *Id.* Thus, "because the answers to questions regarding defendants' alleged misconduct and the harm caused by such misconduct are common to all class members and inform the resolution of the litigation but for the settlement . . . common issues of law and fact predominate in this case." *Id.*

### a.   A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation:

> (A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Here, there is no evidence that putative Settlement Class Members desire to bring separate individual actions, as none have done so, and the Parties are unaware of any individual securities litigation involving the same issues. Furthermore, it is desirable to concentrate the claims in this Court as it is already familiar with the factual and legal issues in the case, and approval of the Settlement here will also resolve all claims in the related State Action. Additionally,

> settlement through the mechanism of a class action "is a superior method for resolving this dispute" as it "avoids duplicative litigation, saving both plaintiffs and defendants significant time and legal costs to adjudicate common legal and factual issues" and "because individual recovery for these claims is likely too small to provide an incentive for individual class members to adjudicate individual claims."

- 23 -

*Molycorp*, 2017 WL 4333997, at *8.  Finally, since this is a request for class certification only for purposes of settlement, the Court need not inquire as to whether the case, if tried, would present management problems.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593, 620 (1997).

In sum, the proposed Settlement Class meets all of the requirements of Rules 23(a) and (b)(3) and is appropriate for certification for purposes of the Settlement.

## VI.   THE COURT SHOULD APPROVE THE NOTICE PLAN

Plaintiffs propose that mailed and published notice be given substantially in the form of the Notice and Summary Notice, attached as Exhibits A-1 and A-3 to the Notice Order, submitted herewith.  The proposed Notice fulfills the requirements of due process and complies with the Federal Rules of Civil Procedure, as well as the separate disclosure requirements imposed by the PSLRA.  *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

The Court must direct notice in a "reasonable manner" to potential Settlement Class Members.  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(c)(2)(B) provides that for "any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Notice must be "'reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Tennille v. W. Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974)).

Here, the proposed Notice describes the Settlement in plain terms, the considerations that caused Plaintiffs and Plaintiffs' Counsel to conclude that the Settlement

- 24 -

is fair, adequate, and reasonable, the maximum amount Plaintiffs' Counsel will seek in attorneys' fees and expenses, the maximum amount Plaintiffs will seek for their representation of the Settlement Class, the procedure for requesting exclusion or filing objections, and the date and time of the Settlement Hearing. *See* Rule 23(c)(2) and 15 U.S.C. §78u-4(a)(7).

Plaintiffs, through an experienced settlement claims administrator, Gilardi & Co. LLC ("Gilardi"), proposes to give interested parties notice in two ways: by First-Class Mail, (or email, where email addresses are available), addressed to all members of the Settlement Class who can reasonably be identified and located; and by publication in a nationally-circulated newspaper, *The Wall Street Journal*, and over a national newswire service. Gilardi will also post the Notice on a dedicated website: www.LightningeMotorsSecuritiesSettlement.com.   The proposed method provides Settlement Class Members with the best notice practicable under the circumstances. *See Fager v. CenturyLink Commc'ns., LLC*, 854 F.3d 1167, 1171 (10th Cir. 2016) ("Notice by first-class mail was adequate . . . ."); *Maxar*, 2024 WL 98387, at *5 (notice sufficient where "Gilardi has properly mailed the notice packet to potential class members, published the summary notice, and established a website with information relevant to the settlement").

## VII.    CONCLUSION

Plaintiffs respectfully request that the Court issue an order substantially in the form of the proposed Notice Order, submitted herewith.

DATED:  July 2, 2024                         Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN
HILLARY B. STAKEM
HEATHER G. GEIGER


s/ Hillary B. Stakem
HILLARY B. STAKEM

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
hstakem@rgrdlaw.com
hgeiger@rgrdlaw.com

JOHNSON FISTEL, LLP
JEFFREY A. BERENS
2373 Central Park Boulevard, Suite 100
Denver, CO 80238-2300
Telephone: 303/861-1764
303/861-1764 (fax)
jeffb@johnsonfistel.com

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

Lead Counsel for Lead Plaintiffs

- 26 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

s/ Hillary B. Stakem
_____
HILLARY B. STAKEM

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
hstakem@rgrdlaw.com
