**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02774-RMR-KAS
         Consolidated with 1:21-cv-3215-RMR-KAS

JOHNNY R. SHAFER,
DAVID P. SARRO,
KEVIN L. TYE,
JESS Q. WILLIAMS,
JUSTIN COHEN,
         Individually and On Behalf of All Others Similarly Situated,

         Plaintiffs,

v.

LIGHTNING EMOTORS, INC.,
TIMOTHY R. REESER,
TERESA P. COVINGTON,
GIGACQUISITIONS3 LLC,
GIGCAPITAL GLOBAL,
AVI S. KATZ,
RALUCA DINU,
NEIL MIOTTO
GIGFOUNDERS LLC
BRAD WEIGHTMAN,
ANDREA BETTI-BERUTTO,
PETER WANG,
JOHN J. MIKULSKY, and
ROBERT FENWICK-SMITH,

         Defendants.

---

**JOINT DECLARATION OF HILLARY B. STAKEM, MICHAEL I. FISTEL JR. AND MICHAEL J. BARRY IN SUPPORT OF: (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO FEDERAL PLAINTIFFS IN CONNECTION WITH THEIR REPRESENTATION OF THE SETTLEMENT CLASS**

---

1.      We, Hillary B. Stakem, Michael I. Fistel Jr. and Michael J. Barry, pursuant to 28 U.S.C. §1746, hereby declare as follows:

2.      Hillary B. Stakem is a partner of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), counsel representing lead plaintiffs David P. Sarro, Kevin L. Tye, and Jess Q. Williams (together, "Federal Plaintiffs") and the Settlement Class and is duly admitted to practice law in California and admitted in Colorado before this Court.[1] Michael I. Fistel Jr. is a partner of the law firm Johnson Fistel, LLP ("Johnson Fistel," and together with Robbins Geller, "Lead Counsel"), counsel representing the Federal Plaintiffs and the Settlement Class and is duly admitted to practice law in the State of Georgia and before this Court.  Michael J. Barry is a principal in the law firm of Grant & Eisenhofer P.A. ("Grant Eisenhofer" or "State Counsel"), counsel for Richard Delman ("State Plaintiff"), the plaintiff in the State Action[2] and is duly admitted to practice law in the State of Delaware, the Commonwealth of Pennsylvania, the State of New Jersey and the Commonwealth of Massachusetts (inactive) and before this Court.  We have personal knowledge of the matters set forth herein with respect to our respective cases, and, if called upon, we could and would competently testify hereto.

3.      We submit this declaration in support of Plaintiffs'[3] Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation, pursuant to Rule 23(e) of the

---

[1]   Capitalized terms not otherwise defined herein, shall have the same meanings as is set forth in the Stipulation of Settlement ("Stipulation").  ECF 127.

[2]   The "State Action" is *Delman v. GigAcquisitions3, LLC, et al.*, C.A. No. 2021-0679-LWW (Del. Ch.).

[3]   "Plaintiffs" refers collectively to Federal Plaintiffs and State Plaintiff.

- 1 -

Federal Rules of Civil Procedure.  The Court preliminarily approved the Settlement in its Order Granting Preliminary Approval Pursuant to Fed. R. Civ. P. 23(e)(1) and Permitting Notice to the Settlement Class, dated July 23, 2024 (the "Preliminary Approval Order"). ECF 130.  The Settlement will globally resolve all claims asserted in both Actions on behalf of the Settlement Class, which "consist[s] of the Federal Class and State Class.  The Federal Class includes: (i) all persons who purchased or otherwise acquired publicly traded securities issued pursuant to GigCapital3, Inc.'s Form S-1 Registration Statement declared effective on May 5, 2020 with the SEC, as amended by Post-Effective Amendment No. 1, filed on May 13, 2020; (ii) all stockholders of GigCapital3 as of the March 15, 2021 Record Date that were entitled to vote on GigCapital3's proposed transaction to acquire Lightning Systems; and (iii) all persons that purchased or otherwise acquired Lightning Securities during the period from May 18, 2020 through August 16, 2021, inclusive, and were damaged thereby.  The State Class includes: all record and beneficial holders of GigCapital3 common stock who held such stock during the time period from the Record Date through the Closing Date."  *Id.* at 2-3.[4]

---

[4]    "Excluded from the Settlement Class are: (i) Defendants; (ii) the officers and directors of Lightning during the Class Period, as well as their Immediate Family Members and their legal representatives, heirs, successors or assigns; (iii) any entity in which Defendants have or had a controlling interest; (iv) the PIPE Investor and Convertible Note Investors as defined in Lightning's Form S-1 and incorporated Proxy Statement dated March 26, 2021, filed with the SEC; and (v) with respect to the State Class, the underwriters in GigCapital3's IPO, who were Nomura Securities International, Inc., Oppenheimer & Co. Inc. and Odeon Capital Group LLC and holders of GigCapital3 common stock who exercised their right to redeem all of their shares in connection with the Business Combination.  Also excluded from the Settlement Class are any Persons who exclude themselves by submitting a timely request for exclusion in accordance with the requirements set forth in the Notice."  ECF 130 at 3.

4.      This declaration is also submitted in support of Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Federal Plaintiffs in Connection with their Representation of the Settlement Class ("Fee Memorandum"), submitted herewith.

5.      For the reasons set forth below and in the accompanying motions, Plaintiffs and Plaintiffs' Counsel respectfully submit that: (i) the terms of the Settlement are fair, reasonable, and adequate in all respects and should be approved by the Court; (ii) the proposed Plan of Allocation is fair and reasonable and should be approved by the Court; and (iii) the request for attorneys' fees and expenses, and an award to Federal Plaintiffs, is supported by the facts and the law and should be granted in all respects.

## I.      THE RECOVERY ACHIEVED

6.      The Settlement provides a significant, all-cash recovery of $13,350,000 (the "Settlement Amount") to resolve the Actions against Defendants,[5] as memorialized in the Stipulation (ECF 127).  The Settlement is the result of vigorously contested litigation, and was reached only after an arm's-length mediation process conducted under the auspices of an experienced mediator, David M. Murphy, Esq., of Philips ADR (the "Mediator").

7.      Before agreeing to the Settlement, Plaintiffs' Counsel diligently litigated the Actions by, among other things: (i) conducting a thorough investigation of potential claims

---

[5]    Defendants are Lightning eMotors, Inc. f/k/a GigCapital3, Inc. ("Lightning" or "Lightning eMotors"), Teresa P. Covington, Robert Fenwick-Smith, and Timothy R. Reeser (collectively with Lightning, the "Lightning Defendants"); and defendants GigAcquisitions3, LLC, Avi S. Katz, Raluca Dinu, Neil Miotto, John J. Mikulsky, Andrea Betti-Berutto, Peter Wang, GigFounders, LLC, GigCapital Global, and Brad Weightman (the "GigCapital3 Defendants," and with the Lightning Defendants, the "Defendants").

- 3 -

against Defendants; (ii) reviewing and analyzing Lightning's (and nonparty) filings with the United States Securities and Exchange Commission ("SEC"); (iii) identifying and reviewing copies of Lightning's press releases and statements made to investors on conference calls and at investor conferences; (iv) collecting and analyzing Wall Street analyst reports and other publicly available news media reports about Lightning and the industry within which it operated; (v) collecting and analyzing additional investigative materials, which included (*inter alia*) working with investigators to identify and contact former Lightning employees; (vi) researching the applicable law with respect to the claims of Plaintiffs and the Settlement Class against Defendants and the potential defenses thereto; (vii) analyzing filings in other actions brought by and against Defendants and in Lightning's receivership proceedings; (viii) reviewing confidential Lightning documents provided by Lightning in response to a books and records request submitted by State Plaintiff in accordance with Delaware law; and (ix) reviewing confidential Lightning documents provided by Defendants in connection with mediation efforts. Lead Counsel also sought to unseal documents that were filed under seal in a related state action in Delaware[6] and fully briefed motions in an effort to gain public access to documents and information that supported the Federal Plaintiffs' and Settlement Class Members' claims. In addition to the foregoing investigative work which was used to prepare and file detailed complaints in both Actions, Plaintiffs' Counsel thoroughly briefed and opposed Defendants' motions to dismiss in both Actions. After State Plaintiff's claims were upheld, State Counsel also obtained more than 55,000 pages

---

[6]    *See Uvaydov v. Fenwick-Smith*, No. 2023-0137 (Del. Ch.), ECFs 93926278, 93926363, 94157153.

of documents from the Gig Defendants in discovery.  Plaintiffs' Counsel also prepared for the mediation and negotiation of the global settlement that is now before the Court – a process that involved: (i) retaining and consulting with an experienced expert in the areas of causation and damages; (ii) preparing (and exchanging with Defendants) detailed mediation statements and related submissions; and (iii) participating in a lengthy in-person mediation session as well as multiple informal mediation sessions.  Accordingly, by the time the Settlement was reached, Plaintiffs' Counsel had developed a solid understanding of the strengths and weaknesses of the Actions.

