IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02774-RMR

JOHNNY R. SHAFER, Individually and On Behalf of All Others

Similarly Situated,

      Plaintiff,

      vs.

LIGHTNING eMOTORS, INC., et al.,

      Defendant.

------------------------------------------------------------------

REPORTER'S TRANSCRIPT

Fairness Hearing

------------------------------------------------------------------

Proceedings before the HONORABLE REGINA M. RODRIGUEZ, District Judge, United States District Court for the District of Colorado, commencing on the 19th day of November, 2024, in Courtroom A901, United States Courthouse, Denver, Colorado.

APPEARANCES

For the Plaintiffs:
ELLEN STEWART and HILARY STAKEM, Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, California 92101

JEFFREY BERENS, Berens Law LLC, 2373 Central Park Boulevard, Suite 100, Denver, Colorado  80238

MICHAEL FISTEL, Johnson Fistel LLP, 40 Powder Springs Street, Marietta, Georgia  30064

MICHAEL BARRY, Grant & Eisenhofer, 123 Justison Street, 7th Floor, Wilmington, Delaware  19801

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

APPEARANCES(continued):

For the Defendants:
DAVID FREEBURG, DLA Piper LLP US, 701 Fifth Avenue, Suite 6900, Seattle, Washington  98104

REBECCA LOCKERT, Freshfields US LLP, 855 Main Street, Redwood City, California  94063

Reported by SADIE L. HERBERT, RPR, RCR, 901 19th Street, Denver, CO 80294, (303)335-2105

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294   (303)335-2105

P R O C E E D I N G S

(Proceedings commenced at 3:05 p.m.)

THE COURT:  Good afternoon.  Please be seated.

MS. STEWART:  Good afternoon, your Honor.

THE COURT:  So we're here in Shafer v. Lightning eMotors, Inc., 21-cv-02774.

Could I have appearances of counsel, please.

MS. STEWART:  Good afternoon, your Honor.  Ellen Stewart on behalf of the Plaintiffs and the class.

MS. STAKEM:  Good afternoon, your Honor.  Hilary Stakem on behalf of Plaintiffs and the class.

MR. BERENS:  Jeffrey Berens on behalf of Plaintiffs.

MR. FISTEL:  Michael Fistel on behalf of the Plaintiffs and the class.

MR. BARRY:  Michael Barry, Wilmington, Delaware on behalf of the State.

MS. LOCKERT:  Good afternoon, your Honor.  Rebecca Lockert for the Lightning Defendants.

MR. FREEBURG:  Good afternoon, your Honor.  I'm David Freeburg on behalf of the GigCapital Defendants.

THE COURT: Very well.  We have plenty of lawyers here this afternoon, so I think we should be able to get through this.  We're here for the final fairness hearing in this action.  Before the Court is a motion for a final approval of class action settlement and approval of the plan allocation, as

21-cv-02774-RMR     Fairness Hearing    November 19, 2024

well as the Plaintiffs' counsels motion for an award of attorneys' fees and expenses and award to federal plaintiffs in connection with their representation of the settlement class.

So this matter has been before the Court previously. We looked at the preliminary certification of the class in this matter. There are two related actions, I will note. This action is known as the federal action and has been pending before this court for some time. Shafer v. Lightning eMotors, 21-cv-02774. There is also what is referred to as a state action, and that is pending in the State of Delaware, Delman v. GigAcquisitions3 LLC, Number 2021-0679.

Pardon my voice, it's been a long day of trial already. The Court was a little more active in that trial than I would normally be, so I'm losing my voice.

So the federal action is a securities class action alleging that Defendants violated the Securities Act of 1933 and the Securities Exchange Act of 1934 by conducting a scheme to defraud, including by making material misrepresentations and omissions to investors in GigCapital 3 and Lightning regarding GigCapital 3's IPO, the business combination and Lightning eMotors operation in the first and second quarters of 2021.

The state action alleges breach of fiduciary duty and unjust enrichment claims against the state Defendants under Delaware law due to alleged misstatements and omissions regarding the business combination.

21-cv-02774-RMR     Fairness Hearing    November 19, 2024

We did have two motions to dismiss filed in the federal action, ECFs 99 and 101.  I did adopt the magistrate judge's recommendation on those motions at ECF 118.

On May 21 of 2024, the parties filed a joint notice of settlement in principal.  And on July 2nd, they filed an unopposed motion for preliminary approval of the class action settlement.  On July 12th, the claims administrator, Gilardi, mailed notices of the proposed settlement to 56 officials, including the attorney general of 49 states, the District of Columbia, the United States territories and the attorney general of the United States via USPS certified mail in accordance with CAFA.