8.      Although the Parties were unable to reach a successful settlement at the first in-person mediation session in March 2023, they continued negotiations for several weeks but ultimately could not reach a resolution.  The Parties renewed their negotiations a year later, following Lightning's entrance into receivership proceedings.  After several weeks of negotiation and conversations with the Mediator, the Parties agreed to a Mediator's proposal and reached a settlement-in-principle in May 2024.  Plaintiffs' Counsel spent additional time in the following weeks negotiating the final terms of the complex Stipulation and related exhibits.  Additionally, Plaintiffs' Counsel worked with Plaintiffs' retained damages expert to develop the terms of a fair, reasonable, and equitable Plan of Allocation that would account for the complexities arising from the inclusion of various securities for both Lightning and GigCapital3 in the global Settlement Class.

9.      As summarized below, Plaintiffs obtained this substantial $13.35 million recovery for the Settlement Class despite the significant risks inherent in complex securities class actions generally – and the significant case-specific risks in prosecuting the Actions

here.  The extensive pre-complaint investigation, legal research, and the Parties' mediation and settlement negotiations informed Plaintiffs and Plaintiffs' Counsel that, while they believed that they had meritorious bases for pursuing the Actions against Defendants, continuing to pursue litigation would necessarily involve significant risk.  Indeed, this Court's March 26, 2024 Order adopting the Recommendation of Magistrate Judge Kathryn Starnella ("MTD Order"), highlighted the risk involved, as that decision and order dismissed all claims asserted in the Federal Complaint without prejudice.  ECF 118.  While the Court granted Federal Plaintiffs permission to file a motion for leave to file an amended consolidated complaint, there was no guarantee that the motion for leave would be granted. And although the Federal Plaintiffs and Lead Counsel believe that further amendment to the Federal Complaint would cure the majority of the defects that this Court identified in its MTD Order – there was no guarantee that the claims asserted would withstand Defendants' second round of motions to dismiss.  Similarly, while State Plaintiff's claims survived a motion to dismiss, State Plaintiff still faced substantial risk in proving his claims.  There was no assurance in either Action that Plaintiffs would prevail on class certification, at summary judgment, at trial, and after any inevitable appeals – particularly as the law surrounding SPACs and application of the securities laws to SPACs is still developing, and State Plaintiff's theory of recovery relied heavily on contested expert testimony regarding the true value of Lightning eMotors.

10.    Even if Plaintiffs were successful at all stages of litigation, there is substantial doubt that Lightning would be able to pay a greater judgment at the end of the proceedings: Lightning's operations have ceased; its assets have substantially all been sold through

- 6 -

receivership proceedings; and its securities have been delisted from the NYSE. Lightning has no assets other than an insurance policy with which to pay a judgment – a wasting pool of funds also being used to cover Defendants' litigation costs.

11.    Plaintiffs' Counsel therefore respectfully submit that the $13.35 million Settlement is a very good result for the Settlement Class, and represents a meaningful "bird in the hand" when weighed against the risks of a much smaller recovery – or no recovery at all. As set forth in the accompanying Declarations of David P. Sarro, Kevin L. Tye, Jess Q. Williams, and Richard Delman in support of the Settlement and the Fee and Expense Application, each of the Plaintiffs also support the Settlement.

12.    For all of the reasons set forth herein, including the favorable $13.35 million result obtained in the face of very significant litigation risks, we respectfully submit that the terms of Settlement (as well as the Plan of Allocation) are "fair, reasonable and adequate" in all respects and should be approved. Based on the work performed and results achieved, we also respectfully submit that Plaintiffs' Counsel's work merits a 33-1/3% percentage-based attorneys' fee award (and payment of their expenses), and that each of the Federal Plaintiffs should be granted a relatively modest $2,500 award (for a total of $7,500) for their efforts on behalf of the Settlement Class.

## II.    SUMMARY OF THE CLAIMS ASSERTED

### A.    The Federal Action

13.    The Federal Plaintiffs allege that the offering documents for GigCapital3's May 18, 2020 initial public offering contained materially false and misleading statements about its purported commitment to its "Mentor-Investor" business strategy, in violation of

§§11 and 15 of the Securities Act of 1933 ("Securities Act"). The Federal Plaintiffs also allege violations of §§14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") based upon allegedly materially false and misleading statements in the proxy statement for the Business Combination (and incorporated materials) about, among other things: (i) the "Mentor-Investor" strategy; (ii) Lightning's ability to scale its operations; (iii) the Company's supply chain strength; and (iv) and its revenue prospects. Finally, the Federal Plaintiffs allege that the foregoing actions, along with certain Defendants' continued issuance of materially false and misleading public statements to Lightning investors regarding Lightning's operations, ability to scale, and supply chain in the first and second quarters of 2021, violated §§10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder. The Federal Plaintiffs allege that as a result of Defendants' misrepresentations and omissions, the prices of Lightning Securities were artificially inflated during the Class Period.

14. The Federal Plaintiffs further allege that, at the end of the Class Period, Lightning announced that it was nowhere close to being on track to produce the 500 electric vehicles for 2021 it had promised and was withdrawing its prior financial guidance. Additionally, without any explanation, Lightning stated that GigCapital3's board appointees (defendants Katz, Dinu, and Miotto) would not be running for re-election to the Lightning board, abandoning GigCapital3's purported "Mentor-Investor" strategy. The Federal Plaintiffs allege that, as a result, the artificial inflation was removed from Lightning Securities' prices as they dropped significantly, damaging the Settlement Class Members.

- 8 -

**B.      The State Action**

15.      The State Complaint alleges that the defendants impaired GigCapital3 stockholders' redemption rights, including by issuing false proxy solicitation materials containing inflated valuations of Lightning and knowingly false revenue growth projections, among other material misrepresentations and omissions.   The State Action asserts Delaware breach of fiduciary duty and unjust enrichment claims on behalf of holders of GigCapital3 common stock during the time period from the Record Date (March 15, 2021) through the Closing Date (May 6, 2021).   The State Complaint names as defendants GigAcquisition3, LLC, Avi S. Katz, Raluca Dinu, Neil Miotto, John J. Mikulsky, Andrea Betti-Berutto, and Peter Wang ("State Action Defendants" or "State Defendants").

**III.    PROCEDURAL HISTORY OF THE ACTIONS**

**A.      The Federal Action**

16.      On October 15, 2021, Johnny R. Shafer filed the initial class action complaint in this action against Lightning and certain of the Defendants in the United States District Court for the District of Colorado.  ECF 1.

17.      On December 14, 2021, the Federal Plaintiffs moved for appointment as lead plaintiffs and for approval of Robbins Geller and Johnson Fistel as lead counsel, pursuant to 15 U.S.C. §78u-4(a)(3)(B) of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  ECF 30.

18.      On December 17, 2021, the Court consolidated a related case, *Cohen v. Lightning eMotors*, No. 21-cv-3215-STV (D. Colo.).  ECF 36.

- 9 -

19.     Five other separate groups or individuals also sought appointment as lead plaintiff.  On April 22, 2022, following briefing by the various movants, the Court concluded that Federal Plaintiffs possessed the largest financial interest in the case, and that they had adequately demonstrated they met Rule 23(a)'s typicality and adequacy requirements, and appointed Federal Plaintiffs as Lead Plaintiffs.  The Court also appointed Lead Counsel, finding that they could appropriately serve as class counsel under Rule 23(g).  ECF 48.

20.     After being appointed as Lead Plaintiffs, the Federal Plaintiffs continued their extensive investigation into the putative class's claims, which consisted of, *inter alia*: (i) identifying, locating, and interviewing former Lightning employees and other knowledgeable witnesses likely to have information pertinent to the claims alleged; (ii) researching the Defendants, the GigCapital Global business model, and the history of the GigCapital Defendants' other SPAC ventures; (iii) thorough review and analysis of Lightning's and GigCapital3's public disclosures, including: (a) transcripts of Lightning's quarterly conference calls held to discuss the Company's financial results and other presentations made by top management at investor conferences; (b) Lightning's and GigCapital3's periodic filings with the SEC, including Forms 10-K filed annually, and Forms 10-Q filed quarterly; (c) GigCapital3's public offering documents filed with the SEC; (d) GigCapital3's filings with the SEC concerning the proposed Business Combination; and (e) records reflecting the Defendants' and other Company insiders' trades involving Lightning Securities in Form 4s filed with the SEC; and (iv) an examination of industry and Company stock price reaction to Defendants' alleged misstatements and corrective disclosures,

including detailed reports discussing Lightning and its public disclosures issued by industry analysts.