Have any of the attorneys general responded to that notice?

MS. LOCKERT:  Your Honor, the attorney general for Ohio sent us an email to confirm receipt.  But other than that, we have not received any responses to the CAFA notices.

THE COURT:  So the Court did preliminarily approve the settlement and directed the parties to send notices of settlement to the class and set the matter for the final fairness hearing, which we are here for today.

It's my understanding that, as of very recently here, notice has been emailed to the class members of the proposed settlement.  Have we heard any responses?

MS. STEWART:  No, your Honor.  There have been no

21-cv-02774-RMR    Fairness Hearing    November 19, 2024

negative responses, no requests for exclusion from the class

and no objections.  But of course, we have received claims.

THE COURT:  So there's been no change with that, it

sounds like, from where we were before.

MS. STEWART:  Correct, your Honor.

THE COURT:  So we're now here for the final approval

that has been requested by Plaintiffs.  And is there anything

that either side wishes to add, at this point in time, with

regard to the record as it relates to the final approval?

MS. STEWART:  Nothing, your Honor.  We think our

papers set forth each of our arguments.  And as the motion for

final approval of the settlement is unopposed and the

Defendants take no position on the fees or the plan of

allocation, we would ask that the Court approve the motions

based on our papers.

THE COURT:  Well, let's set aside the attorneys' fees

for this moment.  Let's deal with the class certification and

the apportionment.

I have reviewed the papers.  The papers are detailed.

Not only do I have the motion for the final approval, but I

also had reviewed this for the preliminary approval.  They were

detailed and seem to be appropriate and did address each of the

prerequisites for class action treatment in the first instance.

So let's kind of just walk through each step so we have a full

record, but I think we've got it, okay.

21-cv-02774-RMR    Fairness Hearing    November 19, 2024

The Court needs to make a determination as to whether or not this action satisfies the prerequisites for class action treatment under Rule 23; two, whether the parties provided appropriate notice to class members; three, whether the proposed settlement is fair, reasonable and adequate; and four, whether to approve the Plaintiffs' requests for attorneys' fees, litigation expenses and other costs.

With regard to the question of whether or not the action satisfies the prerequisites for class action treatment, for the same reasons that the Court previously found that preliminary certification was appropriate, the Court finds that final certification is appropriate and that this action does satisfy the prerequisites for class action treatment under Rule 23.

Under Rule 23(a), a case may be certified as a class action only if all of the following requirements are met:  One, numerosity; two, commonality; three, typicality; and four, adequacy of representation.

Under Rule 23(b), the parties must also show that the case is one of the types of actions recognized as appropriate for class treatment.

The requirement of numerosity is easily satisfied here.  The parties have identified some 28,000 plus settlement class members.  It would be impractical for each of these thousands of consumers to pursue an individual action.

Additionally, it would not be economically feasible to pursue a lawsuit individually.

Second, the commonality requirement is also satisfied. The claims are based on common questions of fact and law, whether the Defendants made public statements concerning Lightning's value, supply chain and ability to scale that were materially fares and misleading, whether Defendants acted with the requisite scienter and the extent of damages sustained by settlement class members and the appropriate measure of damage.

Third, the typicality requirement is also satisfied. As the court just stated, Plaintiffs' and class members' claims all arise from the same course of conduct by Defendants. Plaintiffs' alleged injuries and legal theories by which they seek to recover are common to all class members.

Fourth, the adequacy of representation does appear to this court to be satisfied. The class representatives' interests in this litigation are aligned with those other class members and the representatives are willing and able to adequately represent the class. And it is this court's judgment that, having reviewed the record in this matter, that those class members have indeed adequately represented the class thus far in obtaining this settlement agreement.

With respect to class counsel, as previously found by this court, counsel is experienced in and familiar with the claims, remedies and defenses at issue in the case. The Court

21-cv-02774-RMR     Fairness Hearing    November 19, 2024

is not aware of any conflicts of interest concerning named plaintiffs or class counsel.  That was a finding made by the Court at prior hearings.

I guess the question I have, is there any change that has occurred since the last hearing of which this court should be advised?

MS. STEWART:  No, your Honor.  Thank you.

THE COURT:  Do you agree with that, defense counsel?

MS. LOCKERT:  For the Lightning Defendants, there's no change that we're aware of.

MR. FREEBURG:  Yes, your Honor.  The GigCapital 3 Defendants agree as well.

THE COURT:  Thus, the Court finds that the Rule 23 settlement class has satisfied the four prerequisites for class certification under Rule 23(a).