21.     On May 20, 2022, based upon the findings of their extensive investigation, the Federal Plaintiffs filed the Consolidated Complaint for Violation of the Federal Securities Laws (the "Federal Complaint").   ECF 52.   The Federal Plaintiffs alleged claims for violations of:

(a)     Sections 11 and 15 of the Securities Act, on behalf of themselves and other stockholders of Lightning eMotors, who purchased or otherwise acquired publicly traded securities issued pursuant to GigCapital3's Form S-1 Registration Statement declared effective on May 5, 2020 with the SEC, as amended by Post-Effective Amendment No. 1, filed on May 13, 2020;

(b)     Sections 14(a) and 20(a) of the Exchange Act, on behalf of themselves and other stockholders of GigCapital3 as of the March 15, 2021 record date (the "Record Date") that were entitled to vote on the Business Combination to acquire Lightning Systems; and

(c)     Sections 10(b) and 20(a) of the Exchange Act, on behalf of themselves and all other persons that purchased or otherwise acquired Lightning eMotors Securities during the period from May 18, 2020 through August 16, 2021, inclusive, and were damaged thereby.

22.     The Federal Complaint alleged that Defendants violated the securities laws by making materially false and misleading statements and omissions pertaining to Lightning and GigCapital3.  Specifically, the Federal Complaint alleged that Defendants violated the

- 11 -

Securities Act and the Exchange Act by conducting a scheme to defraud, including by making material misrepresentations and omissions to investors in GigCapital3 and Lightning regarding GigCapital3's IPO, the Business Combination, and Lightning eMotors' operations in the first and second quarters of 2021.

23.     The Federal Complaint alleged that the offering documents for GigCapital3's May 18, 2020 initial public offering contained false and misleading statements about its purported commitment to its "Mentor-Investor" business strategy, in violation of §§11 and 15 of Securities Act.

24.     The Federal Complaint also alleged violations of §§14(a) and 20(a) of the Exchange Act resulting from false and misleading statements about the "Mentor-Investor" strategy, as well as Lightning's ability to scale its operations, supply chain strength, and revenue prospects, made by the Gig Defendants in soliciting proxies from GigCapital3 stockholders to gain their approval for the Business Combination with Lightning.

25.     Finally, the Federal Complaint alleged that the foregoing actions, along with certain Defendants' continued issuance of false and misleading public statements to Lightning investors regarding Lightning's operations, ability to scale, and supply chain in the first and second quarters of 2021, violated §§10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

26.     The Federal Complaint alleged that as a result of Defendants' alleged misrepresentations and omissions, the prices of Lightning Securities were artificially inflated during the Class Period.  Then, at the end of the Class Period, Lightning announced that it was nowhere close to being on track to produce the 500 electric vehicles for 2021 it had

promised and that it was withdrawing its prior financial guidance.  Additionally, without any explanation, Lightning stated that GigCapital3's board appointees (defendants Katz, Dinu, and Miotto) would not be running for re-election to the Lightning board, abandoning GigCapital3's purported "Mentor-Investor" strategy.  The Federal Complaint alleged that as a result, the artificial inflation left the Lightning Securities' prices and the prices dropped significantly, damaging the Federal Class Members.

27.    On July 13, 2022, Defendants filed motions to dismiss the Federal Complaint in its entirety.  ECFs 69, 72.

28.    Federal Plaintiffs filed their omnibus opposition to the motions to dismiss on August 17, 2022.  ECF 76.  Defendants filed their replies in support of their motions to dismiss on September 7, 2022.  ECFs 78, 80.  On January 10, 2023, Federal Plaintiffs filed a notice of supplemental authority notifying the Court of an order in a related state action denying certain Defendants' motion to dismiss.  ECF 88.

29.    On February 21, 2023, Federal Plaintiffs and Defendants jointly moved to stay the case while the parties engaged in mediation.  ECF 91.  The same day, Magistrate Judge Kristen Mix granted the stay and denied Defendants' motions to dismiss without prejudice to refiling should mediation not succeed.  ECF 93.  Litigation continued when the global mediation did not result in a settlement.  ECF 98.

30.    On June 8, 2023, as part of their ongoing investigation into the Federal claims, Federal Plaintiffs sent a letter to the Delaware Court of Chancery in a related state action requesting public access to an unredacted copy of the complaint and certain documents that were filed under seal.  *See Uvaydov v. Fenwick-Smith*, No. 2023-0137.  In

response, on June 15, 2023, certain of the defendants in that action filed a Motion for Continued Confidential Treatment of the requested materials. *Id.*, ECF 91949649. Federal Plaintiffs opposed the motion on June 22, 2023, arguing that the redactions were impermissible under Delaware Court of Chancery Rule 5.1. *Id.*, ECF 91987113. Additional motions were filed, requesting and providing replies and sur-replies. *Id.*, ECF 92001133, 92025655. Ultimately, the court maintained the confidentiality of some materials and ordered other information to be unsealed. *Id.*, ECF 92159488.

31.  On June 14, 2023, the Gig Defendants and Lightning Defendants each re-filed their motions to dismiss the Federal Complaint. ECFs 99, 101. Federal Plaintiffs filed an omnibus opposition to both motions on July 5, 2023. ECF 104. Those motions were fully briefed by July 19, 2023. ECFs 105, 107.

32.  On December 15, 2023, the District Court of Larimer County, Colorado granted the request of Lightning creditor Cupola Infrastructure Income Fund, LLLP, to initiate receivership proceedings against Lightning eMotors, Inc. and Lightning Systems, Inc., and appoint Cordes & Company, LLP as the Receiver. *Cupola Infrastructure Income Fund, LLLP v. Lightning eMotors, Inc.*, No. 2023CV31015 (Larimer Cnty. Dist. Ct.). The order had immediate effect, and all of the Receivership property (*i.e.*, substantially all of Lightning's property) was transferred into the control of the Receiver. *Id.*

33.  On December 18, 2023, Lead Counsel, on behalf of Federal Plaintiffs, engaged experienced bankruptcy counsel, Michael S. Etkin of Lowenstein Sandler LLP, to assist in evaluating the impact of the receivership proceedings on the Federal Class's

- 14 -

claims, as well as what steps were required to ensure the preservation of documents and other information needed for discovery.

34.    On February 6, 2024, the Receiver notified Lead Counsel that it had entered into an asset purchase agreement to sell substantially all of Lightning's assets to GERCO LLC for a purchase price of $12,600,000.  Plaintiffs' Counsel reviewed the asset purchase agreement and discussed plans for preservation and potential production of books and records, including electronically stored information, relevant to the Federal Action, with the Receiver and its counsel.  Plaintiffs' Counsel, with assistance of bankruptcy counsel, then negotiated language to be included in the asset purchase agreement to ensure the preservation of material relevant to the Federal Action.

35.    On February 16, 2024, an order was entered in *Cupola* approving the sale to GERCO, and Lightning ceased all operations.

36.    On February 20, 2024, Magistrate Judge Kathryn Starnella issued a Recommendation that the motions to dismiss be granted and Federal Plaintiffs' claims be dismissed without prejudice (the "Recommendation").  ECF 111.

37.    On February 23, 2024, with Lightning no longer an operating entity, Federal Plaintiffs filed a new challenge in Delaware Court of Chancery to the redactions in the *Uvaydov* complaint, as part of the court's prior rationale for maintaining confidentiality of certain information no longer applied.  Defendants moved for continued confidential treatment on March 1, 2024.  On March 8, 2024, Federal Plaintiffs opposed Defendants' motion.  Further letter briefing in connection with the challenge continued through March 14, 2024.

38.    On March 5, 2024, Federal Plaintiffs filed an objection to the Recommendation, arguing that the Recommendation: (i) failed to consider all of the alleged supply chain statements; (ii) improperly discounted confidential witness statements; (iii) wrongly credited boilerplate "risk warnings" as adequately insulating Defendants' misleading statements; (iv) incorrectly considered materials outside of the Federal Complaint for the truth of the matters asserted therein; and (v) ignored evidence that Katz, Dinu, and Miotto intended to leave Lightning's board well before it was announced.  ECF 114.  On March 26, 2024, this Court adopted the Recommendation over Federal Plaintiffs' objection, dismissing the Federal Complaint without prejudice and allowing Federal Plaintiffs an opportunity to seek leave to amend their claims.  ECF 118.