I further find that Plaintiffs have pled an action that is appropriate for class treatment under Rule 23(b)(3).  And therefore, the Court certifies this action as a class action pursuant to Rule 23.

Next, the Court turns to the adequacy of notice provided to class members.  Counsel, I'll ask you to give a summary of the notice.  You need not go into excruciating detail, as that is set forth in the papers, but for purposes of this record, if you could give us an overview.

MS. STEWART:  Yes, your Honor.

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

21-cv-02774-RMR    Fairness Hearing    November 19, 2024

As detailed in the supplemental declaration of Ross Murray of the Gilardi firm, which is ECF 149, notice, the long form notice that the Court preliminarily approved was mailed to over 28,000 class members, or emailed.  Summary notice was published in the Wall Street Journal.  And over the internet, a website, case-specific website was established where relevant documents were posted and class members could access those documents, get answers to frequently asked questions and also submit claims is currently operational.  And a toll free number was set up so that class members could call if they had questions and there is an automated response, but if they wanted today speak to a live person, that they could do so.

So the notice that the Court approved, that counsel, through Gilardi, has undertaken is the best notice practicable under the circumstances and meets all the requirements of due process, and we would ask that the Court find the notice satisfactory.

THE COURT:  What was the response rate that was received?

MS. STEWART:  Well, we have about 11,000 claims, so that's -- and I don't know, because the claims deadline was just last week, I don't know how many of those were valid and how many shares those represent, but that's a very good response rate, your Honor.

THE COURT:  Thank you.

The Court concludes that the notice was provided to class participants consistent with the notice plan that had previously been approved by this court and that such process was adequate and appropriate under the circumstances and satisfies the relevant requirements of Rule 23 and due process.

Let's talk about the settlement terms.  The Court must next determine whether the settlement is fair, reasonable and adequate in order to give final approval of the settlement.

Counsel, why don't you summarize for me the key provisions of the settlement agreement and why it is fair, reasonable and adequate.

MS. STEWART:  Well, your Honor, there's a $13.35 million settlement fund that has been established for the benefit of those class members who submit valid claims. The settlement itself meets all of the elements of Rule 23(e)(2), which the Court preliminarily found to have been met at the time of preliminary approval, and also the somewhat overlapping standards that the Tenth Circuit uses when establishing the fairness, reasonableness and adequacy of settlement.  The money has been placed into escrow.  It was placed into escrow at the end of July.  It has earned $185,000 in interest since that time for the benefit of class members.

Claims administration is being undertaken and, at the time, the claims administrator is done.  Should there be any challenges to claims, we'll bring them to the Court.  But

hopefully, class members will be satisfied with the determination of Gilardi with respect to plugging in their transactions into the plan of allocation, which hopefully the Court will approve today.

As the Court has found, Plaintiffs and counsel adequately represented the class.  There are no conflicts.  We vigorously litigated both the State case and the case that's pending before your court.  As you know, we litigated motions to dismiss and were preparing a motion for leave to amend the complaint when settlement was reached.

Settlement was reached at arm's length following over a year of mediation before David Murphy of the Phillips ADR firm.  And Mr. Murphy is a very experienced litigator and now mediator, who has mediated a number of cases that our respective firms have litigated over the years.

The costs, risks and delay of trial and appeal, we were still, obviously, in this court still litigating whether the case would even go forward.  The Delaware case, though it had survived a motion to dismiss, it was a novel case.  The theory of damages would still have to be tested in that case. The SPAC law is still developing both in state court and federal court, and there is no guarantee that the way that the case law would develop would be favorable to investors in SPACs.

The company itself is in receivership.  There is no

more company.  In fact, it was pointed out to me today that the company's assets were sold for less than the amount of this settlement.  So we have taken all the money that we could possibly get.  Given the receivership, documents, witnesses would be very difficult to find and to --

THE COURT:  It sounds like more dollars would be difficult to find.

MS. STEWART:  Yes.  We took out all the dollars.  I mean, the only money that was available was insurance.  And as the case has proceeded, there would be less and less of that money available for the class.  The settlement, our estimates, our damages estimate is about a hundred million dollars.  If we hit a home run and basically won on every claim, on every statement and every allegation, we got over 13 and a half percent of that, which is a great number, considering the procedural posture of the case and if the Court was to look at the NERA and Cornerstone studies and see where the median result in cases of this size.  So we're very pleased and proud to bring this settlement to the Court.

The proposed method of distributing the settlement, as the Court is required to evaluate under 23(e)(2) is appropriate.  It's the standard; file claims, the claims are evaluated for validity, and if there are problems with the claims or there are incomplete claims, the claims administrator will work with those claimants.  Obviously, the goal is to get

all the money to the -- there's no reverter of the settlement fund, so it will all go to the settlement class, the entirety of the net settlement fund will go to the class.