39.    Thereafter, Lead Counsel carefully analyzed the MTD Order, identified all areas of the Federal Complaint where Lead Counsel believed that additional relevant facts could be pled or potentially developed after further investigative effort, and immediately renewed their investigation on behalf of Federal Plaintiffs.  This investigation included, *inter alia*: (i) reviewing all of Lightning's SEC filings subsequent to the filing of the Federal Complaint; (ii) reviewing and analyzing the receivership filings; (iii) working with investigators to research and interview additional former employee witnesses; (iv) identifying and analyzing filings in subsequent litigation that Lightning was involved in with suppliers relating to the underlying events and supply chain issues alleged in the Federal Complaint; and (v) reviewing and analyzing publicly available media articles and financial analyst reports to glean additional facts supporting Federal Plaintiffs' claims.

40.     On April 11, 2024 and May 10, 2024, Federal Plaintiffs filed notices informing Defendants and the Court of their intent to seek to amend the Federal Complaint.  ECFs 120-121.  Lead Counsel, on behalf of Federal Plaintiffs, largely completed an initial draft of a first amended consolidated complaint containing the numerous additional factual allegations obtained through Lead Counsel's renewed investigation that further substantiated Federal Plaintiffs' claims.  However, this Settlement was reached prior to Federal Plaintiffs moving for leave to file that amendment.

**B.      The State Action**

41.     On August 4, 2021, State Plaintiff filed a class action complaint in the Court of Chancery of Delaware.  State Action, ECF 87951212 (the "State Complaint").

42.     The State Complaint alleges that certain Defendants impaired GigCapital3 stockholders' redemption rights, including by issuing false proxy solicitation materials containing inflated valuations of Lightning and knowingly false revenue growth projections, among other misrepresentations and omissions.  The State Action asserts Delaware breach of fiduciary duty and unjust enrichment claims on behalf of holders of GigCapital3 common stock during the time period from the Record Date (March 15, 2021) through the Closing Date (May 6, 2021).

43.     The State Action Defendants filed a motion to dismiss the State Complaint on August 31, 2021, and their opening brief on October 19, 2021.  *Id.*, ECFs 88068559, 88280429.  On December 3, 2021, State Plaintiff filed his opposition brief and, on January 13, 2022, the State Action Defendants filed their reply.  *Id.*, ECFs 88463726, 88610306.  On February 25, 2022, State Plaintiff filed a motion requesting a sur-reply.  *See id.*, ECFs

- 17 -

88794848, 88803249, 88810342. Oral argument was held on the motion on September 23, 2022. *Id.*, ECF 89823247. On January 4, 2023, State Action Defendants' motion to dismiss was denied. *Id.*, ECF 90514255.

44. The State Action Defendants answered the State Complaint on January 18, 2023, denying all material allegations and asserting multiple defenses. *Id.*, ECF 90657394. Fact discovery commenced shortly thereafter. The State Counsel received and reviewed over 7,600 documents, comprising over 55,000 pages, produced by State Action Defendants in discovery, as well as confidential internal documents and discovery responses from Defendants.

45. In addition to reviewing the discovery material, State Counsel worked with financial advisors to model potential damages, and negotiated a scheduling order to govern the prosecution of the State Action. State Plaintiff was in the process of responding to Interrogatories served by the State Action Defendants when the parties reached an agreement in principal to settle the litigation.

C.    **Global Settlement Negotiations**

46. The Parties engaged in two rounds of mediation to resolve the Actions. The first took place during February and March 2023, when Plaintiffs and Defendants agreed to explore a global resolution of the Actions and engaged the services of David M. Murphy, Esq., a highly qualified mediator experienced in complex shareholder litigation. In connection with the mediation, the Parties exchanged confidential mediation statements, attended an in-person mediation session, and engaged in continued discussion with the

Mediator for several weeks thereafter.  However, the Parties failed to reach a global resolution at that time.

47.    In March 2024, following significant developments in the Actions and Lightning's entry into Receivership, the Parties agreed to renew settlement efforts.  After several weeks of engagement, the Mediator issued a "mediator's proposal" to settle all claims at issue for $13.35 million, subject to resolution of certain remaining non-monetary terms.  On May 1, 2024, the Mediator informed the Parties that the Mediator's proposal had been accepted.  Over the course of the next few weeks, the Parties continued to negotiate certain non-monetary terms of the Settlement, submitting certain terms to the Mediator for a binding, non-appealable decision when the Parties' negotiations reached an impasse.

48.    As negotiations of the final terms of the Settlement and related exhibits thereto were concluding, Plaintiffs' Counsel also began to draft their motion for preliminary approval of the settlement; for approval of the proposed forms of notice and proof of claim form; and for dissemination of notice.

49.    The Parties ultimately agreed to a binding Settlement Term Sheet that reflected the material terms of the Settlement, with the understanding that such terms would thereafter be embodied in the terms of a customary stipulation of settlement (and accompanying exhibits) that would be submitted to the Federal Court for its approval.

50.    On July 2, 2024, Plaintiffs filed their motion for preliminary approval, together with relevant supporting papers (including the Stipulation).  ECFs 126-127.

- 19 -

51.    On July 23, 2024, the Court granted preliminary approval and permitted providing notice to the Settlement Class.  ECF 130.  The Court also set November 19, 2024 as the date for the final Settlement Hearing.  *Id.*

**IV.    NOTICE OF THE SETTLEMENT AND SETTLEMENT HEARING HAS BEEN PROVIDED TO THE SETTLEMENT CLASS MEMBERS IN CONFORMITY WITH THE COURT'S PRELIMINARY APPROVAL ORDER**

52.    On August 13, 2024, in accordance with the Preliminary Approval Order, the Court-appointed claims administrator Gilardi & Co. LLC ("Gilardi") (ECF 130) began mailing the Notice of: (I) Proposed Settlement and Plan of Allocation; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Expenses ("Notice") and the Proof of Claim and Release form ("Proof of Claim" and, together with the Notice, the "Notice Packet") to potential Settlement Class Members.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶5-8, submitted herewith.  Additionally, pursuant to the Preliminary Approval Order, the Notice Packet was posted on the case-specific website www.LightningeMotorsSecuritiesSettlement.com.  *Id.*, ¶14.

53.    On August 20, 2024, pursuant to the Preliminary Approval Order, Gilardi caused the Summary Notice to be published both in *The Wall Street Journal* and over *Business Wire*.  *Id.*, ¶12.

54.    As of October 2, 2024, a total of 27,986 Notice Packets have been mailed or emailed by Gilardi to potential Settlement Class Members.  *Id.*, ¶11.

55.    This multi-faceted method of providing the Settlement Class notice, previously approved by the Court, is wholly appropriate because it directs notice in a "reasonable

manner to all class members who would be bound by the propos[ed] judgment." Fed. R. Civ. P. 23(e)(1).

56.    The Court-approved Notice explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit a valid and timely Proof of Claim, pursuant to the proposed Plan of Allocation included in the Notice and subject to Court approval.  Further, the Notice informs Settlement Class Members of the nature of the Actions, the reasons for settling the Actions, and the maximum attorneys' fees and expenses and awards to the Plaintiffs that will be sought.  The Notice further details: (i) the procedure and deadline for objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses and an award to the Plaintiffs; (ii) the procedure and deadline for requesting exclusion from the Settlement Class; and (iii) the date, time, and location of the Settlement Hearing.

57.    Pursuant to the Preliminary Approval Order (and as explained in the Notice), Settlement Class Members who wish to opt out of the Settlement Class must do so no later than October 18, 2024.  Any objections to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses and awards to Plaintiffs must be made no later than October 18, 2024.

58.    To date, neither Plaintiffs' Counsel nor Gilardi have received any requests for exclusion.  Murray Decl., ¶16.  Nor have any objections been filed or received.  If any objections are received, Plaintiffs' Counsel will respond to them in a reply brief, which is due on November 12, 2024.  ECF 130 at ¶28.

- 21 -

## V.     THE SETTLEMENT IS A FAVORABLE RESULT FOR THE SETTLEMENT CLASS IN LIGHT OF THE RISKS OF CONTINUING LITIGATION

59.     Based upon Plaintiffs' Counsel's investigation, coupled with our review and understanding of the claims alleged in the Actions, we believe Plaintiffs' claims have merit. Nonetheless, Plaintiffs and their counsel appreciate the significant risks of continued prosecution against Defendants, all of whom have denied liability throughout.