There are no agreements, other than the standard supplemental agreement that triggers the opportunity for the Defendants to terminate the deal if opt-outs exceed a certain threshold.  Since we have no opt-outs -- I can tell you that the opt-out threshold was greater than zero -- so there was no opportunity for the Defendants to terminate the deal based on the supplemental agreement.

The settlement class members are treated equitably. There is one plan of allocation.  And depending on where a class member falls in the categories of class members, their claim is calculated the same.  The Plaintiffs, as well as the absent class members, and the parties believe that the settlement is fair and reasonable.  Obviously, counsel believes it, and following a very vigorous notice program, the class agrees as well.

And so we would ask that the Court find that under Rule 23(e) the settlement is fair, reasonable and adequate.

THE COURT:  What is the amount that the federal plaintiffs will recover for acting as plaintiffs or is there a service award?

MS. STEWART:  We have asked, your Honor, that each of the federal plaintiffs be awarded $2,500, and that's part of

our fee application.  And each of those plaintiffs has submitted a declaration requesting that award under -- the PSLRA permits such an award, a reimbursement of time and expenses for representation of a class.

THE COURT:  And in particular, with regard to the fair, reasonable and adequacy of the settlement, can you just review for the Court, again, with regard to the mediator, it's my understanding -- I think I read in the briefing -- that the mediator also gave either an E and E or some kind of evaluation on this matter.

MS. STEWART:  We had an initial mediation in 2023, and the case didn't settle and litigation proceeded.  We then continued to have discussions with Mr. Murphy, and he ultimately issued a mediator, a double-blind mediator's proposal, which was accepted by both sides.

THE COURT:  And that is the resulting settlement that we have here today?

MS. STEWART:  The mediator's proposal was that the cases settle for $13.35 million.

THE COURT:  Very well.  That is a significant factor for sure for this court in evaluating the fairness and reasonableness of the settlement.

Counsel for the Defendants is there anything you wish to add or disagree with, in terms of the recitation of the settlement?

MS. LOCKERT:  Your Honor, on behalf of the Lightning Defendants, we don't have any further submissions to make.  But we will just add that we are supportive of the settlement.

THE COURT:  All right.

MS. LOCKERT:  Thank you.

THE COURT:  As previously indicated, I am not aware of any objection to the proposed class settlement and the parties have represented that no objections have been filed.  I take it there's no members on the phone or anywhere here -- I see no one in the courtroom -- with regard to comments for the record, no one on the phone.

THE DEPUTY CLERK:  There's no one on the phone, your Honor.

THE COURT:  So I find that the settlement that has been reached in this matter was fairly and honestly negotiated. Whether there are serious questions of law and fact, they in fact do exist, as demonstrated by the litigation that has already taken place before this court, which would have placed the ultimate outcome of the litigation in doubt.

The Court further finds that the value of an immediate recovery here is significant and does outweigh the mere possibility of future relief after what already has been significant and expensive litigation and likely would have continued to be such.  In addition, the parties, both Plaintiffs and Defendants in this matter represent that they

believe the settlement is fair and reasonable.  Therefore, the Court finds that this settlement is in fact a fair, just, reasonable and adequate settlement under Rule 23(e)(2). Accordingly, Plaintiffs' motion for final approval of class action settlement, as well as the plan of allocation, both are approved, or the motions are granted.

With regard to the approval of the attorneys' fees and expenses, Defendants take no position.  Under Federal Rule of Civil Procedure 23(h), the Court may award reasonable attorneys fees and nontaxable costs that are authorized by law or by the parties' agreement.  The Court does in fact have broad authority to determine the amount and reasonableness of the fees.  When determining whether requests for fees are reasonable, courts in the Tenth Circuit apply the 12-factor test set forth in Johnson v. Georgia Highway Express Inc.

The Court is not going to walk through each of those factors here today, but represents to everyone that I have in fact considered the factors as set forth in Johnson as appropriate and applicable in this matter.

Well, let me just, for the record, allow counsel to make a representation, a summary of its representation as to the basis for the attorneys' fees in the amount of $4.45 million and litigation expenses in the amount of $225,000.  That is a big number, so one would expect appropriate support.  I did find that support in the papers,

but let's review it here for this record.

MS. STEWART:  Thank you, your Honor.

Yes, we do seek an award of one-third of the 13.35 million, which is 4.45, I think.  The joint declaration that we submitted -- the declaration, it's ECF 135 -- the joint declaration of Hilary Stakem, Michael Fistel, Jr. and Michael Barry in support of the motions details the extensive work that was done in both cases over the last three years.  There's been no overlap in the work performed in the two cases.  There's been -- over 4,600 hours were spent by the various firms, but without -- without overlap.