60.     Among the most significant litigation risks informing Plaintiffs' decision to settle the Actions were the risks of obtaining additional unfavorable rulings.  Specifically, the Federal Plaintiffs faced the risk of not being permitted to amend the Federal Complaint, or not having an amended complaint survive future motion(s) to dismiss.  Moreover, even assuming that the re-pled claims would survive dismissal, there could be no assurance that Federal Plaintiffs would prevail at class certification, summary judgment, at trial, and on appeal.  In addition to the normal risks inherent in complex securities litigation, case law surrounding application of the securities laws to SPACs is still developing, increasing the uncertainty of the Federal Plaintiffs' success at each stage of the litigation.  The State Plaintiff faced the same discovery and future motion risks as the Federal Plaintiffs. Moreover, State Plaintiff advanced a theory of recovery that would rely heavily on disputed expert testimony to determine the "true" (allegedly lower) value of Lightning Systems, Inc. before the Business Combination.  If that expert evidence was excluded at summary judgment or trial, or if the finder of fact disagreed with the expert's assessment of Lightning's true value, State Plaintiff risked recovering less or nothing at all for the putative State Class's claims.

61.    Even if Plaintiffs prevailed on any or all of their claims at trial and were awarded damages by a jury, the Plaintiffs faced the substantial risk that Defendants would file post-trial motions and/or appeal any such verdict or award.  The post-verdict appellate process, if initiated, could take years to resolve, during which time the Settlement Class would receive no compensation.  Any appeal would also create the risk of reversal, in which case the Settlement Class would receive nothing.

62.    Additionally, the Plaintiffs did not have any guarantee that a large verdict could be collected on behalf of the Settlement Class, even if Plaintiffs succeeded on the merits at all future stages of litigation, and indeed, there is sound reason to believe otherwise.  Lightning's securities have been delisted from the NYSE, its operations have ceased, and its assets have substantially all been sold through receivership proceedings.

63.    After considering the circumstances and risks the Settlement Class would face were Plaintiffs to litigate this case through additional motions to dismiss, discovery, class certification, summary judgment and trial, Plaintiffs, through their counsel and on behalf of the Settlement Class, concluded that the Settlement was in the best interests of the Settlement Class.  *See* Declarations of David P. Sarro, Kevin L. Tye, Jess Q. Williams, and Richard Delman, submitted herewith.

A.    **Risks Related to Adequately Stating a Claim in the Federal Action**

64.    Defendants' motions to dismiss the Federal Complaint and arguments communicated during the mediation previewed the arguments against liability and the affirmative defenses that Defendants would undoubtedly have raised again if Federal

- 23 -

Plaintiffs were permitted to amend the Federal Complaint, and later at summary judgment and trial should additional motion(s) to dismiss be unsuccessful.

65.     Specifically, Defendants likely would have reasserted their argument that the Federal Plaintiffs were merely alleging fraud by hindsight and that their allegations lacked the requisite particularity to satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b) and the PSLRA.  Defendants also asserted that a number of the alleged misstatements challenged by the Federal Plaintiffs were inactionable forward-looking statements, puffery, or both.  For the Federal Plaintiffs' Securities Act claims, Defendants raised defenses under the bespeaks caution doctrine, claiming that the statements concerned future intentions and were therefore not actionable.

66.     Defendants would likely reassert their arguments that the Federal Plaintiffs' allegations failed to establish a culpable state-of-mind for each of the Defendants, and that as a result, Federal Plaintiffs' Exchange Act claims failed.  Specifically, Defendants would have continued to argue that none of the Defendants were negligent in making statements concerning GigCapital3's Mentor-Investor approach, or Lightning's supply chain, production capacity, or financial projections, with respect to the Federal Plaintiffs' §14(a) claims, nor did they act with severe recklessness or knowledge, as required to prove Federal Plaintiffs' §10(b) claims.  Indeed, even if adequately pled, scienter is almost always a challenge to prove at summary judgment and trial.

67.     While we believe that we had meritorious responses to such arguments, as the Court's MTD Order made clear, Defendants also had credible arguments to advance with respect to each of these liability issues.

- 24 -

**B.**    **Risks Related to Proving Defendants' Liability: Discovery, Trial, and Post-Judgment Matters**

**1.    The Federal Action**

68.    Assuming that the Federal Plaintiffs were permitted to amend the Federal Complaint and defeat a second round of motions to dismiss, the Federal Action would have entered into discovery.

69.    Discovery in the Federal Action would almost certainly have been complicated by the fact that Lightning's operations have ceased and the Company has completed receivership proceedings.   While Lead Counsel took steps during the receivership proceedings to ensure that the Receiver would preserve information relevant to the Federal Action from Lightning's files, transfer of control of information systems always raises a risk of inadvertent deletion of information, and the Receiver did have active plans to begin deleting data it viewed as unnecessary to ongoing matters.  More, as Lightning no longer has any employees, former employees have scattered to find new employment, and no Defendant would have "control" over these witnesses – potentially complicating obtaining the witnesses' testimony for trial.  And, as in any complex civil litigation, there is no guarantee that any discovery would have resulted in sufficient evidence to prove the Federal Claims.

70.    The Federal Plaintiffs also faced substantial risk, time, and expense in obtaining certification of the Federal Class.  The Federal Action was complicated, involving multiple types of claims under the Federal securities laws and several types of securities (units, warrants, and common stock) which were available for trade at different times during the Class Period.  Although Federal Plaintiffs believe class certification of a merits class is

- 25 -

appropriate, Defendants may have credibly argued the lack of efficiency of the pre-Business Combination market for some or all of the affected securities or against the applicability of the fraud-on-the-market presumption of reliance.  If Federal Plaintiffs obtained class certification, Defendants would also almost certainly file a Rule 23(f) petition for interlocutory appeal in the Tenth Circuit, presenting at a minimum the risk of significant delay, and at worst, decertification of some or all of the class.

### 2. The State Action

71.  Because the Complaint in the State Action had survived motions to dismiss, the State Plaintiff did not face the risks that confronted the Federal Plaintiffs with respect to adequately stating a claim.  However, State Plaintiff did face considerable risk in proving State Defendants' liability and prevailing at trial and any appeal.  Briefing on State Defendants' motions to dismiss, the State Defendants' Answers to the State Complaint, the documents produced by Lightning in response to State Plaintiff's books and records request under Delaware law, and most crucially, the thousands of documents produced by State Defendants as part of discovery in the State Action provided State Plaintiff with sufficient insight regarding the risks State Plaintiff faced at summary judgment and through trial.

72.  Although State Plaintiff believed the claims asserted in the State Action are strong, State Plaintiff acknowledges that he faced substantial risk in ultimately prevailing on the claims.  State Plaintiff's ability to prevail in the State Action depended on his ability to prove that the members of the Board of GigCapital3 breached their fiduciary duties by publishing a false and misleading proxy that duped public stockholders of GigCapital3 into

- 26 -

not exercising their redemption rights.  This hinged on State Plaintiff's ability to prove that the GigCapital3 Board was aware of material facts that were not included in the proxy, or that the proxy contained material misstatements of fact.  The fact that Lightning performed poorly following the Merger does not prove any violation of any fiduciary duty by the GigCapital3 Board.

73.     In this case, State Plaintiff recognized significant risks in establishing liability. The documents produced by State Defendants in the course of discovery in the State Action, for example, provided State Defendants with strong arguments that the members of the GigCapital3 Board engaged in significant diligence concerning the financial projections of Legacy Lightning that were published in the proxy, undermining State Plaintiff's claims that the GigCapital3 Board knew such projections were inflated and unreliable.  The risk that State Plaintiff would not prevail at trial, therefore, was not remote.  Indeed, on May 31, 2024, shortly after the Parties agreed in principal to the terms of the Settlement here, Vice Chancellor Lori W. Will, who is presiding over the State Action, granted a motion to dismiss in another action challenging a de-SPAC merger on the basis that the plaintiff there had not alleged sufficient facts that the board of the SPAC knew material facts that were not disclosed in the proxy, and that merely pointing to poor post-merger performance does not establish a breach of fiduciary duty.  *In re Hennessy Capital Acquisition Corp. IV Stockholder Litig.*, 318 A.3d 306, 310 (2024) ("Poor performance is not, however, indicative of a breach of fiduciary duty.  Conflicts are not a cause of action.").  State Plaintiff, therefore, faced a not insubstantial risk that, despite prevailing on a motion to dismiss, he

would not be able to present evidence establishing that the GigCapital3 Board actually knew that the proxy contained false statements or material admissions.