The state case, they -- and Mr. Barry is here, he can speak to the Court, should you have questions about the work done there.  But here, the Johnson Fistel firm and the Robbins Geller firm worked diligently to get a complaint that we believed would survive a motion to dismiss.  Given the discovery stay in place by the PSLRA, it required us to do a lot of investigation and expert consultation to plead a complaint and we were in the process of amending that complaint and making a motion for amended complaint that we believed would satisfy the Court.

We went through all of the applicable Johnson factors in our brief.  And obviously, I don't want to repeat anything.  So to the extent the Court has any specific questions, I'm happy to answer them.

But I would also just note that it's very important, I think, for the Court to understand that we were litigating this case on a purely contingent basis against two of the very finest defense firms in the country -- well, I would say, the world, because they are international law firms -- and so we put together very strong litigation teams to counter the litigation teams that the Defendants had hired.  And we're very -- as I had said earlier, we're very proud of the result that we had reached.

Given securities litigation, in general, these are generally expensive cases to litigate, they are undesirable because only firms who can afford to not get paid, if ever, to litigate these cases can pursue these kinds of cases.  And so the firms before you are among the best, the cream of the crop in the securities field, both on the Plaintiffs side and on the defense side, so I think -- I hope the Court found that the level of lawyering that was presented to you was the highest caliber.  And so we would ask that -- the class has not objected to any portion of our fee.  It works out to a multiplier of 1.16 times our lodestar.  It doesn't include any of the time -- at least for my firm, it doesn't include any time from the beginning of August, and it doesn't include any of the time that we will spend working with the claims administrator and class members to make sure that the distribution goes smoothly, and we will not be back asking for

21-cv-02774-RMR    Fairness Hearing    November 19, 2024

any additional fees.  So the fees that the Court awards today are -- this will be the last you see of us, at least on fees. I can't promise that there won't be any disputed claims and we'll be back, but you will not be asked to give us anymore money.

THE COURT:  I do find that the filings with regard to the attorneys' fees award with regard to the settlement in this matter were thoroughly and carefully set forth.  And the Court, having reviewed that, and taken into consideration the 12 factors, I do find that the fee award is reasonable.  And when considered against other awards for similar type cases in this jurisdiction specifically, it is in line with or consistent with those fee awards.

Given the magnitude of the issues that were before this court and the time that was spent, I do find that, while the fee is approximately one-third of the total recovery to the class, that is not an uncommon contingency fee award in common benefit settlements.  Indeed, class counsel are experienced attorneys in the field who have made significant benefits available to the settlement class members, while running a substantial risk of nonpayment, particularly in light of the financial status of the Defendants ultimately in this matter.

Additionally, there are no objections to this request. The Court is familiar with the law firms, although the Court is not willing to adopt wholesale the statement that because a

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

21-cv-02774-RMR   Fairness Hearing   November 19, 2024

particular firm is involved, therefore the quality of the lawyering is at a particular standard.  Although, having been at a rather large firm in the past before this court joined the bench, I would like to think that, but I am not going to adopt that wholesale as the judge in this case.  Nonetheless, I do find, in this particular case, with this particular counsel, this fee is reasonable in light of the nature of the case, the amount and complexity of the work involved and the outcome of the litigation.

I will also approve the costs that class counsel has incurred and for which they now seek reimbursement.  I have reviewed those costs, and they do appear to this court to be reasonable and necessary and appropriate for a case of this nature and magnitude.

Therefore, I grant the Plaintiffs' motion for attorneys' fees and costs.

I do have the proposed orders from the parties.  Did you send those to us in Word format?

MS. STEWART:  We did, your Honor.

THE COURT:  Very well.  I may make some slight modifications, but I do anticipate entering those in short order.

Are there any other issues that we need to address today?

MS. STEWART:  No.  We just want to thank the Court for

21-cv-02774-RMR    Fairness Hearing    November 19, 2024

its time over the last three years.  Thank you, your Honor.

THE COURT:  I think this has been around as long as I have been around on this bench, so it's nice to bring something to a conclusion.

Well, with that, thank you all.  Well done.  And we're in recess.

(Adjourned)

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

21-cv-02774-RMR    Fairness Hearing    November 19, 2024

I hereby certify that the foregoing is a true and accurate transcript, to the best of my skill and ability, from my stenographic notes.

*Sadie L. Herbert*
Official Court Reporter
U.S. District Court

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294   (303)335-2105