### 3.    Both Actions

74.    As discussed above, the Actions also involved substantial risks that the State Plaintiff and Federal Plaintiffs would be unable to prevail at summary judgment or at their respective trials – and even a plaintiffs' verdict in either or both trials would have almost certainly been subject to further attacks on post-trial motions and appeals. The Settlement, by contrast, offers a meaningful $13.35 million recovery now, rather than the highly uncertain prospect of a possible larger (possibly uncollectable) judgment many years down the road.

75.    It should be stressed that even if Plaintiffs were to "run the table" on liability, and also able to prevail on all relevant causation and damages issues so as to obtain a nominally large damages verdict, this is a case where ultimate collectability is far from assured. To the contrary, as previously explained, Lightning's operations have ceased; its assets have substantially all been sold through receivership proceedings; and Lightning securities have been delisted from the NYSE. In short, while Plaintiffs cannot rule out the possibility that they might have ultimately succeeded in winning a larger judgment against Defendants, there was also no assurance that there would have been assets to collect against following years of otherwise successful litigation. Indeed, Lightning currently has no assets other than an insurance policy with which to pay a judgment – a wasting policy also being used to cover Defendants' litigation costs in both Actions.

- 28 -

76.     The $13.35 million Settlement is a very good result, surpassing the $12.4 million median settlement amount for cases settled in the Tenth Circuit between 2014 and 2023.  *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2023 Review and Analysis*, at 20, Appendix 3 (Cornerstone Research 2024) ("Cornerstone Report").[7]

77.     In sum, the $13.35 million Settlement is a significant "bird in the hand" in a case involving significant liability and collectability risks.

## VI.    THE PLAN OF ALLOCATION

78.     Pursuant to the Preliminary Approval Order (ECF 130, ¶17), and as set forth in the Notice, all eligible Settlement Class Members who wish to participate in the distribution of the Net Settlement Fund (*i.e.*, the Settlement Fund less (i) any Taxes and Tax Expenses, (ii) any Notice and Administration Costs, and (iii) any attorneys' fees and expenses awarded by the Court to Plaintiffs' Counsel and Plaintiffs) must submit a valid Proof of Claim (together with all required supporting information and documentation) to Gilardi (the Court-approved Claims Administrator) so that it is postmarked on or received no later than November 11, 2024.

---

[7]     Available at www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf.

79.     If approved by the Court, the proposed Plan of Allocation set forth in the Notice and on the settlement website will govern how the Net Settlement Fund will be distributed among Authorized Claimants.[8]

80.     The Plan is designed to equitably distribute the net Settlement proceeds among Settlement Class Members who suffered economic losses resulting from the federal securities law violations alleged in the Federal Action and the violations of Delaware law alleged in the State Action.

81.     Pursuant to the Settlement, fifty percent (50%) of the Net Settlement Fund shall be allocated to the Federal Class, and fifty percent (50%) shall be allocated to the State Class.  Each Authorized Claimant that is a member of the Federal Class shall be allocated a *pro rata* share of the 50% of the Net Settlement Fund based on his, her, or its Recognized Claim compared to the total Recognized Claims of all accepted claimants. Each Authorized Claimant that is a member of the State Class shall be allocated a *pro rata* share of the 50% of the Net Settlement Fund based on his, her, or its Recognized Claim compared to the total Recognized Claims of all accepted claimants.  Any member of the State Class who is also a member of the Federal Class shall not participate in any distribution to members of the Federal Class to the extent that his, her, or its distribution as a member of the State Class exceeds his, her, or its *pro rata* distribution as a member of the Federal Class.  The payment to any member of the State Class shall be the greater of

---

[8]   As defined in the Stipulation, an "Authorized Claimant" means a Settlement Class Member who submits a timely and valid Proof of Claim to the Claims Administrator.  ECF 127 at 9.

the *pro rata* amount to which the State Class member would be entitled as either: (a) a member of the State Class; or (b) a member of the Federal Class.

82. The Plan provides for the calculation of a "State Class Recognized Loss Amount" for those claimants that held ZEV common stock[9] as of the March 15, 2021 Record Date, and continued to hold that stock through at least market-close on the May 6, 2021 Closing Date. A claimant's State Class Recognized Loss Amount will depend on, among other things, when their shares of ZEV common stock were purchased and/or sold during the Class Period, whether and for how long the shares were held, and the value of the ZEV common stock when they were held or sold.

83. The Plan provides for the calculation of a "Federal Class Recognized Loss Amount" for each purchase or acquisition of a ZEV Unit, ZEV common stock[10] or ZEV warrant[11] during the Class Period, which is the maximum of: (a) the Section 10(b)

---

[9] For purposes of the State Class calculations, "ZEV common stock" is defined as: (i) common stock of GigCapital3 (GIK); (ii) the common stock portion of GigCapital3 Units (GIK.U); and (iii) Lightning eMotors common stock (ZEV).

[10] For purposes of the Federal Class calculations, "ZEV common stock" will refer to shares of Lightning eMotors common stock (ZEV), GigCapital3 common stock (GIK), and the common stock portion of GigCapital3 Units (GIK.U). Each Unit purchased before July 2, 2020 will be treated as a share of GigCapital3 common stock where the transaction price will be calculated as the GigCapital3 Unit price per Unit multiplied by 0.94. Each Unit purchased on or after July 2, 2020 will be treated as a share of GigCapital3 common stock where the transaction price per share will be calculated as the GigCapital3 Unit price per Unit multiplied by the ratio of the closing stock price to the closing Unit price. If the closing prices for Units and common stock are not available on the transaction date, the most recent date with available prices will be used.

[11] For purposes of the Federal Class calculations, "ZEV warrants" will refer to Lightning eMotors warrants (ZEV.WS), GigCapital3 warrants (GIK.WS), and the warrant portion of GigCapital3 Units. Each Unit purchased before July 2, 2020 will be treated as 0.75 of a GigCapital3 warrant and the transaction price per warrant will be the GigCapital3 Unit price

Recognized Loss Amount, if any; (b) the Section 11 Recognized Loss Amount, if any; and (c) the Section 14(a) Recognized Loss Amount, if any.  A claimant's Federal Class Recognized Loss Amount will depend on, among other things, when their ZEV common stock and/or ZEV warrants were purchased and/or sold during the Class Period, whether and how long the ZEV common stock and/or ZEV warrants were held, and the value of the ZEV common stock and/or ZEV warrants when they were held or sold.

84.    The Recognized Loss formulas are tied to Plaintiffs' theories of liability and damages.  *See* ECF 130 at 37-44.  In developing the Plan of Allocation, Plaintiffs' damages expert considered – consistent with Plaintiffs' damages theories under the Securities Act, the Exchange Act, and Delaware law – the amount of artificial inflation allegedly present in Lightning Securities throughout the Class Period that was purportedly caused by the alleged misstatements, omissions, and fraudulent scheme (for the Exchange Act claims); the difference between the value paid for each eligible share and the Redemption price (for the State claims); and any applicable statutory formula (for the Securities Act claims).  *Id.* Gilardi will calculate claimants' Recognized Losses using the transactional information provided by claimants in their claim forms.  Gilardi will then determine each eligible claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's total "Recognized Claim" compared to the aggregate Recognized Claims of all eligible claimants. In sum, the proposed Plan of Allocation, developed in consultation with Plaintiffs' consulting

per Unit multiplied by 0.08.  Each Unit purchased on or after July 2, 2020 will be treated as 0.75 of a GigCapital3 warrant where the transaction price per warrant will be calculated as the GigCapital3 Unit price multiplied by the ratio of the closing warrant price to the closing Unit price.  If the closing prices for Units and warrants are not available on the transaction date, the most recent date with available prices will be used.

expert, is designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants.

85.    No objections to the Plan of Allocation have been filed to date.

86.    Accordingly, Plaintiffs' Counsel respectfully submit that the proposed Plan of Allocation is fair and reasonable and should be approved.

## VII.   PLAINTIFFS' COMPLIANCE WITH THE PRELIMINARY APPROVAL ORDER

87.    The Preliminary Approval Order directed that Notice be disseminated to the Settlement Class, set the deadline for Settlement Class Members to submit requests for exclusion from the Settlement Class or objections to the Settlement, the Plan of Allocation and/or the Fee and Expense Application by October 18, 2024, and set a Settlement Hearing date of November 19, 2024.

88.    The Court also authorized Plaintiffs' Counsel to retain Gilardi as the Claims Administrator in the Actions.  ECF 130.

89.    The Preliminary Approval Order required the mailing of the Court-approved Notice Packet to potential Settlement Class Members within 21 calendar days after the entry of the Preliminary Approval Order (*i.e.*, by August 13, 2024, the "Notice Date"), posting of the Notice and Proof of Claim on the website designated for the Actions, www.LightningeMotorsSecuritiesSettlement.com, on or before the Notice Date, and publishing of the Summary Notice once in the national edition of *The Wall Street Journal* and over a national newswire service no later than seven (7) calendar days after the Notice Date (*i.e.,* by August 20, 2024).

90.     A description of the terms of the Settlement and the proposed Plan of Allocation are set forth in the Notice, which also provides potential Settlement Class Members with, among other things, a description of their right to opt out of the Settlement Class or object to any aspect of the Settlement, the Plan of Allocation, and/or Plaintiffs' Counsel's request for an award of attorneys' fees and expenses, and an award to Plaintiffs, and the manner and deadline for submitting a Proof of Claim in order to be eligible to receive a payment from the Settlement.  The Notice informs Settlement Class Members of Plaintiffs' Counsel's intention to apply for an award of attorneys' fees in an amount not to exceed 33-1/3% of the Settlement Fund (which amount includes interest), for payment of expenses paid or incurred in connection with the prosecution and resolution of the Actions in an amount not to exceed $225,000, and for payments to the Plaintiffs in connection with their representation of the Settlement Class in an amount not to exceed $10,000, in the aggregate.

91.     As set forth in the Murray Declaration, beginning on August 13, 2024, Gilardi disseminated Notice Packets to potential Settlement Class Members and nominees by first-class mail.  Murray Decl., ¶5.  Gilardi also electronically delivered Notice Packets to registered electronic filers.  *Id.*, ¶7.  As of October 2, 2024, a total of 27,986 Notice Packets have been mailed or emailed to potential Settlement Class Members and their nominees. *Id.*, ¶11.

92.     On August 20, 2024, in accordance with the deadline set by the Preliminary Approval Order, Gilardi caused the Summary Notice to be published in *The Wall Street Journal* and to be transmitted over *Business Wire*. *Id.*, ¶12.

- 34 -

93.    The Court-ordered deadline for Settlement Class Members to file objections to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application is October 18, 2024.  To date, no objections have been received.  The deadline to request exclusion from the Settlement Class is also October 18, 2024.  To date, Gilardi has received zero requests for exclusion from the Settlement Class.  *Id.*, ¶16.

## VIII.    PLAINTIFFS' COUNSEL'S APPLICATION FOR ATTORNEYS' FEES IS FAIR AND REASONABLE

94.    Based on, among other things, the favorable result achieved in the face of considerable litigation risk, the time expended on behalf of the Settlement Class, and the fully contingent nature of the representation, we also respectfully submit that Plaintiffs' Counsel's request for an award of attorneys' fees equal to 33-1/3% of the Settlement Fund is fair and reasonable, and should be approved.

95.    The legal authorities supporting the requested fees and expenses are set forth in the accompanying Fee Memorandum.  The primary factual bases for the requested fees and expenses under the Tenth Circuit's factors are briefly summarized below.

### A.    The Amount Involved and the Results Obtained

96.    The requested attorneys' fee is reasonable given the significant, all-cash $13.35 million recovery obtained by Plaintiffs' Counsel for the Settlement Class. Considering that the combined damages in the Actions are estimated by Lead Counsel's damage expert to be about $100 million, this recovery constitutes greater than 13.3% of potentially recoverable damages.  This is more than two and one-half times the 5.3% median recovery in securities cases settled between 2014 and 2023 with damages between $75 and 149 million.  *See* Cornerstone Report, at 6, Fig. 5.  It also surpasses the

- 35 -

$12.4 million median settlement amount for cases settled in the Tenth Circuit during that same period.  *See id.* at 20, Appendix 3.  Notably, if Defendants were to prevail on any of their expert's damage arguments, the Settlement Class's total recoverable damages would likely be reduced and, as such, the percentage of damages the Settlement Amount represents could be viewed as even greater.

**B.  Awards in Similar Cases**

97.  As further detailed in the Fee Memorandum, the requested fee award is also consistent with customary attorneys' fees awarded in connection with other similar class action settlements in this District.

**C.  The Considerable Time and Labor Expended by Plaintiffs' Counsel**

98.  As detailed above, Plaintiffs' Counsel expended significant time and effort litigating the Actions.  The Actions were settled only after Plaintiffs' Counsel, among other things: (i) oversaw and participated in the extensive initial investigations, including interviews of numerous non-party witnesses; (ii) identified, retained, and consulted with experts in, among other things, class damages; (iii) briefed multiple comprehensive motions to dismiss and, in the Federal Action, objections; (iv) conducted an extensive follow on investigation in support of a proposed second amended complaint in the Federal Action; (v) litigated multiple motions to lift the seal in a derivative action pending in Delaware (*Uvaydov v. Fenwick-Smith*, No. 2023-0137-LWW (Del. Ch.)) in an effort to utilize nonpublic allegations set forth in a related, redacted complaint; (vi) undertook extensive discovery in the State Action, including analyzing more than 55,000 pages of documents; (vii) analyzed filings in other actions brought by and against Defendants and in Lightning's Receivership

proceedings; (viii) reviewed confidential Lightning documents provided by Defendants in connection with mediation efforts; (ix) engaged in vigorous and protracted settlement negotiations with Defendants' Counsel; (x) negotiated and drafted a binding memorandum of understanding; (xi) negotiated and drafted the comprehensive Stipulation and all related exhibits; (xii) worked with their expert to develop a fair and appropriate Plan of Allocation; and (xiii) secured preliminary approval of the Settlement.

99.     Moreover, the requested fee would also be reasonable under a lodestar cross-check.  Plaintiffs' Counsel have devoted a combined total of over 4,600 hours of work on this matter, with a combined total lodestar value of $3,822,126.00.[12]  *See* accompanying Declaration of Hillary B. Stakem Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."); Declaration of Michael I. Fistel, Jr. Filed on Behalf of Johnson Fistel, LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Johnson Fistel Decl."); Affidavit of Michael J. Barry Filed on Behalf of Grant & Eisenhofer, P.A. in Support of Application for Award of Attorneys' Fees and Expenses ("G&E Aff."); Affidavit of Michael Klausner in Support of Application for Award of Attorneys' Fees and Expenses ("Klausner Aff."); and Affidavit of Michele S. Carino Filed on Behalf of Greenwich Legal Associates LLC in Support of Application for Award of Attorneys' Fees and Expenses.  These reports were prepared from contemporaneous time records regularly prepared and maintained by

---

[12]   These total hour and total lodestar figures include time incurred through September 10, 2024.  The additional time that Plaintiffs' Counsel have spent since that date – as well as all the additional time that Plaintiffs' Counsel expect to incur in connection with supervising the administration of the Settlement going forward – are all therefore excluded from counsel's time and lodestar calculations and no additional compensation will be sought for this time.

Plaintiffs' Counsel. The hourly rates for the attorneys and professional support staff included in the schedule are commensurate with the hourly rates submitted by our respective firms to Courts in connection with fee applications that we have submitted (and that Courts have approved) in other fully-contingent securities class action cases.

100. Thus, the requested 33-1/3% fee would equate to a modest 1.16 multiple on the "lodestar" value of $3,822,126.00 for the more than 4,600 hours that Plaintiffs' Counsel have dedicated to the investigation, prosecution, and resolution of the claims against Defendants.

**D.      The Novelty and Difficulty of the Legal and Factual Questions**

101. As set forth in §V, above, the Actions involved novel and difficult legal and factual questions, as well as significant risks going forward with respect to pleading, class certification, summary judgment, and expert testimony regarding causation and damages, among many others.

102. Moreover, the results achieved were solely due to Plaintiffs' Counsel's efforts. For example, this was decidedly not a case where Plaintiffs' Counsel were able to "piggyback" on the work of a prior government investigation – rather, counsel had to build their case from the ground up.

**E.      The Skill Required and the Experience, Reputation, and Ability
of Counsel**

103. The skill required and the experience, reputation, and ability of the attorneys also support the requested fee award. Plaintiffs' Counsel are among the nation's preeminent law firms in securities litigation and for many years have successfully litigated

securities actions on behalf of large classes of investors.  *See* Robbins Geller Decl., Ex. E;

Johnson Fistel Decl., Ex. E; and G&E Aff., Ex. C (attaching firm resumes).

104.    The Settlement of $13.35 million resulted from Plaintiffs' Counsel's litigation

efforts and contentious, arms'-length settlement negotiations, as detailed herein.  The

Settlement is a favorable recovery to the Settlement Class, especially in light of the

dismissal of the Federal Claims without prejudice, the multiple remaining litigation hurdles,

and the current (non-existent) financial status of Lightning.  As a result of this Settlement,

Settlement Class Members potentially will be eligible to benefit and receive some

compensation for their losses and avoid the substantial risk of recovering nothing in the

absence of this Settlement.

105.    The quality of opposing counsel is also relevant in evaluating the quality of

services rendered by Plaintiffs' Counsel.  Here, defense counsel, DLA Piper LLP (US) and

Freshfields Bruckhaus Deringer US LLP, are recognized as two of the preeminent defense

firms in the securities class action field.

**F.      The Contingent Nature of the Fee Further Supports Plaintiffs'
         Counsel's Request**

106.    Each of the Actions was undertaken by Lead Counsel or State Counsel,

respectively, on a wholly contingent basis.  From the outset, Plaintiffs' Counsel understood

that they were embarking on complex, expensive, and lengthy litigation with no guarantee

of ever being compensated for the investment of time and money the Actions would

require.  In undertaking that responsibility, Plaintiffs' Counsel were obligated to ensure that

sufficient resources were dedicated to the prosecution of the Actions and that funds were

available to compensate staff and pay the considerable expenses that cases such as this

entail.    Indeed, because of the nature of a contingent practice where cases are predominantly complex and last several years, not only do contingent-litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation.  With a lag time of many years for these cases to typically conclude, the financial burden on contingent counsel is far greater than that on a firm which is paid on an ongoing basis.  Here, Plaintiffs' Counsel have received no compensation (or even any payment of their litigation expenses) to date in prosecuting the Actions for the benefit of the Settlement Class.

107.    Plaintiffs' Counsel also bore the substantial risk that no recovery would be achieved.  In this regard, we further note that there have been many hard-fought lawsuits where, because of discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by plaintiffs' counsel produced no recovery, and hence no attorneys' fees whatsoever.  Notably, the Federal Complaint was dismissed (albeit with leave to move to replead) by the Court, and there were no assurances that the Court would not dismiss another amended complaint (and this time with prejudice).

108.    Accordingly, we submit that Plaintiffs' Counsel's hard work and success in achieving this highly favorable result in the face of significant challenges and risks merits the requested 33-1/3% fee.

G.    **The Preclusion of Other Employment by Plaintiffs' Counsel
and Undesirability of the Actions**

109.    As set forth in the Fee Memorandum, the requested fee award is also supported by preclusion of other employment and undesirability factors due to the financial and time burdens on Plaintiffs' Counsel.

H.    **The Reaction of the Settlement Class**

110.    As noted above, the deadline set by the Court for Settlement Class Members to object to the attorneys' fees and expenses has not yet passed; however, to date, Plaintiffs' Counsel are not aware of any objections. If any objections are timely received, Plaintiffs' Counsel will address them in their reply papers to be filed with the Court on November 12, 2024.

IX.    **PLAINTIFFS' COUNSEL'S REQUEST FOR PAYMENT OF LITIGATION EXPENSES IS FAIR AND REASONABLE**

111.    Plaintiffs' Counsel also seek payment for their reasonable and necessary litigation expenses in the amount of $225,000 (plus interest on such amount at the same rate as has been earned by the Settlement Fund).[13] The expenses for which payment is sought are reflected in the books and records of Plaintiffs' Counsel which are maintained in the ordinary course of business, and prepared from expense vouchers, invoices, checking account ledgers, and similar documents that are accurate records of the expenses incurred. *See* Robbins Geller Decl., Ex. B; Johnson Fistel Decl., Ex. B; and G&E Aff., Ex. B.

---

[13]    Plaintiffs' Counsel's actual expenses are $334,981.92, but they seek only the $225,000 maximum set forth in the Notice.

112.    All of the expenses for which payment is sought were reasonably necessary to the prosecution and resolution of the Actions, and are all of a type that counsel typically incur in securities litigation of this type (and that, in our experience, courts award in class action cases).  The largest single expense items for which reimbursement is sought are summarized below:

(a)    ***Expert Fees***:

(i)    Lead Counsel retained an experienced forensic economics and damages expert, Matthew Cain, Ph.D., to analyze and advise on issues of causation and damages.  Dr. Cain worked with Lead Counsel to assist in: (i) developing the claims asserted; (ii) assessing the strengths and weaknesses of the Federal Plaintiffs' claims and potential causation and damages arguments; and (iii) estimating class-wide damages for settlement negotiation purposes.  Plaintiffs' Counsel also retained Dr. Cain to assist with developing the Plan of Allocation.  Lead Counsel also retained expert bankruptcy counsel, Michael Etkin, Esq., of Lowenstein Sandler LLP, to assist Lead Counsel in navigating Lightning's receivership, evaluating the impact of the receivership on the Federal Claims and on Lightning's preservation obligations, and to ensure that the Federal Plaintiffs and putative class members were protected in the context of the receivership.

(ii)    State Counsel retained the services of The Michel Shaked Group (MSG), in Boston, Massachusetts, for purposes of estimating class-wide damages for settlement negotiation purposes.  MSG was founded by Professors Alan Michel and Israel Shaked, Professors Emeritus of Finance at the Questrom School of Business at Boston University, and provides expert testimony, corporate finance and business

- 42 -

consulting services to law firms, government entities and corporations worldwide. MSG's fees totaled $12,800.71.

(b)    *Mediation Fees*: Plaintiffs' Counsel were responsible for one-half of the Mediator's fees, which included: the Mediator's review of the Parties' mediation submissions, a full-day mediation session; and related telephonic and written communications following the mediation.

(c)    *Computerized Legal Research*: Plaintiffs' Counsel utilized digital research services (such as Westlaw) in connection with their legal and factual research, which was used both in the course of developing the facts underlying the claims asserted and in researching relevant law relevant to the motions brought in the respective Actions during the last three years.

113.    The remaining expenses relate primarily to filing fees, transcript fees, travel, and postage/delivery service fees.

114.    The Notice advises potential Settlement Class Members that Plaintiffs' Counsel would seek an award of expenses not to exceed $225,000 – which is significantly less than Plaintiffs' Counsel's expenses. As noted above, there have also been no objections to the expense request.

## X.    PLAINTIFFS' REQUEST FOR AN AWARD FOR THEIR WORK ON BEHALF OF THE SETTLEMENT CLASS

115.    The Notice also informed Settlement Class Members that Plaintiffs may apply for "up to $10,000 in the aggregate for their time and expenses incurred in representing the Settlement Class." *See* Murray Decl., Ex. A (Notice at 11).

116.    As set forth in their respective Declarations, each individual Federal Plaintiff (David P. Sarro, Kevin L. Tye, and Jess Q. Williams) spent time reviewing pleadings, reading other litigation and mediation materials, and communicating with their counsel in order to ensure the progression of the litigation.   Federal Plaintiffs are sophisticated investors who have actively overseen the prosecution of the Federal Action for nearly three years and they understand and have executed their fiduciary duty to act in the best interest of the Settlement Class.  We can also attest to our respective clients' willingness to step forward here to participate in the relevant Actions for the benefit of the Settlement Class.

117.    Each of the three Federal Plaintiffs requests an award of $2,500 for the time and effort he spent on this matter.  For the reasons set forth in the accompanying Fee Memorandum, we respectfully submit that the requested $2,500 awards ($7,500 in the aggregate) are modest, and fully merited based on Federal Plaintiffs' work here for the benefit of the Settlement Class.  We also note that no objections to these $2,500 award requests have been submitted.

## XI.    CONCLUSION

118.    For the reasons detailed above, we respectfully request that the Court: (i) grant final approval of the Settlement and Plan of Allocation and enter the Parties' agreed form of Final Judgment Approving Class Action Settlement; (ii) approve in full

- 44 -

Plaintiffs' Counsel's request for attorneys' fees and expenses; and (iii) award each of the

Federal Plaintiffs $2,500 for their representation of the Settlement Class.

We declare under penalty of perjury that the foregoing is true and correct.

Executed on October 4, 2024, at San Diego, California.

s/ Hillary B. Stakem
HILLARY B. STAKEM

Executed on October 4, 2024, at Marietta, Georgia.

s/ Michael I. Fistel, Jr.
MICHAEL I. FISTEL, JR.

Executed on October 4, 2024, in New Castle County, Delaware.

s/ Michael J. Barry
MICHAEL J. BARRY

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

s/ Hillary B. Stakem
HILLARY B. STAKEM

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
hstakem@rgrdlaw.com